**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO. 14-22134-CIV-MIDDLEBROOKS**

ROTHSCHILD DIGITAL MEDIA
INNOVATIONS, LLC,

        Plaintiff,

v.

SONY COMPUTER ENTERTAINMENT
AMERICA LLC,

        Defendant.

_____

JURY TRIAL DEMANDED

**DEFENDANT'S MOTION TO TRANSFER VENUE UNDER 28 U.S.C. § 1404**

Pursuant to 28 U.S.C. § 1404(a), Defendant Sony Computer Entertainment America LLC ("SCEA") hereby moves to transfer this action to the United States District Court for the Northern District of California.

I.  **<u>INTRODUCTION</u>**

The Court should transfer this action to the United States District Court for the Northern District of California under 28 U.S.C. § 1404(a), which is an overwhelmingly more convenient forum for this case.  SCEA is headquartered in the Northern District of California, where SCEA's activities related to the accused products took place.  Indeed, virtually every aspect of SCEA's business is based in the Northern District of California.  All of the SCEA witnesses that would likely testify in this suit reside and work in the Northern District of California.  Further, there are a huge number of potentially relevant third parties – including third party game development studios and the third party entity that operates the PlayStation Network – that are also located in the Northern District of California.  As a result, the "center of gravity" for this suit is the Northern District of California and that jurisdiction offers a more convenient forum for the witnesses, provides better access to sources of proof, and better serves the interests of justice.

In contrast, this case has no substantial connection to the Southern District of Florida. SCEA has no offices in Florida and none of its operations are based there.  Plaintiff's connections are only recent and tenuous; Plaintiff was formed as a Florida corporation shortly before this litigation was filed, apparently as an attempt to manufacture venue.  The only witness that appears to have any connection to Florida whatsoever is the inventor and sole member of Plaintiff.  Yet, this same inventor, under the auspices of his various patent holding companies, recently filed suit against *thirteen* different defendants for patent infringement in California and Delaware courts, and therefore cannot credibly claim to be inconvenienced if asked to litigate this case in California as well.  In any event, as this District has recognized, an inventor's

2

location is entitled to little consideration in determining whether to transfer a case under 28 U.S.C. § 1404(a) because the relevance of inventor testimony is limited.  Under these facts, a transfer of this case to the Northern District of California is clearly appropriate.

## II.   FACTUAL BACKGROUND

### A.   SCEA And Its Relevant Evidence Are Located In Northern California

Plaintiff filed its Complaint against SCEA on June 9, 2014.  *See* Plf.'s Compl. [Dkt. 1] (June 9, 2014).  Plaintiff alleges that SCEA has infringed the '534 Patent by making, using, importing, selling, and offering for sale a "system," specifically defined as including "SCEA's PlayStation products and services - comprised of PlayStation Network servers, PlayStation consoles and PlayStation game discs."  *Id*. at ¶ 9.  Plaintiff has specifically identified the "PlayStation 3, PlayStation 4, PlayStation Vita, and PSP" as the accused PlayStation consoles. *Id*. at ¶ 10.  No specific game discs are named in the Complaint, though Plaintiff's original pre-suit letter to SCEA identified the game "Uncharted 3 – Drake's Deception."  *Id*.  Accordingly, the PlayStation Network together with the PS3, PS4, PS Vita, PSP and unidentified game discs are the accused products in this case and will be the center of any infringement analysis.

SCEA is the exclusive party in the United States responsible for the importation, distribution, and marketing of the PS3, PS4, PS Vita, and PSP.  *See* Exh. B, Decl. of John Koller at ¶ 9 (July 8, 2014) ("Koller Decl.").  SCEA is headquartered in San Mateo, California, which is within the Northern District of California.  Exh. C, Decl. of Sally Buchanan at ¶ 2 (July 14, 2014) ("Buchanan Decl.").  The relevant witnesses and the relevant United States documents are all in California.  *Id*. at ¶¶ 6-7.  By way of example, witnesses from SCEA's financial and marketing departments will play a substantive role in this patent trial.  *See e.g.,* Exh. C, Buchanan Decl. at ¶ 5; Exh. B, Koller Decl. at ¶¶ 6, 8.  In particular, SCEA expects Mr. John Koller will be SCEA's primary trial witness for issues involving marketing of the accused

products and Mr. Aaron Wong will be SCEA's primary trial witness for issues involving financial information.  Both Mr. Koller and Mr. Wong, as well as all potential witnesses in the marketing and finance departments, work in SCEA's San Mateo headquarters.  Exh. B, Koller Decl. at ¶¶ 1, 8; Exh. C, Buchanan Decl. at ¶¶ 4-7.  In fact, any witness that SCEA would call to testify on any aspect of the company's business would likely reside and work in the Northern District of California, since all of the company's central operations are based there.  Exh. C, Buchanan Decl. at ¶¶ 4-7.

Further, although the Complaint does not identify which PlayStation games are included in the accused system, to the extent the games are developed by SCEA, they would have been developed in California or Oregon.  Exh. B, Koller Decl. at ¶ 10.  None of SCEA's game studios are in Florida.  To the extent the games are developed by third party studios, a large number of those studios are also in California.  *Id.* at ¶ 11.  For example, Plaintiff's original letter identified "Uncharted 3 – Drake's Deception" as an allegedly infringing game.  That game was developed by Naughty Dog, Inc. in Santa Monica, California.  *Id.*

Other key third party witnesses are also located in California.  In particular, Plaintiff has named the PlayStation Network as part of the accused system.  That network is operated by third party Sony Network Entertainment International LLC ("SNEI"), which is also headquartered in California and has offices in San Mateo, Los Angeles, and San Francisco, California.  Exh. B, Koller Decl. at ¶ 13.  The Northern District of California, unlike this Court, would have absolute subpoena power over SNEI.

In contrast to the foregoing, SCEA has no relevant connections whatsoever to the Southern District of Florida.  Other than the fact that the accused products are distributed nationwide, the Complaint identifies no substantive connection to this District.  Indeed, in light

of SCEA's lack of ties to the Southern District of Florida, another Court in this District has recently transferred a patent infringement case filed against SCEA here to the Northern District of California.  *See Game Controller Tech. LLC v. Sony Computer Entertainment America LLC et al.*, __ F.Supp.2d ___, 2014 WL 321862, at *7 (S.D. Fla. Jan. 10, 2014) (holding that "the balance of convenience strongly favors transfer" to the Northern District of California).  For the reasons stated herein, this Court should do so again.

        **B.**    **<u>Plaintiff's Connection To Florida is Recent And Limited</u>**

In contrast to SCEA's significant ties to the Northern District of California, Plaintiff's connection to Florida is recent and limited.  Plaintiff appears to have been formed specifically for the purpose of bringing this lawsuit.  In particular, Plaintiff is less than one year old, having been organized as a Florida limited liability company on July 29, 2013.  Exh. A, Gray Decl. at ¶¶ 2-3, Appendix 1.  Ten days later, the '534 Patent was assigned to it.  *Id*. at ¶¶ 4-5; Appendix 2.  A few months later, SCEA received its first letter from Plaintiff's counsel, accusing SCEA of infringing the '534 Patent and demanding that SCEA take a license to the '534 Patent.  Plf.'s Compl., Exh. A at 2-4.  Plaintiff does not appear to make or sell anything, or otherwise engage in any operation which would make the Southern District of Florida a more convenient venue for it than any other place where this suit might be brought.

Although Plaintiff's sole member and the inventor of the '534 Patent, Mr. Leigh Rothschild (*See* Plf.'s Compl., Exh. A at 5; *see also* Exh. A, Gray Decl. at ¶ 3, Appendix 1), appears to reside in Florida, Mr. Rothschild is simultaneously litigating a variety of other patents in other jurisdictions.  Under the auspices of his various patent holding companies, Mr. Rothschild has recently filed *<u>thirteen</u>* other patent litigation cases.  None of these cases were filed in Florida.  Exh. A, Gray Dec. at ¶¶ 6-24, Appendix 3-19.  This is particularly notable as several of the defendants are clearly subject to personal jurisdiction in Florida.  *See* Exh. A, Gray Dec. at

Appendix 9 at ¶ 2 (alleging that Actsoft Inc. is a Florida corporation and has a principal place of business in Tampa, Florida); Appendix 16, at ¶ 2 (alleging that Mix Telematics North America, Inc., has a principal place of business in Boca Raton, Florida). Indeed, one of these lawsuits, *Rothschild GPS Sharing Innovations, LLC v. Nissan North America, Inc.*, No. 3:2014-CV-00819, was filed in California against Nissan North America, Inc., even though Nissan North America presumably sells product throughout the entire United States and would be subject to jurisdiction in Florida. *Id*. at Appendix 3. Given the foregoing, it is clear Mr. Rothschild is not inconvenienced by litigating in California.

### C.     The New File History of the '534 Patent

The '534 Patent was previously the subject of litigation in this District as well as a declaratory judgment action in the Northern District of California. *See generally* Compl., *Rothschild Trust Holdings, LLC v. Citrix Systems, Inc.*, No. 1:06-CV-21359 (S.D. Fla. May 26, 2006); Compl. *Rothschild Trust Holdings, LLC v. Orb Networks, Inc.*, No. 1:06-CV-22921 (S.D. Fla. Dec. 01, 2006); Compl., *Orb Networks, Inc. v. Rothschild Trust Holdings, LLC*, No. 3:2007-CV-00400 (N.D. Cal. Jan. 22, 2007). While there was some claim construction activities that occurred in this District regarding the '534 Patent, the '534 Patent was subsequently the subject of extensive re-examination proceedings in the Patent and Trademark Office. During those re-exam proceedings, Plaintiff made a series of limiting statements concerning the scope of the claims, and the Patent Trial and Appeal Board issued an extensive opinion interpreting the scope of the patent and applying it to prior art. *See generally* Ex Parte Rothschild, No. 90/008.591. Given this vast amount of new file history, the entire claim construction process will have to be redone. The Northern District of California is well-equipped to engage in this new analysis.[1]

---

[1] In fact, if the case is transferred to the Northern District of California, SCEA intends to bring a motion for an early *Markman* hearing, as SCEA believes there is a single claim construction issue that is

III.     <u>**STATEMENT OF LAW**</u>

       Change of venue in a civil case is governed by 28 U.S.C. § 1404(a).  Pursuant to this section, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  *Id.*  Thus, the purpose of § 1404(a) is to prevent the waste "of time, energy and money" and "to protect litigants, witnesses, and the public against unnecessary inconvenience and expense."  *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (*citing Continental Grain Co v. Barge FBL-585*, 364 U.S. 19, 26, 27 (1960)).  To this end, § 1404(a) "empowers a district court to transfer 'any civil action' to another district court if the transfer is warranted by the convenience of the parties and witnesses and promotes the interest of justice."  *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (internal footnote omitted).

       The inquiry on a motion to transfer under 28 U.S.C. 1404(a) is not whether one venue or another would be the *best* venue, but whether there is a venue that is more convenient.  28 U.S.C. § 1404(a).  In making this determination, District Courts use a two-step analysis.  The threshold question requires a Court to determine whether the case could have been brought in the forum to which the transfer is sought.  *See* 28 U.S.C. § 1404(a).  If the transferee district is a proper venue, then the Court must conduct a balancing test and weigh various private and public interest factors to compare the relative conveniences of the current district against the transferee district.  *See Steifel Lab., Inc. v. Galderma Lab., Inc.*, 588 F.Supp.2d 1336, 1338 (S.D. Fla 2008) (citing *Mason v. Smithkline Beecham Clinical Lab.*, 146 F.Supp.2d 1355, 1359 (S.D. Fla. 2001)).  The

_____

potentially case dispositive.  As SCEA has repeatedly explained to Plaintiff, there is no good faith basis to bring this suit in view of the clear disclaimers on the scope of the alleged invention made during the ex parte reexamination of the patent-in-suit, as confirmed by the Patent Trial and Appeal Board.  Ex Parte Rothschild, No. 90/008.591, Decision on Appeal at 9 (Sept. 17, 2010).  For all the reasons stated herein, however, this issue would be far more conveniently resolved in the Northern District of California.

private interest factors include: "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Trace-Wilco, Inc. v. Symantec Corp.*, 08-80877-CIV, 2009 WL 455432, *2 (S.D. Fla. Feb. 23, 2009) (citing *American Dredging Co. v. Miller*, 510 U.S. 443, 448 (1994)).   The public interest factors include: "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness in burdening citizens in an unrelated forum with jury duty." *Id.*  (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n. 6, (1981)).  "In patent cases, Courts are instructed to analyze the convenience factors of § 1404(a), 'instead of relying solely on considerations such as tenuousness of jurisdiction, broadness of case, and degree of vestment, or automatically going with the first filed action.'" *Mayfonk, Inc. v. Nike, Inc.*, Case No. 13-60755-CIV-MIDDLEBROOKS, *3 (June 18, 2013 S.D. Fla.) ("Mayfonk") (quoting *Micron Technology, Inc. v. Mosaid Technologies, Inc.,* 518 F.3d 897, 904 (Fed. Cir. 2008)).

Applying the foregoing standard, SCEA's Motion should be granted and this case should be transferred to the Northern District of California.

## IV.    TRANSFER UNDER 1404(A) IS APPROPRIATE

Transfer should be granted.  Plaintiff's limited presence in this District is very recent and its sole member, Mr. Rothschild, has shown a remarkable willingness to litigate in other venues, as evidenced by the *thirteen* separate patent infringement lawsuits he initiated earlier this year in California and Delaware.  In contrast, SCEA has extremely strong ties to the Northern District of

California and would be substantially burdened by having to litigate in this District.  There is no question that this action could and should have been brought in the Northern District of California and that, on balance, the relevant factors strongly weigh in favor of transfer to that District.

### A.      This Case Could Have Been Brought in the Northern District of California

The threshold question under section 1404(a) requires the court to determine whether the case could have been brought in the forum to which the transfer is sought.  28 U.S.C. § 1404(a).  Here, there is no credible dispute that this case could have been brought in the Northern District of California.  First, the Northern District of California has personal jurisdiction over SCEA.[2]  SCEA has its principal place of business in San Mateo, California, which is within the Northern District of California, and conducts almost all of its business from this location.  Pl.'s Compl. at ¶ 2 (June 9, 2014) [Dkt. 1]; Exh. C, Buchanan Decl. at ¶ 2.  Second, as this is an action for patent infringement under 35 U.S.C. § 271, *et seq*. (*Id*. at ¶ 3), the Northern District of California has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).  Finally, venue under 28 U.S.C. § 1391(b) is proper in a judicial district where, *inter alia*, any defendant resides.  *See* 28 U.S.C. § 1391(b).  Since SCEA is a resident of the Northern District of California, venue is proper in the Northern District of California.  Accordingly, the threshold requirement for transfer under Section 1404(a) is satisfied.

### B.      The Private Interest Factors Weigh In Favor Of Transfer

The private interest factors strongly support transferring this case.  Northern California is the "center of gravity" for this case and where most of the witnesses and evidence are located.

---

[2]  The inquiry under § 1404 involves only whether the proposed transferee court would have had personal jurisdiction over the defendant(s).  *In re Genentech*, 566 F.3d at 1346 ("There is no requirement under § 1404(a) that a transferee court have jurisdiction over the plaintiff or that there be sufficient minimum contacts with the plaintiff; there is only a requirement that the transferee court have jurisdiction over the defendants in the transferred complaint.").

Furthermore, there are no meaningful ties in this case to the Southern District of Florida. Accordingly, transfer is appropriate. *In re Nintendo Co.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009) ("This court has held and holds again in this instance that in a case featuring most witnesses and evidence closer to the transferee venue with few or no convenience factors favoring the venue chosen by the plaintiff, the trial court should grant a motion to transfer."); *see e.g., Mayfonk,* at *4-7.

       1.   <u>Plaintiff's Choice Of Forum</u>

As this Court has held, a plaintiff's choice of forum is given less deference where the operative facts underlying the cause of action did not occur within said forum. *Mayfonk*, at *4 (citing *Motorola Mobility, Inc. v. Microsoft Corp.,* 804 F.Supp.2d 1271, 1276 (S.D. Fla. 2011)). Further, the "center of gravity" in a patent infringement case is where the relevant activities pertaining to the accused product occurred. *Id.* Indeed, "[i]n patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) (quoting *Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F.Supp.2d 325, 329-330 (E.D.N.Y. 2006)). In this case, SCEA's relevant witnesses and documents are located in the Northern District of California. Exh. C, Buchanan Decl. at¶¶ 2-7. Other than the nationwide distribution of SCEA's products, there is nothing that ties SCEA to the Southern District of Florida. *Id.* at ¶ 3.

Conversely, Plaintiff seems to have been created only for the purpose of filing this lawsuit and has no activities or other ties within the Southern District of Florida that would warrant giving deference to Plaintiff's choice of forum. As stated, although Plaintiff's sole member and the inventor of the '534 Patent, Mr. Rothschild, does appear to reside in this District, he recently filed *<u>thirteen</u>* separate patent infringement cases in other jurisdictions, including

California, and only this case in Florida.  Exh. A, Gray Dec. at ¶¶ 6-24, Appendix 3-19.

Accordingly, Plaintiff cannot credibly complain that it or Mr. Rothschild has a strong preference

for litigating matters in this District or that much, if any, deference should be given to Plaintiff's

choice of forum.  As a result, this factor heavily weighs in favor of transfer.  *Mayfonk*, at *4.

### 2.     Convenience Of The Parties And Witnesses

Likewise, the convenience of the parties and witnesses heavily weighs in favor of

transfer.  *See Mayfonk,* at *4-5.  As noted, SCEA is headquartered in the Northern District of

California, and employees responsible for the accused products reside and work there.  *See* Exh.

C, Buchanan Decl. at ¶¶ 2, 4-6; Exh. B, Koller Decl. at ¶¶ 1, 5, 8-10.  Additionally, SCEA's

engineering, marketing, sales, and finance departments are located in its San Mateo headquarters,

and employees in those departments reside and work in the Northern District of California.  Exh.

C, Buchanan Decl. at ¶¶ 4-6.  For example, two of SCEA's critical trial witnesses are located in

the Northern District of California.  *Id.*  John Koller will explain SCEA's marketing efforts, and

Aaron Wong is expected to provide testimony relating to damages.  *Id.*; Exh. B, Koller Decl. at ¶

6.  As a result, the Northern District of California is a far more convenient district for the

relevant witnesses.

Conversely, SCEA maintains no offices in this District.  Nor is there any reason to

believe that Plaintiff finds this District more convenient than any other.  Plaintiff is a patent

holding company and therefore will have little evidence in its possession, let alone substantial

evidence that might be located in the Southern District of Florida.  And while the inventor of the

'534 Patent does live in Florida, that, in and of itself, is entitled to little consideration.  *Mayfonk*

at *5 (finding that the inventor's location should be given little consideration in determining

whether to transfer a case under 28 U.S.C. § 1404(a) as "it is unclear whether [inventor]

testimony would be necessary at trial, as Courts have been instructed to give little deference to

the inventor's testimony about the meaning of a patent's claims") (citing *Hoechst Celanese Corp. v. BP Chems. Ltd.*, 78 F.3d 1575, 1580 (Fed. Cir. 1996)).

Furthermore, many of the potential *non-party* witnesses in this case are also located in California.  Plaintiff has accused the PlayStation Network as being a part of the accused system, but that network is operated by third party Sony Network Entertainment International LLC, which is headquartered in California and has offices in San Mateo, California, Los Angeles, California, and San Francisco, California.  Exh. B, Koller Decl. at ¶ 13.  Plaintiff has also accused PlayStation games as being part of the accused system, but a huge number of those games are made by third party developers located in California, including some of the largest third party game publishers in the world.  *Id*. at ¶¶ 10-12.

In short, it would be substantially more inconvenient for SCEA to litigate in this District rather than the Northern District of California, and there are numerous third party witnesses that are not within the subpoena power of the Southern District of Florida.  However, the converse is not true; Plaintiff's sole member, Mr. Rothschild, has recently filed litigation in California and there is no reason why the Northern District of California would be inconvenient for Mr. Rothschild or anyone else.  Accordingly, this factor weighs in favor of transfer.

### 3.     The Relative Ease Of Access To Sources Of Proof Favors Transfer

"In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer.  Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location."  *In re Genentech, Inc*., 566 F.3d at 1345 (quoting *Neil Bros. Ltd.*, 425 F.Supp.2d at 329-330).  Here, there can be no dispute that SCEA's documents relating to the accused products are located in the Northern District of California.  Thus, transferring the case would relieve the burden on the parties regarding the ease of access to sources of proof.

Since the vast bulk of the documentary evidence is located in the Northern District of California, this factor clearly weighs in favor of transfer.

> ### 4. All Other Practical Problems That Make Trial Of A Case Easy, Expeditious And Inexpensive

Additional factors also favor transfer to the Northern District of California.  In particular, this Court has held that it is in the interest of justice to transfer a case to the district which is the "center of the accused activity."  *Mayfonk*, at *6 (citing 15 Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction and Related Matters at § 3854 at 246-47 (3d ed. 2007)).  Here, the "center of the accused activity" is the Northern District of California, where SCEA is headquartered and hundreds of employees responsible for the accused products reside and work.  *See* Exh. C, Buchanan Decl. at ¶¶ 2, 4-6.  Moreover, as in *Mayfonk,* SCEA's only alleged tie to the Southern District of Florida is that its accused products are sold there, *as they are sold throughout the entire nation*.  *Id.* at *6-7.  As such, SCEA's conduct in Florida "does not provide this forum with a substantial interest in the instant action."  *Id.* at *6-7 (citing *In re TS Tech USA Corp.*, 551 F.3d 1315, 1321 (Fed. Cir. 2008) (products "sold throughout the United States" confer "no more or less meaningful connection to one venue or another").

There are no private interest factors that would weigh against transfer.  The only conceivable argument Plaintiff could make is that the '534 Patent was once construed by a different Judge here, but this would be entitled to no weight.  First, the prior claim construction ruling is not binding against SCEA.  *See e.g., Third Wave Tech., Inc. v. Stratagen Corp.*, 381 F. Supp.2d 891, 914 (W.D. Wis. 2005) ("a second alleged infringer is not bound by prior claim construction unless it had a full and fair opportunity to litigate the construction in the first infringement action").  Second, since the prior litigation, the patent has been subject to an ex parte reexamination during which Plaintiff made a series of limiting statements concerning the

13

scope of the claims, and the PTAB issued an extensive opinion interpreting the scope of the patent and applying it to prior art.  *See generally* Ex Parte Rothschild, No. 90/008.591.  Given this vast amount of new file history, the entire claim construction process will have to be redone. The Northern District of California is well-equipped to engage in this new analysis which is wholly distinct from any claim construction that occurred prior to the ex parte reexamination.

Given the foregoing, it is clear the private interest factors strongly favor transfer.

### C.    The Public Interest Factors Weigh In Favor Of Transfer

The public interest also strongly favors transfer.  First, as SCEA resides in the Northern District of California, there is a strong local interest in having this controversy decided there as the "home" forum.  There is also no unfairness in burdening California citizens with jury duty in a case against a company headquartered in California whereas, conversely, Florida citizens have no stake in this controversy.  Other public interest factors such as familiarity with the governing law and avoidance of unnecessary conflict of law issues are not applicable here.  As a case involving issues of federal law, the Northern District of California is equally competent to address the issues in this lawsuit.

Accordingly, both the public and private factors weigh heavily in favor of transferring this case to the Northern District of California.  SCEA's Motion should be granted.  *In re Nintendo Co.*, 589 F.3d at 1198 ("This court has held and holds again in this instance that in a case featuring most witnesses and evidence closer to the transferee venue with few or no convenience factors favoring the venue chosen by the plaintiff, the trial court should grant a motion to transfer."); *see e.g., Mayfonk,* at *4-7.

### V.    CONCLUSION

For the reasons stated above, SCEA asks the Court to transfer this case to the Northern District of California.

Dated: July 16, 2014                         Respectfully submitted,

By:   /s/ Jeremy T. Elman
            Jeremy T. Elman (Florida Bar No. 37448)
            Jeremy.Elman@dlapiper.com
            DLA Piper LLP
            200 South Biscayne Boulevard
            Suite 2500
            Miami, Florida 33131
            Phone: (305) 423-8514

            Gregory P. Sitrick (*pro hac vice*)
            Gregory.sitrick@quarles.com
            Quarles & Brady LLP
            One Renaissance Square
            Two North Central Avenue
            Phoenix, Arizona 85004
            Phone: (602) 229-5317

            David R. Cross (*pro hac vice*)
            David.Cross@quarles.com
            Quarles & Brady LLP
            411 East Wisconsin Avenue
            Milwaukee, Wisconsin 53202
            Phone: (414) 277-5669

            Christopher J. Fahy (*pro hac vice*)
            Christopher.Fahy@quarles.com
            Quarles & Brady LLP
            300 North LaSalle Street
            Suite 4000
            Chicago, Illinois 60654
            Phone: (312) 715-5000

            Nikia L. Gray (*pro hac vice*)
            nikia.gray@quarles.com
            Quarles & Brady LLP
            One South Church Avenue, Suite 1700
            Tucson, Arizona 85701-1621
            Phone: (520) 770-8700

            *Attorneys for Defendant*
            *Sony Computer Entertainment America LLC*

## **LOCAL RULE 7.1(A)(3) CERTIFICATION**

Pursuant to Local Rule 7.1(a)(3), SCEA hereby certifies that counsel for the movant has conferred with counsel for Plaintiff in a good faith effort to resolve this issue and has been unable to do so.

**CERTIFICATE OF SERVICE**

I hereby certify that on July 16, 2014, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF filing system.  I also certify that the foregoing document is being served this date on all counsel of record or pro se parties on the Service List below in the manner specified, either via transmission of Notices of Electronic Filing generated by the CM/ECF system or in some other authorized manner for those counsel or parties who are not authorized to receive Notices of Electronic Filing.


/s/ Jeremy T. Elman
Jeremy T. Elman (Florida Bar No. 37448)


**SERVICE LIST**

John C. Carey
jcarey@careyrodriguez.com
Ernesto M. Rubi
erubi@careyrodriguez.com
CAREY RODRIGUEZ
O'KEEFE MILIAN GONYA, LLP
1395 Brickell Avenue, Suite 700
Miami, Florida 33131
Phone: (305) 372-7474
Fax: (305) 372-7475

*Counsel for Plaintiff*
*Electronically served via CM/ECF*