**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 14-22134-CIV-MIDDLEBROOKS

ROTHSCHILD DIGITAL MEDIA
INNOVATIONS, LLC,

      Plaintiff,

v.

SONY COMPUTER ENTERTAINMENT
AMERICA LLC,

      Defendant.

_____/

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION**
**TO TRANSFER VENUE UNDER 28 U.S.C. § 1404**

      Plaintiff Rothschild Digital Media Innovations, LLC ("RDMI") hereby submits this opposition to the Defendants' Motion to Transfer Venue Under 28 U.S.C. § 1404 (D.E. 15) (the "Motion") filed by defendant Sony Computer Entertainment America LLC ("SCEA").

**I.**    **Introduction**

      Longtime Florida resident Leigh Rothschild ("Mr. Rothschild") is a prolific inventor, having been issued over sixty United States patents, mainly involving electronic arts. (Decl. of Leigh M. Rothschild ¶¶ 1, 3 [hereinafter "Rothschild Decl."].) In addition to these accomplishments, he has served as an executive in several public and private companies in such industries as videogame publishing and software (*id.* ¶¶ 5-7), and has received presidential and gubernatorial appointments relating to technology policy (*id.* ¶ 8). The patent at issue in the present suit – U.S. Patent No. 6,101,534 (the '534 Patent") – issued on August 8, 2000 and is titled "Interactive, remote, computer interface system." ('534 Patent, p. 1.) In general, the patent covers a system in which data from portable media associated with a local computer processor are used in conjunction with data from a remote server.

      Mr. Rothschild created RDMI for the purpose of licensing and enforcing his inventions, including the '534 Patent. (Rothschild Decl. ¶ 10.) The complaint in this action (D.E. 1) claims that several SCEA products infringe the '534 Patent.

The Motion seeks a transfer of venue from the Southern District of Florida, RDMI's home forum, to the Northern District of California, SCEA's home forum.  RDMI's choice of its home forum, however, is entitled to considerable deference.  Moreover, Mr. Rothschild previously enforced the '534 Patent three times in this District: once before Judge Gold, who denied a similar transfer motion; and twice before Judge King, who in one case also denied a similar transfer motion and in the other case construed the '534 Patent's claims in an extensive thirty-seven-page claim construction ruling that has valuable precedential effect in this district. Further, this case is already on an expedited calendar in this District at SCEA's own request, with an early claim-construction hearing in November, for which briefs are due next month.

In attempting to overcome these virtually dispositive considerations, SCEA goes too far. For example, SCEA misleadingly suggests that RDMI has filed numerous other cases in California, but inspection of the declarations "supporting" the argument reveal only one action filed several months ago by a separate entity on a separate patent in the Southern (not Northern) District of California, and even that action was voluntarily dismissed before an answer or Rule 12(b) motion was even filed.  Similarly, SCEA relies on generalized assertions about witnesses and documents without demonstrating their relevance, and urges a construction of law that would effectively dictate the transfer of every patent case to the defendant's home forum – a construction that the Eleventh Circuit has never endorsed, and a choice that Congress could have included in the patent statute but did not.

SCEA fails to carry its burden.  The Motion should be denied.

## II.    COUNTERSTATEMENT OF FACTUAL BACKGROUND

The Motion includes a preliminary section entitled "Factual Background" that is sufficiently misleading to warrant a response apart from the usual argument pertinent to a transfer motion.

### A.    SCEA Exaggerates Its Witnesses and Documents

SCEA vastly exaggerates the number and relevance of witnesses and documents located in the Northern District of California.  A large company like SCEA will always have a bevy of divisions and departments from which the specter of a multitude of witnesses and documents may be conjured.  SCEA goes further and claims that "the relevant witnesses and the relevant United States documents are all in California" (Mot. at 3), even though Mr. Rothschild resides in this District (Rothschild Decl. ¶ 1), and the law firm that handled the prosecution of the '534 Patent is located in this District (*id.* ¶ 12; '534 Patent, p. 1). SCEA also argues that "witnesses

from SCEA's financial and marketing departments will play a substantive role in this patent trial" (Mot. at 3), but this is a patent-infringement case – basically a matter of comparing the accused products to the patent claims.  Marketing information is a red herring.  Financial information would be relevant only to damages, which in patent cases is ordinarily addressed with a combination of documentary evidence and expert testimony, not parties' direct testimony.  Even SCEA's product developers have limited relevance; the question is what the products are – i.e., whether they infringe – not how they came to be.  And again, in patent litigation, infringement is generally a subject of expert testimony, not direct party testimony.

SCEA's claim that all the relevant documents are located in California is overblown for the additional reason that documentary evidence is easily reproducible and transferable in the electronic age, and therefore has little weight in the analysis.

**B.**   **SCEA's Misleading Characterization of Prior Rothschild-Related Lawsuits**

SCEA attempts to grossly mislead the Court into thinking that RDMI or Mr. Rothschild has filed numerous patent-infringement cases in California.  In four separate places throughout the Motion, SCEA argues with double emphasis that Mr. Rothschild and his entities have filed "*thirteen*" suits in California and Delaware, and mentioning "California" before "Delaware" so as to give the impression that most of the suits were filed in California.  (Mot. at 2 ("Yet, this same inventor, under the auspices of his various patent holding companies, recently filed suit against *thirteen* different defendants for patent infringement in California and Delaware courts . . . ."); *id.* at 5 ("Under the auspices of his various patent holding companies, Mr. Rothschild has recently filed *thirteen* other patent litigation cases."); *id.* at 8 ("Mr. Rothschild has shown a remarkable willingness to litigate in other venues, as evidenced by the *thirteen* separate patent infringement lawsuits he initiated earlier this year in California and Delaware."); *id.* at 10 ("[H]e recently filed *thirteen* separate patent infringement cases in other jurisdictions, including California, and only this case in Florida.").)

Based on SCEA's intentionally misleading characterization, the Court would be forgiven for having the natural impression that most of those cases were filed in California.  In fact, only one of the cases was filed in California, and the other twelve were filed in Delaware.  Moreover, the one in California was filed in April 2014 and voluntarily dismissed in June 2014 after appearances of counsel but before any further substantive filings.  The case was already closed by voluntary dismissal before SCEA filed the present motion to transfer.  Yet SCEA omitted that fact from its characterization.  Further, the case was filed in the Southern District of California,

not the Northern District to which SCEA seeks transfer; the case had nothing to do with the '534 Patent; and the plaintiff was not RDMI but a separate business entity, Rothschild GPS Sharing Innovations, LLC.  (D.E. 15-1, App. 3.)

Perhaps the weakness of relying on a single case that was voluntarily dismissed before it ever started was what prompted SCEA misleadingly to commingle a dozen Delaware cases into the argument.  As with the California case, RDMI did not file the Delaware cases; a separate entity, Rothschild Location Technologies, LLC, did.  (*Id.*, Ex. A ¶¶ 14-24.)  Nor did any of those cases involve the '534 Patent.  But even ignoring those distinctions, it would make no sense to transfer a Florida plaintiff to California just because the plaintiff filed other cases in Delaware.

### C.   SCEA Understates Its Activities in Florida

SCEA disclaims any ties to the Southern District of Florida, but in fact SCEA has extensive ties to this District.  SCEA itself has filed two lawsuits in this District, and SCEA-related entities have filed a total of 226 lawsuits in this District and 559 lawsuits in federal courts in Florida as a whole.  (Decl. of Ernesto M. Rubi ¶¶ 2-7 [hereinafter "Rubi Decl."].)  Notably, SCEA makes no argument that venue in this District is improper; to the contrary, SCEA has filed counterclaims in this very case, explicitly stating that venue is proper in this District.  (D.E. 6 at 6.)  And of course, SCEA is happy to sell as many infringing products in Florida as it possibly can, no doubt including tens of millions of dollars' worth of the products alleged in this case to infringe.  (*See* Rubi Decl. ¶¶ 8-9; Rothschild Decl. ¶ 16.)

### D.   SCEA Baselessly Doubts RDMI's and Mr. Rothschild's Roots in This District

SCEA grudgingly concedes that Mr. Rothschild, the inventor of the '534 Patent and the owner of RDMI, "appears to reside in Florida."  (Mot. at 5.)  In fact, as mentioned above, Mr. Rothschild is a longtime resident of not only Florida, but this District, having lived in Miami-Dade County for over forty years.  (Rothschild Decl. ¶ 1.)

Nonetheless, SCEA claims that "Plaintiff's connection to Florida is recent and limited" (Mot. at 5), an assertion that is apparently based on the fact that RDMI is a business entity that Mr. Rothschild formed last year.  SCEA cites no authority for the notion that a business entity formed in the recent past by a longtime forum resident should be treated as if it has little connection to the forum.  Obviously, SCEA could not even make the argument if Mr. Rothschild directly held title to the '534 Patent, because Mr. Rothschild is indisputably a longtime forum resident.  (Rothschild Decl. ¶ 1.)  The implication of SCEA's argument is that Mr. Rothschild is to be penalized and disadvantaged solely because he exercised his rights under Florida law to

4

form a business entity, and under federal law to assign the '534 Patent to that entity.  There is no rational reason to penalize and disadvantage a patentee for exercising those rights under state and federal law.

Moreover, to the extent that SCEA may be drawing an analogy to a plaintiff who creates a business entity in a forum just to create home-forum advantage there, the analogy fails.  Mr. Rothschild is a longtime forum resident, and there is not one whiff of forum-shopping in his formation of RDMI here, or in RDMI's filing suit here.  To the contrary, forming RDMI here and bringing suit here are consistent with Mr. Rothschild's deep roots in this home forum, and with the fact that the only other suits to enforce the '534 Patent have been brought right here.

### E.    SCEA Obfuscates the Important Prior '534 Enforcement Suits in This District

The '534 Patent has already been litigated in this District three times.  In the first of those suits, *Trust Licensing, LLC v. InterActual Technologies, Inc.*, No. 1:03-cv-20672 (S.D. Fla. filed Mar. 21, 2003), Judge King denied a motion to transfer to the Northern District of California that was based on the same kinds of arguments that SCEA makes here.  In the order denying transfer, Judge King recognized that "Plaintiff should not have to travel around the country defending its patent in every place where a possible violator resides."  (Rubi Decl., Ex. E at 2.)  SCEA fails to acknowledge the *InterActual* suit or the highly pertinent order denying transfer.

In the second prior suit in this District involving the '534 Patent, *Rothschild Trust Holdings, LLC v. Orb Networks, Inc.*, No. 1:06-cv-22921-GOLD/TURNOFF (S.D. Fla. filed Dec. 1, 2006), Judge Gold likewise denied a motion to transfer that was based on the same kinds of arguments that SCEA makes here.  (Rubi Decl., Ex. F.)  SCEA fails to inform the Court of this highly relevant decision, even though the same law firm that represented the defendant in *Orb Networks* – DLA Piper – represents SCEA in the present case.  Apparently, SCEA seeks the benefits of a firm experienced in defending against the '534 Patent, without the burden of candor.  Indeed, SCEA cites a declaratory-judgment action that Orb Networks filed in the Northern District of California, and suggests that the '534 Patent "was previously the subject of litigation" there as well as here.  (Mot. at 6.)  In fact, that action was filed more than a year <u>after</u> the case before Judge Gold, and was stayed pending Judge Gold's decision whether to dismiss or transfer, because the cases were "'mirror image' lawsuits."  (*See* Rubi Decl., Ex. G at 2; Rubi Decl., Ex. H.)  The ball remained in this Court, and Judge Gold denied the transfer motion.

Consequently, the dispute was never transferred to the Northern District of California.[1]  Judge Gold's decision denying transfer directly applies here and warrants denial of SCEA's motion.

In the third '534 Patent enforcement suit in this District, *Rothschild Trust Holdings, LLC v. Citrix Systems, Inc.*, No. 1:06-cv-21359-KING (S.D. Fla. filed May 26, 2006), Judge King authorized the defendants to file an overlength brief on claim construction and rendered a thirty-seven-page claim-construction order.  (Rubi Decl., Exs. I, J.)  SCEA argues that none of Judge King's extensive work matters, because the '534 Patent was the subject of a later reexamination proceeding in the U.S. Patent and Trademark Office.  Although SCEA is free to argue (incorrectly) that the reexamination proceedings somehow altered the meaning of certain claim terms compared to Judge King's construction, that mere argument is no ground for assuming at this stage that none of Judge King's extensive work has any value anymore.

SCEA's eagerness to discard the work done by this District is as unseemly as SCEA's accompanying suggestion that the Northern District of California is better able to handle claim construction.  (*See* Mot. at 6 ("The Northern District of California is well-equipped to engage in this new analysis."); *id.* at 7 n.1 ("[T]his issue would be far more conveniently resolved in the Northern District of California.")).  Claim construction is no better or more convenient in the Northern District of California than in this District, but the precedential value of Judge King's construction is certainly greater in this District than in the Northern District of California.  *See Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 391 (1996) (holding claim construction to constitute a matter of law for court to decide, and explaining that "treating interpretive issues as purely legal will promote (though it will not guarantee) intrajurisdictional certainty through the application of *stare decisis* on those questions not yet subject to interjurisdictional uniformity under the authority of the single appeals court").

## F.  SCEA Already Mooted Its Own Argument By Requesting and Receiving an Expedited Schedule in this District

SCEA argues that "if the case is transferred to the Northern District of California, SCEA intends to bring a motion for an early Markman hearing, as SCEA believes there is a single claim construction issue that is potentially case dispositive."  (Mot. at 6 n.1.)  Since filing the Motion, however, SCEA has already sought and received exactly that procedural privilege from this

---

[1] Both cases were eventually stayed pending reexamination in the U.S. Patent and Trademark Office, with the California case avoiding final closure only because Judge Gold had not yet decided a personal jurisdiction issue.  The reexamination ultimately concluded with a confirmation of the validity of all claims.  (*See* D.E. 1-3 at 16-18 (per filing-stamp pagination).)

Court.  In the Scheduling Conference Report (*see* D.E. 16 at 2), and again at the July 24, 2014 scheduling conference, SCEA insisted that it would not genuinely participate in a settlement conference unless the Court first resolved the same claim-construction issue to which the Motion refers.  The Court and RDMI agreed to this unusual step, and the Court set a date of November 15, 2014 for the Markman hearing on that issue, with initial Markman briefs due on September 22, 2014 – i.e., next month.  Transferring this case would make no sense when the Court has already tailored the proceedings to suit SCEA's predilection, and when the result of that specially-tailored proceeding may yield a settlement resolving this dispute in just a few months.

The expedited schedule here is especially significant because the median time to trial in this District is 16.5 months, while in the Northern District of California it is 27.4 months.  *See* http://www.uscourts.gov/uscourts/Statistics/JudicialBusiness/2013/appendices/T03Sep13.pdf.

## III.  APPLICABLE LAW

Defendants request that this case be transferred to the Northern District of California pursuant to 28 U.S.C. § 1404(a).  Although the U.S. Court of Appeals for the Federal Circuit has appellate jurisdiction over this patent case, Eleventh Circuit precedent governs issues that are not specific to patent law, including issues regarding transfer under § 1404(a).  *Winner Int'l Royalty Corp. v. Wang*, 202 F.3d 1340, 1352 (Fed. Cir. 2000) (stating that review of district court's decision on motion to transfer "is governed by the law of the regional circuit in which it sits").

### A.    The Prevailing Standards in the Eleventh Circuit

"The burden is on the movant to establish that the suggested forum is more convenient." *Steifel Labs., Inc. v. Galderma Labs., Inc.*, 588 F. Supp. 2d 1336, 1338 (S.D. Fla. 2008).  Factors governing a decision whether to transfer a case under § 1404(a) include:

> (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Manual v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005).[2]  Of these, the plaintiff's choice of forum is the starting point, and "'should not be disturbed unless it is clearly outweighed by other considerations.'"  *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260

---

[2] For some reason, SCEA takes its formulation of relevant factors from an unreported district court case rather than binding circuit court authority.

(11th Cir. 1996) (quoting *Howell v. Tanner*, 650 F.2d 610, 616 (11th Cir. 1981)).  As a result, "[u]ltimately, transfer can only be granted where the balance of convenience of the parties *strongly* favors the defendant."  *Steifel Labs., Inc. v. Galderma Labs., Inc.*, 588 F. Supp. 2d 1336, 1339 (S.D. Fla. 2008).

In this case, the plaintiff's choice of forum is not "clearly outweighed by other considerations."  *Robinson*, 74 F.3d at 260 (quoting *Howell*, 650 F.2d at 616).  To the contrary, trial efficiency and the interests of justice (particularly as to the expedited claim-construction hearing already scheduled in this District at SCEA's request, and the history of enforcement proceedings, including claim construction, in this District), as well as SCEA's obviously far greater means, strongly reinforce the plaintiff's choice of forum.  Together, these factors overwhelmingly weigh against transfer, while the remaining factors are essentially neutral.

**B.    SCEA's Erroneous Reliance on the "Center of Gravity" Concept**

SCEA repeatedly urges the Court to transfer the case on the ground that the so-called "center of gravity" of the case is in California.  However, the center-of-gravity concept is no substitute for faithful application of controlling law.  The Eleventh Circuit has never recognized the existence of a "center of gravity" analysis in transfer decisions under § 1404(a); the term has literally never been mentioned in any Eleventh Circuit decision on transfer of venue.  The considerations set forth in Eleventh Circuit (not Federal Circuit) precedent are the only legitimate ground for decision of the present motion.

The court in *Radisson Hotels International, Inc. v. Westin Hotel Co.*, 931 F. Supp. 638 (D. Minn. 1996), reached a similar conclusion:

> Defendants argue that in applying § 1404(a) in a patent infringement case, the Court should place great emphasis on the "hub" or "center of gravity" of the alleged infringing activity.  The Defendants have provided no authority to show the three prong test mandated by the language in § 1404(a) and the law in this Circuit has been supplanted by this standard in patent infringement actions.

*Id.* at 642 n.4; *see also Caddy Products, Inc. v. Seating Concepts, LLC*, No. Civ. 05-1231 JRT/FLN, 2006 WL 1085144 (D. Minn. Apr. 24, 2006) (following *Radisson* and denying transfer where another case involving same patents was pending in plaintiff's chosen forum, thus avoiding duplication of claim-construction proceedings).

At most, the "center of gravity" concept might be understood as a mere alternative expression of the considerations regarding access to proof and convenience of witnesses.

Because that is all the "center of gravity" test can legitimately be, it really serves no useful analytical purpose and should be disregarded to avoid legal error.

SCEA relies heavily on this Court's transfer order in *Mayfonk, Inc. v. Nike, Inc.*, No. 0:13-cv-60755-DMM (S.D. Fla. June 18, 2013).  This unreported order was based in large part on the "center of gravity" concept discussed above, and therefore should not be viewed as overriding Eleventh Circuit precedent on the appropriate factors to consider under § 1404(a). Another problem with SCEA's reliance on *Mayfonk* is that the plaintiff in that case had entered an agreement containing a forum-selection clause that designated California as the forum for litigation.  *Id.* at 7.  Although there was a question about whether the agreement was in force, the Court nevertheless weighed the forum-selection clause as a consideration in favor of transfer.  *Id.*

The present case, by contrast, is like the prior '534 Patent enforcement proceeding brought in this District by Rothschild Trust Holdings, LLC against Orb Networks.  In denying the defendant's motion for transfer, Judge Gold noted that there was no forum-selection clause and indeed no contract between the parties.  (Rubi Decl., Ex. F at 2 n.1.)  Nor is there any forum-selection clause or contract between RDMI and SCEA.

The Federal Circuit must follow Eleventh Circuit precedent, which provides no basis for engaging in the so-called center-of-gravity analysis.

## IV.  ARGUMENT

The balance of relevant considerations does not favor transfer, much less justify disturbing RDMI's choice of its home forum.  SCEA fails to carry its burden, and the Motion should be denied.

### A.  Analysis of Individual Factors

#### 1.  Plaintiff's Choice of Its Home Forum Should Not Be Disturbed

"'The plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations.'"  *Robinson*, 74 F.3d at 260 (quoting *Howell*, 650 F.2d at 616); *see also J.I. Kislak Mortgage Corp. v. Conn. Bank & Trust Co., N.A.*, 604 F. Supp. 346, 347 (S.D. Fla. 1985) ("What Defendant does not point out is the well-settled fact that 'a discretionary transfer under 28 U.S.C. § 1404(a) will not be granted absent a clear cut and convincing showing by defendant that the balance of convenience weighs strongly in favor of the transferee court.' . . . "Unless the balance strongly favors the defendant, plaintiff's choice of forum will rarely be disturbed.") (quoting *Vassallo v. Niedermeyer*, 495 F. Supp. 757, 759 (S.D.N.Y. 1980)).

The deference accorded a plaintiff's choice of forum is at its greatest when the plaintiff chooses its home forum.  *See Mason v. Smithkline Beecham Clinical Labs.*, 146 F. Supp. 2d 1355, 1360 (S.D. Fla. 2001) ("[A] plaintiff's choice of forum must be afforded considerable deference, where, as here, the plaintiff has elected to bring suit in the district in which he resides.").

RDMI's choice to litigate at home in the Southern District of Florida therefore plainly weighs against transfer.  Instead of acknowledging this, SCEA opts to distract and mislead.  SCEA argues about where the "center of gravity" in a patent-infringement case is (Mot. at 6), where documents are kept (*id.*), where witnesses reside (*id.*) and where its products are distributed (*id.*).  All of these arguments belong, if anywhere, to other factors in the analysis, and are completely irrelevant to the plaintiff's choice of forum.

SCEA desperately contends that RDMI should not even be considered a Florida plaintiff because it was created recently, despite Mr. Rothschild's longstanding presence here.  As explained above, there is no basis for penalizing and disadvantaging Mr. Rothschild for exercising his rights under state and federal law to create a business entity and assign the '534 Patent to that entity.  (*See supra* Part II.D.)

The Court should not be distracted or misled.  RDMI's choice of its home forum, the Southern District of Florida, is not to be disturbed unless other considerations clearly outweigh it, which they do not.  SCEA fails to carry its burden on this predominant factor, and transfer should be denied.

### 2.   The Balance of Witnesses Does Not Clearly Favor Either Side

Transfer should be denied if it "would merely shift inconvenience from the defendants to the plaintiff."  *Robinson*, 74 F.3d at 260.  The question is not who can dream up a longer list of potential witnesses:

> [M]otions to transfer are not determined solely upon the outcome of a contest between the parties as to which of them can present a longer list of possible witnesses located in the respective districts within which each party would like to try the case.  The party seeking the transfer must support its motion by specifying the key witnesses to be called and particularly stating the significance of their testimony.

*Mason*, 146 F. Supp. 2d at 1362; *accord A Slice of Pie Prods., LLC v. Wayans Bros. Entm't*, 392 F. Supp. 2d 297, 308 (D. Conn. 2005) ("While the greater number of defendants obviously demonstrates a collective greater inconvenience for them, a venue transfer here would do nothing more than shift that inconvenience to plaintiff.").

Thus, even if the Court were to assume that there are more witnesses in California than Florida, that would not end the inquiry: "A motion for transfer is not simply a numbers game. Rather, the Court must consider whether, though inconvenienced, the enumerated witnesses would attend a trial, the importance of the witnesses' testimony, and whether that testimony could be effectively presented by deposition." *Mason*, 146 F. Supp. 2d at 1363.

Judge Gold applied these principles in denying transfer when Rothschild Trust Holdings, LLC sued in this District to enforce the '534 Patent in the *Orb Networks* case:

> [W]here the transfer would merely shift the inconvenience from the defendant's witnesses to the plaintiff's witnesses, transfer is not appropriate.  Moreover, courts have been uniform in holding that a bald showing of inconvenience of witnesses is insufficient. . . . "[I]f the party moving for transfer under § 1404(a) merely makes a general allegation that witnesses will be necessary, without identifying those necessary witnesses and indicating what their testimony at trial will be, the motion for transfer based on convenience of witnesses will be denied."
>
> In this case, Orb has made only a general allegation regarding the fact that its employees and business partners reside in California.  It has not identified specific witnesses whose testimony would be necessary, nor indicated what their testimony would be at trial.  Orb has failed to meet its burden to show that this action should be transferred to California for the convenience of the witnesses.

(Rubi Decl., Ex. F at 3-4 (citations omitted) (quoting *Am. Standard, Inc. v. Bendix Corp.*, 487 F. Supp. 254, 262 (W.D. Mo. 1980)).)  Likewise, Judge King, denying transfer in the *InterActual* case, observed: "While many of Defendant's witnesses reside in California, all of Plaintiff's witnesses reside here in Florida.  Therefore, this case will necessarily inconvenience one party or the other."  (Rubi Decl., Ex. E at 2.)

Like the defendant in *Orb Networks*, SCEA relies on broad assertions about its employees and business partners.  SCEA refers to unidentified "employees responsible for the accused products" (Mot. at 11), and unidentified employees from its "engineering, marketing, sales, and finance departments" (*id.*).  The only specific individuals SCEA identifies are its employees John Koller, who supposedly "will explain SCEA's marketing efforts" (*id.*), and Aaron Wong, who supposedly will "provide testimony relating to damages" (id.).  This falls far short of satisfying SCEA's duty to "specify[] the key witnesses to be called and particularly stat[e] the significance of their testimony."  *Mason*, 146 F. Supp. 2d at 1362.  The key witnesses in this patent case will be those who testify on the central questions of infringement and validity. *See* Edward G. Poplawski, *Selection and Use of Experts in Patent Cases*, 9 Fed. Cir. Bar J. 145,

145 (1999) ("Patent litigation typically involves complex technical issues . . . and increasingly complex damages theories. . . . All of these considerations dictate that expert testimony is virtually essential in assisting the trier of fact to understand the evidence and to resolve factual issues in litigation."); *id.* at 183 ("[E]xperts remain a *sine qua non* in patent litigation."); *Patent Litigation: Is It Worth the Expense?*, 26 Genetic Eng'g & Biotech. News (Apr. 1, 2006), *available at* http://www.genengnews.com/gen-articles/patent-litigation-is-it-worth-the-cxpense/1454 (last visited July 30, 2014) ("[E]xpensive expert witnesses are usually required in patent cases.  In fact, multiple experts are frequently necessary to cover the technology, as well as the damages calculations.").

Testimony concerning marketing, if it is even relevant, is certainly not "key."  Testimony on damages is relevant, but ordinarily would be a matter of documentary evidence and expert testimony.  *See* Poplawski, *supra*, at 156-57 ("In many patent cases, trial counsel will need at least two types of damages experts: an accountant and a licensing or industry expert."); Ned L. Conley, *An Economic Approach to Patent Damages*, 15 AIPLA Q.J. 354, 390 ("The proof of damages in a patent case requires heavy reliance on expert witnesses . . . .").  Indeed, the patent statute itself recognizes the need for expert testimony on damages.  35 U.S.C. § 284 ("The court may receive expert testimony as an aid to the determination of damages or of what royalty would be reasonable under the circumstances.").  SCEA's suggestion that an in-house employee will perform that role is not credible.  SCEA fails to carry its burden of particularly identifying key witnesses and anticipated testimony as required to support transfer.

Moreover, there is no question that any SCEA employee who truly is a witness will be subject to deposition in California.  *See* Fed. R. Civ. P. 30 (providing for deposition of party witnesses); Fed. R. Civ. P. 45 (providing for subpoena to command attendance at deposition).  Thus, "[s]ince all identified California witnesses are employees of defendants, who would be deposed in California, the convenience of witnesses is only implicated at the trial stage," *A Slice of Pie Prods.*, 392 F. Supp. 2d at 308 – if a trial even becomes necessary.

SCEA also relies on a supposed need for testimony from "third party Sony Network Entertainment International LLC" (Mot. at 12) and "third party developers located in California" (*id.*), but SCEA fails to identify any individuals or state what their testimony would be.  This is exactly the sort of "bald showing of inconvenience of witnesses" that Judge Gold dismissed in *Orb Networks*.  (Rubi Decl., Ex. F at 4.)  As the court in *A Slice of Pie Productions* observed,

"the mere speculation that there may come to be such [third-party] witnesses cannot be weighed in the calculus at this time."  392 F. Supp. 2d at 308.

Further, in the event that testimony is needed from third parties who cannot be compelled to testify at trial, their deposition testimony can readily be presented, whether by videotape or transcript.  *See* Fed. R. Civ. P. 32(a)(4); *Kenneth F. Hackett & Assocs., Inc. v. GE Capital Info. Tech. Solutions, Inc.*, No. 10-20715-CIV, 2010 WL 3056600, at *6 (S.D. Fla. Aug. 4, 2010) (stating that defendants "Ikon and GE may depose non-employee-witnesses who are unwilling to physically appear at trial (such as Ikon's unnamed Pennsylvania witnesses) and use the testimony at trial" and that courts' relative ability "to adequately compel the presence of unwilling witnesses does not support transfer"); *Pitney Bowes, Inc. v. Nat'l Presort, Inc.*, 33 F. Supp. 2d 130, 131 (D. Conn 1998) ("To the extent that non-cumulative testimony is proffered by these individuals, the court in Connecticut will entertain video taped depositions.").

For RDMI, testimony can be expected to come from Mr. Rothschild.  *See* Poplawski, *supra*, at 173 ("[T]rial counsel for the patentee normally has technical experts, including the inventor, explain the invention, underlying technology, and prior art.  The patentee will frequently detail how the invention constitutes an important advance over selected prior art and explain the accused product or process and how that product or process meets the limitations of the claims in issue, either literally or under the doctrine of equivalents.").  Testimony will also come from RDMI's technical expert on infringement, and from RDMI's economic expert on damages.  The identity of these experts is not yet known, but they certainly cannot be presumed to be located in California.  Further, SCEA has asserted a defense of patent invalidity (D.E. 6 at 3), and depending on the arguments SCEA makes, testimony may be needed from Mr. Rothschild, from RDMI's technical expert, and perhaps from the attorneys who prosecuted the '534 Patent, who are located in this District (*see* Rothschild Decl. ¶ 12; '534 Patent, cover page).

SCEA claims RDMI's witnesses would not be inconvenienced because Mr. Rothschild has filed litigation in California.  Again, this is a misleading characterization of a single case that was filed and voluntarily dismissed before any responsive pleading was even filed, and thus before any substantive litigation or testimony.  If anything, the case demonstrates that Mr. Rothschild did not have the will to litigate in California.

The converse, however, is true; SCEA has demonstrated a hearty appetite for litigation in this District, and thus a ready willingness to expose its employees to serving as witnesses here when SCEA wishes.  SCEA itself has filed two lawsuits in this District, and SCEA-related

entities have filed a total of 226 lawsuits in this District and 559 lawsuits in federal courts in Florida as a whole.  (Rubi Decl. ¶¶ 2-7.)  This lengthy litigation history belies SCEA's present claims of witness inconvenience.

As in *Robinson* and *Orb Networks* and *InterActual*, transfer would merely shift the inconvenience from SCEA's witnesses to RDMI's witnesses.  SCEA fails to carry its burden of demonstrating otherwise.  Transfer should be denied.

### 3.   SCEA Fails to Show That the Location of Documents and Access to Sourcesof Proof Support Transfer

SCEA argues that documents relating to the accused products are located in the Northern District of California.  However, the location of documents and access to other sources of proof has all but ceased to be a significant factor in transfer analysis, because of digital storage and communications technologies.  *Steifel Labs., Inc. v. Galderma Labs., Inc.*, 588 F. Supp. 2d 1336, 1340 (S.D. Fla. 2008) ("[I]n the current world of expedited transfer of information, assembly and production of any necessary information can be produced just as easily in this District as in Texas.  Accordingly, this factor does not warrant transfer of the case.") (citation omitted); *Mason*, 146 F. Supp. 2d at 1364 ("[I]n light of technological advancements in document imaging, management, and retrieval, it is unlikely that document production will be unduly burdensome if transfer is denied."); *see also Kenneth F. Hackett*, 2010 WL 3056600, at *5 ("Producing documents and other files for litigation, however, is not usually a burdensome ordeal due to technological advancements, such as electronic document-imaging and retrieval.").

This factor does not clearly weigh in favor of either side.  Consequently, SCEA has failed to carry its burden of demonstrating that this factor favors transfer.

### 4.   The Convenience of the Parties Favors This District

SCEA argues that it "maintains no offices in this District" (Mot. at 11), and that "it would be substantially more inconvenient for SCEA to litigate in this District rather than the Northern District of California" (*id.* at 12).  SCEA's history as a plaintiff in this District, however, belies the claim of inconvenience.  As noted above, SCEA itself has filed two lawsuits in this District, and SCEA-related entities have filed a total of 226 lawsuits in this District and 559 lawsuits in federal courts in Florida as a whole.  (Rubi Decl. ¶¶ 2-7.)

Regarding RDMI, SCEA repeats its intentionally misleading mantra about litigation filed in California and claims that "there is no reason why the Northern District of California would be inconvenient for Mr. Rothschild or anyone else."  (Mot. at 12.)  The existence of a single lawsuit

(filed by a different entity) in the Southern District of California, voluntarily dismissed before any substantive litigation occurred, is hardly evidence that the Northern District of California would be convenient for RDMI.

On the other hand, Mr. Rothschild is RDMI's owner and sole employee, and has lived in this District for over forty years.  (Rothschild Decl. ¶ 1.)  Further, only three suits have previously been filed to enforce the '534 Patent –and all of them were brought in this District.  Those suits demonstrate that this District has always been viewed as the most convenient forum for '534 Patent infringement litigation, including two prior decisions that denied transfers to other districts.

Transferring this case to the Northern District of California "would merely shift inconvenience from the defendant[] to the plaintiff."  *Robinson*, 74 F.3d at 260.  SCEA has failed to carry its burden of demonstrating that the convenience of the parties favors transfer.  The Motion should be denied.

## 5. SCEA Fails to Show That the Locus of Operative Facts Supports Transfer

The patent statute defines an infringer as one who "makes, uses, offers to sell, or sells" the patented invention without authorization.  35 U.S.C. § 271.  SCEA concedes that it sells the accused products nationwide.  (Mot. at 13.)  The infringement is therefore diffused throughout the nation, and the location of infringement does not particularly weigh in favor of either forum.

SCEA argues that "the Northern District of California, where SCEA is headquartered and hundreds of employees responsible for the accused products reside and work" (Mot. at 13), is the "center" (*id.*) of the alleged infringement.  The patent statute, however, does not provide a cause of action for being "headquartered" for being "responsible"; rather, infringement is defined as making, using, offering to sell or selling.  SCEA fails to allege that any of the infringing products are manufactured in the United States, much less in the Northern District of California.  To the contrary, the products themselves indicate that they are made in Asia.  (Rubi Decl. ¶ 14.)  *See also Biax Corp. v. NVIDIA Corp.*, No. 09-cv-01257-PAB-MEH, 2011 WL 819695, at *1 (D. Colo. Mar. 2, 2011) (stating that Sony Computer Entertainment Inc. "manufactures the [PS3] consoles, via transactions occurring outside of the United States").  Because SCEA's sales are nationwide and diffuse, so is the location of the accused activity.

This factor should have little bearing in a patent case involving overseas manufacturing and nationwide sales.  A patent case is unlike, for example, an environmental cleanup case, or a construction case, where the operative facts are truly local.  To the extent SCEA relies on cases

deeming the accused infringer's location to be the locus of operative facts, those cases erroneously conflate the locus of operative facts with the location of the infringer's employees and documents, which is simply a repetition of those separate considerations, and perhaps a repetition of the erroneous and oversimplified "center of gravity" concept.  (*See supra* Part III.B.)  The Eleventh Circuit has never recognized that concept in any § 1404(a) transfer case, and Congress could easily have deemed venue for all patent cases to lie where the infringer is located, but Congress did not.  SCEA's argument proves too much.

The Motion fails to demonstrate that the locus of operative facts warrants transfer.

### 6.   SCEA Fails to Show That the Availability of Process Supports Transfer

As noted above (*see supra* Part IV.A.2.), unwilling third-party witnesses are not a factor that can be weighed with any certainty at this time.  SCEA generally argues that third-party witnesses in California will be necessary, but fails to identify any individual witness, much less the substance of his or her anticipated testimony.  This amounts to a "bald showing" (Rubi Decl., Ex. F at 4), and "mere speculation," *A Slice of Pie Prods.*, 392 F. Supp. 2d at 308, neither of which is sufficient to carry SCEA's burden to demonstrate that transfer is warranted.

Having failed to carry the burden to identify with particularity the supposed witnesses and their testimony, SCEA also fails to carry the burden of showing "whether, though inconvenienced, the enumerated witnesses would attend a trial, the importance of the witnesses' testimony, and whether that testimony could be effectively presented by deposition."  *Mason*, 146 F. Supp. 2d at 1363.  If third-party testimony ever becomes necessary here, and the third-party witness will not attend trial, that witness's testimony can be obtained at deposition and presented at trial by videotape or transcript.  *See* Fed. R. Civ. P. 32(a)(4); *Kenneth F. Hackett & Assocs.*, 2010 WL 3056600, at *6 (stating that defendants can use non-party deposition testimony at trial, and denying transfer); *Pitney Bowes*, 33 F. Supp. 2d at 131 (same).

SCEA fails to carry its burden of showing that the availability of process is a consideration that warrants transfer.  The Motion should be denied.

### 7.   The Relative Means of the Parties Favors Keeping the Case in This District

It is beyond serious debate that the relative means of the parties strongly favors keeping this case in RDMI's home forum.  RDMI was created by Mr. Rothschild, an individual inventor, to license and enforce his inventions.  (Rothschild Decl. ¶ 10.)  SCEA's misleading references to litigation filed in California lend no support to transfer.  Only one case was filed, and it was voluntarily dismissed prior to any substantive filing by the defendant.

By contrast, SCEA is a huge, sprawling corporation that by its own representations has "engineering, marketing, sales, and finance departments." (Mot. at 11.) SCEA's estimated revenue from the accused products alone is believed to be at least in the tens of billions of dollars. (Rothschild Decl. ¶ 16.) SCEA has filed two lawsuits in this District, and SCEA-related entities have filed a total of 226 lawsuits in this District and 559 lawsuits in federal courts in Florida as a whole. (Rubi Decl. ¶¶ 2-7.) In this very case, SCEA is represented by no less than five attorneys located in five different states (Mot. at 15), compared to RDMI's two attorneys in this District (Mot. at 17).

SCEA is far better equipped to litigate here than RDMI is to litigate in the Northern District of California. SCEA fails to carry its burden on this factor. Transfer should be denied.

### 8. SCEA Fails to Show That the Northern District of California's Familiarity with the Governing Law Supports Transfer

SCEA states that "[a]s a case involving issues of federal law, the Northern District of California is equally competent to address the issues in this lawsuit." (Mot. at 14.) However, even assuming the truth of that statement, SCEA's burden is to show that the case should be transferred to the Northern District of California. Stating that both courts are equally familiar with the governing law constitutes a failure to carry that burden. The Motion should be denied.

### 9. Trial Efficiency and the Interests of Justice Are Alone Dispositive and Overwhelmingly Favor Keeping the Case in This District

Trial efficiency and the interests of justice strongly favor keeping the case in this District, overwhelming all other considerations.

The existence of a trial schedule with expedited claim-construction calendared at SCEA's own request, with briefs due next month, weighs very heavily against transfer. (*See supra* Part II.F.) SCEA sought and received that special accommodation on the premise that it would participate in a settlement conference only if a supposedly important claim-construction issue was first decided. (*See* D.E. 16 at 2 ("Defendant is amenable to conducting an early settlement conference, but Defendant believes that such a settlement conference would be beneficial and productive only if it occurs after a ruling on Defendant's pending motion to transfer . . . and a ruling by the appropriate court on claim construction.").) The Court and RDMI agreed to that extraordinary request, and the Court entered a scheduling order setting a November 14, 2014 "First *Markman* Hearing" (D.E. 19 at 2), with briefs due September 22, 2014 (*id.* at 1). The case is therefore making fast progress by SCEA's own measure, and could be resolved in several months. At worst, by the same order, trial is set for July 13, 2015. Transfer would disrupt the

speedy calendar that has been set in this District.  *Cf. Am. Airlines, Inc. v. Rogerson ATS*, 952 F. Supp. 377, 384 (N.D. Tex. 1996) ("[T]he Court has already entered an initial scheduling order in this case and a transfer would disrupt that schedule.").  Under these circumstances, SCEA cannot carry its burden of showing that transfer is warranted.

 The expedited schedule here is especially significant because the median time to trial in this District is 16.5 months, while in the Northern District of California it is 27.4 months.  *See* http://www.uscourts.gov/uscourts/Statistics/JudicialBusiness/2013/appendices/T03Sep13.pdf.

Still another consideration weighing heavily against transfer is the prior claim-construction order by Judge King of this District, interpreting numerous claim terms of the '534 Patent.  A claim construction has precedential value in the district where it was rendered, because claim construction is a matter of law.  *Markman*, 517 U.S. at 391.  Because claim construction is an arduous task, the availability of a precedential claim construction in a forum strongly favors that forum as a matter of trial efficiency and the interests of justice.  *Id.*

SCEA argues that it is not bound by this Court's prior claim constructions, but the authority on which SCEA relies is a non-binding district court decision that itself relies on authority predating the Supreme Court's critical decision in *Markman*.  (Mot. at 13 (citing *Third Wave Tech., Inc. v. Stratagene Corp.*, 381 F. Supp. 2d 891, 914 (W.D. Wis. 2005) (citing *Jackson Jordan, Inc. v. Plasser Am. Corp.*, 747 F.2d 1567, 1574-75 (Fed. Cir. 1984) and *Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 329 (1971))).)  As explained previously, the Supreme Court in *Markman* held that claim construction is a matter of law for a court to decide.  Explicitly referring to *Blonder-Tongue*, the Court stated:

> But whereas issue preclusion could not be asserted against new and independent infringement defendants even within a given jurisdiction, treating interpretive issues as purely legal will promote (though it will not guarantee) intrajurisdictional certainty through the application of *stare decisis* on those questions not yet subject to interjurisdictional uniformity under the authority of the single appeals court.

*Markman*, 517 U.S. at 391.  Consequently, a claim construction has precedential effect in the district court where it is rendered, just like any other ruling on a question of law.  It is only outside the jurisdiction where a different court may take a different view and treat the prior construction as merely persuasive authority.  SCEA's argument that it was not a party to the prior claim construction proceeding is thus mistaken.  Litigants are always bound by intra-district precedent on questions of law decided in prior cases involving different parties.

Judicial efficiency and the interests of justice therefore weigh heavily against transferring this case to the Northern District of California. The precedential effect of Judge King's thirty-seven-page claim construction order, which resulted from the parties' laborious submissions, including the defendants' submission of an overlength brief, would be wasted. SCEA's aim is clear: "the entire claim construction process will have to be redone." (Mot. at 14.) Fortunately, *Markman* and § 1404(a) permit the Court to avoid such a wasteful outcome.

SCEA's remaining arguments are completely without merit. SCEA argues that "as [SCEA] resides in the Northern District of California, there is a strong local interest in having this controversy decided there as the 'home' forum." (Mot. at 14.) This is preposterous. The controlling legal principle is that RDMI's choice of its own home forum, the Southern District of Florida, is to be accorded extra deference. *Mason*, 146 F. Supp. 2d at 1360 (stating that plaintiff's chosen forum receives "considerable deference, where, as here, the plaintiff has elected to bring suit in the district in which he resides"). (*See generally supra* Part IV.A.1.) SCEA cites no authority for upending this principle and replacing it with a rule favoring a defendant's home forum.

Equally preposterous is SCEA's bald contention that "conversely, Florida citizens have no stake in this controversy." (Mot. at 14.) The courts and citizens in this District and state have an interest in providing a forum for residents to seek legal redress for torts committed here, and that includes sales of products that infringe residents' patents. *See Mobile Diagnostic Imaging, Inc. v. Gormezano*, No. 12-60888-CIV, 2012 WL 3244664, at *4 (S.D. Fla. Aug. 9, 2012) ("Of course, Florida has a 'very strong interest' in providing a forum for its residents to obtain relief from nonresidents causing injuries in Florida.") (quoting *Licciardello v. Lovelady*, 544 F.3d 1280, 1288 (11th Cir. 2008)).

Trial efficiency and the interests of justice strongly favor keeping the case in this District and adhering to the present expedited schedule. SCEA fails to carry its burden of demonstrating that transfer is warranted. The Motion should be denied.

### B. The Balance of Factors Warrants Keeping the Case in This District, Adhering to the Expedited Schedule Adopted July 25, 2014, and Denying Transfer

SCEA has failed to carry its burden of demonstrating that transfer is warranted.

RDMI's choice of its own home forum is entitled to "considerable deference," *Mason*, 146 F. Supp. 2d at 1360, and is not to be disturbed unless the balance of other factors *strongly* favors the defendant," *Steifel Labs.*, 588 F. Supp. 2d at 1339. The most important of those other

factors favor keeping the case in this District.  At SCEA's own request, the Court and RDMI agreed to an expedited calendar, according to which an initial claim-construction proceeding will be briefed next month and heard in November.  Resolution of that issue will, by SCEA's own estimation (i.e., according to SCEA's own representation when seeking the expedited schedule), set the stage for resolution of the case.  Likewise, the precedential effect of Judge King's thirty-seven-page claim-construction order makes this District a far preferable forum.  Transfer would undermine the precedential effect of that order, waste judicial resources and thus defeat the goal expressed by the Supreme Court's decision in *Markman*.

The relative means of the parties is another consideration clearly weighing against transfer.  The remaining factors are not as significant, but do not support transfer.  Convenience of parties and witnesses does not warrant transfer if the inconvenience would merely be shifted from plaintiff to defendant, yet SCEA fails to show anything more than that.  Rather, convenience of parties favors this District, where Mr. Rothschild and RDMI have deep roots, where SCEA has sold many products, and where SCEA and related entities have filed many lawsuits.  Convenience of witnesses is not a numbers game, and SCEA does not credibly identify any key witnesses, much less explain what their testimony would be; for essentially the same reason, SCEA fails to carry its burden on the availability-of-process factor.  SCEA fails to carry its burden on the remaining factors as well: the location of documents is not significant in view of digital technology; the location of operative facts is not significant where the question is infringement resulting from nationwide sales; and the courts' respective familiarity with governing law is presumably comparable.

SCEA fails to carry its burden of demonstrating that transfer is warranted.  The Motion should be denied.

**V.   <u>Conclusion</u>**

For the foregoing reasons, the Court should deny the motion to transfer.

Dated:  August 4, 2014                Respectfully submitted,

/s/ John C. Carey
John C. Carey
Florida Bar No. 78379
jcarey@careyrodriguez.com
Ernesto M. Rubi
Florida Bar No. 92014
erubi@careyrodriguez.com
CAREY RODRIGUEZ O'KEEFE
MILIAN GONYA, LLP
1395 Brickell Avenue, Suite 700
Miami, Florida 33131
Telephone: (305) 356-5455
Facsimile:  (305) 372-7475

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 4, 2014, I electronically filed the foregoing document with the clerk of Court using CM/ECF, and that the foregoing document is being served this day on all counsel of record or pro se parties identified on the below Service List, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/ Ernesto M. Rubi*_____

### SERVICE LIST
Rothschild Digital Media Innovations, LLC v. Sony Computer Entertainment America LLC
Case No. 14-22134-Civ-Middlebrooks
United States District Court
Southern District of Florida

Jeremy T. Elman, Esq.
jeremy.elman@dlapiper.com
DLA PIPER LLP
200 South Biscayne Boulevard, Suite 2500
Miami, Florida 33131
Telephone:  (305) 423-8514

Gregory P. Sitrick, Esq.
gregory.sitrick@quarles.com
QUARLES & BRADY LLP
One Renaissance Square
Two North Central Avenue
Phoenix, Arizona 85004
Telephone:  (602) 229-5317

David R. Cross, Esq.
david.cross@quarles.com
QUARLES & BRADY LLP
411 East Wisconsin Avenue
Milwaukee, Wisconsin 53202
Telephone:  (414) 277-5669

Christopher J. Fahy, Esq.
christopher.fahy@quarles.com
QUARLES & BRADY LLP
300 North LaSalle Street, Suite 4000
Chicago, Illinois 60654
Telephone:  (312) 715-5000

Nikia L. Gray, Esq.
nikia.gray@quarles.com
QUARLES & BRADY LLP
One South Church Avenue, Suite 1700
Tuscon, Arizona 85701-1621
Telephone:  (520) 770-8700

*Counsel for Defendant*