1  Gregory P. Sitrick (*pro hac vice*)
   Gregory.sitrick@quarles.com
2  Quarles & Brady LLP
   One Renaissance Square
3  Two North Central Avenue
   Phoenix, AZ  85004-2391
4  Phone: (602) 229-5200
   Fax:  (602) 229-5690
5  AZ Bar No. 028756

6  Krista Celentano (*local counsel*)
   Krista.celentano@dlapiper.com
7  DLA Piper LLP (US)
   2000 University Avenue
8  East Palo Alto, CA 945303-2214
   Phone: (650) 833-2000
9  CA Bar No. 279526

10  Attorneys for Defendant/Counterplaintiff Sony
    Computer Entertainment America LLC
11  (See signature page for all counsel of record)

12

13              UNITED STATES DISTRICT COURT

14            NORTHERN DISTRICT OF CALIFORNIA

15

16  ROTHSCHILD DIGITAL MEDIA
    INNOVATIONS, LLC,                          Case No.  5:14-CV-03928-PSG
17
              Plaintiff/Counterdefendant,      **DEFENDANT SONY COMPUTER
18                                             ENTERTAINMENT AMERICA LLC'S
    v.                                         MOTION FOR RULE 11 SANCTIONS
19                                             AND MEMORANDUM OF LAW**
    SONY COMPUTER ENTERTAINMENT
20  AMERICA LLC,                               Date:        December 16, 2014
                                               Time:        10:00 AM
21            Defendant/Counterplaintiff.      Judge:       Magistrate Judge Paul S. Grewal
                                               Courtroom:  5, 4th Floor
22

23          Defendant/Counterplaintiff, SONY COMPUTER ENTERTAINMENT AMERICA LLC,

24  by and through undersigned counsel, hereby gives notice to all parties that this Motion for

25  Rule 11 Sanctions will come on for hearing on December 16, 2014, at 10:00 a.m. before

26  Magistrate Judge Paul S. Grewal in Courtroom 5, 4th Floor, of the United States District Court

27  for the Northern District of California, located in the Robert F. Peckham Federal Building,

28  280 South 1st Street, San Jose, California, 95113.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Pursuant to Fed. R. Civ. P. 11, Sony Computer Entertainment America LLC ("SCEA") hereby moves for sanctions against Rothschild Digital Media Innovations, LLC ("Plaintiff") and Plaintiff's counsel in the form of a dismissal of Plaintiff's claims with prejudice and monetary sanctions.  Plaintiff's allegations of infringement of United States Patent No. 6,101,534 ("the '534 Patent") against SCEA are frivolous.  In particular, Plaintiff's claim is based on an infringement theory that Plaintiff clearly disavowed during reexamination of the '534 Patent.  For weeks before the filing of this lawsuit, SCEA repeatedly explained to Plaintiff that its infringement claim was frivolous and urged Plaintiff not to bring suit.  Plaintiff's decision to proceed with the prosecution of this case is precisely the type of conduct that FRCP 11 was designed to address.

1

## TABLE OF CONTENTS

2

**Page**

3   I.     Introduction ........................................................................................................ 1

4   II.    statement of issues to be decided ...................................................................... 3

    III.   STATEMENT OF FACTS ................................................................................. 3

5          A.    The Ex Parte Reexamination of the '534 Patent ..................................... 3

6          B.    Pre-Filing Discussion with Plaintiff ...................................................... 9

7   IV.    Statement of Law ............................................................................................. 11

           A.    Rule 11 Sanctions ................................................................................. 11

8          B.    Prosecution History Disclaimer ........................................................... 12

9   V.     Argument ......................................................................................................... 13

10         A.    The Reexamination History Clearly Precludes Any Infringement Claim
                 Against Auxiliary Site Addresses That Are Structured To Be Accessed by a
11               Local Processor or Other Intermediary ................................................ 13

12         B.    Plaintiff's Infringement Allegations Are Premised On An Objectively
                 Baseless Claim Construction................................................................. 16

13         C.    Plaintiff's Allegations of Infringement are Neither Reasonable Nor Made
                 After Competent Inquiry ....................................................................... 18

14  VI.    Conclusion ....................................................................................................... 19

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page**

## CASES

Am. Piledriving Equip., Inc. v. Geoquip, Inc.,
    637 F.3d 1324 (Fed. Cir. 2011).......................................................................... 13, 14

Antonious v. Spalding & Evenflo Companies, Inc.,
    275 F.3d 1066 (Fed. Cir. 2002).......................................................................... 10, 11

Edwards Lifesciences LLC v. Cook Inc.,
    582 F.3d 1322 (Fed. Cir. 2009).......................................................................... 12

Epistar Corp. v. Int'l Trade Comm'n,
    566 F.3d 1321 (Fed. Cir. 2009).......................................................................... 11

Intamin Ltd. v. Magnetar Technologies, Corp.,
    483 F.3d 1328 (Fed. Cir. 2007).......................................................................... 10

Krippelz v. Ford Motor Co.,
    667 F.3d 1261 (Fed. Cir. 2012).......................................................................... 11, 14

MarcTec, LLC v. Johnson & Johnson,
    664 F.3d 907 (Fed. Cir. 2012)............................................................................ 15, 16

Omega Eng'g, Inc, v. Raytek Corp.,
    334 F.3d 1314 (Fed. Cir. 2003).......................................................................... 11, 13

Phillips v. AWH Corp.,
    415 F.3d 1303 (Fed. Cir. 2005).......................................................................... 12, 15, 16

Q-Pharma, Inc. v. Andrew Jergens Co.,
    360 F.3d 1295 (Fed. Cir. 2004).......................................................................... 17

Raylon, LLC v. Complus Data Innovations, Inc.,
    700 F.3d 1361 (Fed. Cir. 2012)..................................................................... 10, 15, 16, 17

S. Bravo Sys., Inc. v. Containment Technologies Corp.,
    96 F.3d 1372 (Fed. Cir. 1996)............................................................................ 10

Seachange Int'l, Inc. v. C-COR, Inc.,
    413 F.3d 1361 (Fed. Cir. 2005).......................................................................... 12, 13

Townsend v. Holman Consulting Corp.,
    929 F.2d 1358 (9th Cir. 1990)............................................................................ 10

Typhoon Touch Technologies, Inc. v. Dell, Inc.,
    659 F.3d 1376 (Fed. Cir. 2011).......................................................................... 13

Vehicle Operation Technologies LLC v. Am. Honda Motor Co. Inc.,
    CV 13-539-RGA, 2014 WL 4540064 (D. Del. Sept. 12, 2014) ...................... 16, 17

## RULES

Fed. R. Civ. P. 11 .............................................................................................. passim

## I.    __INTRODUCTION__

On January 9, 2014, Plaintiff sent SCEA the letter attached to Plaintiff's Complaint as Exhibit A   (Dkt. #1-3), alleging that SCEA infringes U.S. Patent No. 6,101,534 ("the '534 Patent").   *Id*.  Included with the letter was a claim chart detailing Plaintiff's construction of each element of claim 1 and Plaintiff's application of the same to products allegedly sold by SCEA.  *Id*. These constructions, however, are clearly frivolous in light of the prosecution history of the '534 Patent.  As Plaintiff has been aware of the meritless nature of this suit since before it filed the present Complaint, sanctions are warranted.

Specifically, the '534 Patent was subject to *ex parte* reexamination before the United States Patent and Trademark Office ("USPTO").  During reexamination, the Examiner rejected the claims as anticipated by several different references.  In order to overcome these rejections, Plaintiff's predecessor-in-interest, Rothschild Trust Holdings, LLC ("Rothschild Trust"), [1] appealed to the Board of Patent Appeals and Interferences ("Board"), arguing that the claims of the '534 Patent only cover the situation where a remote server directly accesses the auxiliary site addresses in order to initiate utilization of the data stored there.  That is, Rothschild Trust ***disclaimed*** coverage of a remote server which initiates utilization by indirectly accessing the auxiliary site addresses through an intermediary (for example, by instructing a local computer or processor to retrieve the auxiliary site data).

In response to these repeated arguments, the Board agreed with Rothschild Trust's position and unambiguously held that the scope of the patent claims are limited to a remote server directly accessing the auxiliary site addresses on a computer readable medium to initiate utilization of the data stored there, and does not encompass auxiliary site addresses that are structured to be accessed by a local processor or other intermediary.  Decl. of Christopher J. Fahy (September 26, 2014) ("Fahy Decl."), Appendix 10 at 9-10.  The Board made clear that "broadly interpreting claim 1 to include auxiliary site addresses that are structured to be accessed by a local processor would not be consistent with Patentee's Specification."  *Id*. at 10.  The Board repeated

---

[1] The managing member of Rothschild Trust, Leigh M. Rothschild, is also the principle member of Plaintiff.

QUARLES & BRADY LLP
ATTORNEYS AT LAW
TUCSON

this point over and over again in order to distinguish the prior art. *Id*. at 9-13.  Indeed, this was the sole basis on which the Board confirmed the patent claims over each piece of prior art that it discussed. *Id*. at 10-13.

Incredibly, Plaintiff's claim against SCEA ignores all of this extensive prosecution history. Plaintiff claims that SCEA infringes the '534 Patent because the auxiliary site data on PlayStation game discs are made available to remote servers from the local consoles. Complaint, Ex. A at 30 [Dkt. 1-3] ("In the accused products, auxiliary site data residing on game discs or game cards is structured to be remotely accessed because it is made available (i.e. mounted) to PlayStation Network servers *from the local consoles*…") (emphasis added).   Plaintiff admits that the auxiliary site data is accessed by the local processor in the consoles, not by the remote servers directly.   Nevertheless, Plaintiff claims that remote server access through the local consoles constitutes infringement.   This theory is clearly foreclosed by the plain language of the disclaimers in the prosecution history and the Board's reliance thereon.  Indeed, it is difficult to conceive of a more obvious application of the doctrine of prosecution disclaimer.

Plaintiff's attempt to ignore the prosecution history underscores the extreme nature of its claim.  Online gaming that utilizes a combination of remote servers and removable media goes back decades.  Plaintiff waited fourteen years after issuance of the '534 Patent to make its first accusations against SCEA (or apparently any other gaming company, for that matter)[2] - and this notwithstanding that Plaintiff's principal is no stranger to patent litigation and is currently pursuing over a dozen different patent infringement suits in the name of various legal entities.

SCEA does not take a request for Rule 11 sanctions lightly.  Indeed, SCEA brought the meritless nature of Plaintiff's claim to its attention on several occasions in an attempt to resolve this matter amicably.  But since Plaintiff refuses to dismiss its claim, SCEA is left with no choice

---

[2] It is hardly a surprise that Plaintiff has not previously pursued gaming companies, since the '534 Patent is directed to a system that generates three-dimensional images of *real estate*.  There is no hint anywhere in the '534 Patent that it is directed toward videogame consoles or anything similar, and any attempt to stretch the patent claims to such an absurd extent would raise a plethora of defenses under 35 U.S.C. §§ 102, 103, and 112.  For efficiency, SCEA confines the instant motion solely to the Rule 11 issues relating to prosecution disclaimer, without delving into all the other issues why Plaintiff's claim is frivolous.

QUARLES & BRADY LLP
ATTORNEYS AT LAW
TUCSON

but to file this motion.  Rule 11 sanctions should be granted, and Plaintiff's claim dismissed.

## II.      STATEMENT OF ISSUES TO BE DECIDED

The issues to be decided by the present Motion include: (1) whether prosecution disclaimer prevents the claims of the '534 Patent from being construed in a manner that encompasses a remote server initiating utilization of the auxiliary site data by indirectly accessing the auxiliary site addresses through a local processor or other intermediary; (2) whether a reasonable and competent inquiry would have revealed the prosecution disclaimer and the frivolous nature of Plaintiff's claims; and (3) the nature of the sanctions warranted.

## III.     STATEMENT OF FACTS

### A.      The Ex Parte Reexamination of the '534 Patent

The '534 Patent describes the invention as an online computer interface system that generates three-dimensional images of real estate in real time in a manner that allows for continuous movement and interactivity by the user.  '534 Patent at 1:5-23 [Dkt. #1-3].  The '534 Patent (post-reexamination) contains twenty-three claims: claim 1 and claims 3–24.[3]  The independent claims, 1, 23, and 24, each recite a remote server that communicates with a local processor (such as in a personal computer) over a network (such as the internet).  *Id.* 5:31-34.  The remote server has certain data (referred to as "primary site data") stored at specific locations (referred to as "primary site addresses").  *Id.* at 12:51-60.  The system also includes a "compact, portable and interchangeable computer readable medium" (such as a CD or DVD) upon which certain other data (referred to as "auxiliary site data") is stored at specific locations (referred to as "auxiliary site addresses").  *Id.* at 13:16-42.  Importantly here, the claims further recite that "said remotely accessible, auxiliary site addresses being structured to be remotely accessed by said remote server assembly so as to initiate utilization."

Representative claim 1 is shown below:

> **1.**  An interactive, remote, computer interface system comprising:
> a remote server assembly, said remote server assembly including a
>       quantity of primary site data;
> said remote server assembly including at least one primary site address,

---

[3] Claim 2 was cancelled and claims 23 and 24 were added during reexamination.

QUARLES & BRADY LLP
ATTORNEYS AT LAW
TUCSON

said primary site address including at least a portion of said primary site data and being distinct so as to identify a location thereof on a computer network;

a local processor assembly;

said local processor assembly being coupled in data transmitting and receiving communication with said remote server assembly;

said local processor assembly being structured to access said primary site address so as to achieve said data transmitting and receiving communication with said remote server assembly;

at least one data storage assembly associated with said local processor assembly and structured to contain a quantity of auxiliary site data thereon, said auxiliary site data being associated with said primary site data;

said data storage assembly including a compact, portable and interchangeable computer readable medium;

said compact, portable and interchangeable computer accessible, auxiliary site addresses encoded therein, each of said remotely accessible, auxiliary site addresses including select portions of said quantity of auxiliary site data; and

**said remotely accessible, auxiliary site addresses being structured to be remotely accessed by said remote server assembly so as to initiate utilization** of said select portions of said quantity of auxiliary site data by said local processor assembly in conjunction with said primary site data.

*Id*. at 16:42–17:10 (claim 1) (emphasis added).

A third party request for *ex parte* reexamination of the '534 patent was filed on April 11, 2007, asserting that Claims 1-21[4] were anticipated or rendered obvious over several different references. These references encompassed a variety of different prior art techniques for interactions between a remote server and portable media, through access by a local processor or other intermediary. *See generally* Fahy Decl., Appendix 10 at 5-8. The Examiner, upon finding that a substantial new question of patentability was raised, granted the petition and instituted proceedings on June 21, 2007. Thereafter, the Examiner issued a first Office Action rejecting claims 1-21 and claims 23-25, which were added through a preliminary amendment.

In response to the Office Action, Rothschild Trust took the Examiner to task over his construction of the final element of claim 1, arguing that the claimed invention was patentable over each prior art reference because the remote server itself must initiate utilization of the data stored on the auxiliary site addresses. For example, Rothschild Trust asserted that:

The Patentee's claimed system very clearly recites that it is the remote server

---

[4] Reexamination of Claim 22 was not requested.

assembly that initiates the utilization of the auxiliary site data…  Fahy Decl., Appendix 5 at 13.

[I]n the Mages system an un-crippling key file is transmitted from the remote server to the local computer…and once received, software on the local computer combines the key file with the locally maintained 'crippled' file, resulting in playback of that file…Significantly, however, under such a circumstance it is not actually the remote server that 'initiates the utilization of' the locally maintained data, but rather it is the un-crippling key file that does so… *Id*. at 14.

[A] system such as Mages wherein the remote server merely acts as a repository for a file….and then requires the local processor to download the file, and the file itself being what initiates the use of the local data…is vastly different from the Patentee's claimed system wherein it is the remote server itself that initiates the use of the local data… *Id*. at 15.

Urinaka requires that a "script"…be downloaded by the local computer and then run.  Again, unlike the Patentee's claimed system, it is the "script" and not the remote server that initiates the utilization of the local data.  *Id*. at 20

Shortly thereafter, the Examiner issued a Final Rejection.  In addressing the arguments made by Rothschild Trust, the Examiner agreed that the main issue was one of the proper interpretation of "said remotely accessible, auxiliary site addresses being structured to be remotely accessed by said remote server assembly so as to initiate utilization."  Fahy Decl., Appendix 5 at 6.  Giving the claims their "broadest reasonable interpretation," the Examiner found that the claims did not limit the means by which the remote server accessed the data so as to initiate its utilization, and therefore the broadest reasonable interpretation was that the server could access the data by any means, including indirectly such as by sending information to the local processor that allowed the local processor to access the data.  *Id*. at 6-7.  This being so, the Examiner found:

While it is true that the local computer of Mages is involved in the initiation process, it is the server that "initiates" the initiation process by providing the uncrippling key to the local computer…[therefore] the sending of the uncrippling key from the server to the local PC, as shown by Mages, performs the claimed function. *Id*. at 7.

The Patent Owner argues that the server of Reisman does not "initiate" [the access of the auxiliary site data] but that such is done by the user via the "offline browser"…The issue again appears to be what properly constitutes the "initiates,"

as the examiner is interpreting this in its broadest reasonable sense to include the initial transfer of data from the server…" *Id*. 15-16.

As was the case with Mages and Reisman above, the difference of opinion between the Patent Owner and the examiner is what properly constitutes the remote server "to initiate utilization"…The examiner believes that the broadest reasonable interpretation allows for "initialization" to start with the sending of the script by the server…the server "initiates utilization" by sending the script, and then the [local computer] "utilizes" the local DVD data in conjunction with the server script." *Id*. 25-26.

On March 13, 2009, Rothschild Trust appealed the Examiner's Final Rejection to the Board.  In its Appeal Brief, Rothschild Trust acknowledged that the key issue to be resolved was one of claim construction and again asserted that the claims of the '534 Patent require that the remote server itself directly access the auxiliary site data to initiate utilization of that data.  Fahy Decl., Appendix 7 at 11.  Specifically, Rothschild Trust averred:

The Examiner has failed to establish that Appellant's specification supports the breadth of the Examiner's proposed claim construction. . . . For example, reference is made to column 13, lines 59-61 of the '534 Patent, which states that 'only the remote server assembly 50 can access the auxiliary site data at the auxiliary site addresses.'  Thus, according to the claimed invention, to initiate utilization, *the remote server assembly must be remotely accessing the auxiliary site addresses* (which are encoded in the computer readable medium).  As noted above, the Examiner's claim construction encompasses situations in which the remote server assembly is not remotely accessing the auxiliary site addresses.  Therefore, the Examiner has erred…

*Id*. at 24 (emphasis added).  That is, Rothschild Trust argued that the claims of the '534 Patent only encompassed instances where "the remote server assembly 50 can address the auxiliary site data at the auxiliary site address." *Id*.

In his Answer, the Examiner maintained that the rejections were proper because the broadest reasonable interpretation of the claims included direct and indirect access of the auxiliary site addresses by the remote server.  In support, the Examiner wrote:

The broadest reasonable interpretation of the claim language is that auxiliary site data is used in some form in conjunction with the primary site data, the use is by the local processor, and the use is initiated in some form by some form of remote server access of auxiliary site address.  The terms "initiate" and "utilization" are broad and merely mean "to start or to begin" and "to use" respectively.  The terms do not define the type or form of initiation or utilization.  The term "access" is broad and merely means "the ability to read or write data, that is to gain entry to

data or use data of a system." The term does not indicate how the data is accessed, what forms the ability to read or write the data may take, what forms the gained entry or use of the data must take, or a length of time or a degree of control for the access. The term "access" is further qualified with the terminology "so as to initiate utilization…of auxiliary site data by said local processor…in conjunction with said primary site data." This clarifies the form of remote access to require nothing more than "remotely established ability to read or write data, gain entry to or use data of a system, so as to initiate utilization of data by the local processor."

In the context of the claim, at most the terminology requires: the start in some form of the local processor using in some form auxiliary site data in conjunction with the primary site data; the remote server is, in some form, involved in the access of auxiliary site addresses and their data; and the access is so as to start in some form the use of the auxiliary data in conjunction with the primary site data. <u>Given the claim limitation as a whole, there is no requirement for the remote server to read, have possession of or even directly control the auxiliary site data or addresses</u>. The remote server accesses the addresses by causing the data located therein to be manipulated or used. <u>The remote server accesses the addresses by simply causing the initiation of utilization of the addresses and their data by the local processor</u>.

Fahy Decl., Appendix 8 at 34-35 (emphasis added).

Rothschild Trust's Reply was scathing, asserting that the Examiner's interpretation was inconsistent with how one of ordinary skill in the art would interpret the claims. Fahy Decl., Appendix 9 at 7. Critically, Rothschild Trust challenged the Examiner's belief that the claims encompass the remote server indirectly accessing the auxiliary site addresses (such as through the local processor or other intermediary) to initiate utilization of the auxiliary site data:

[t]he Examiner alleges that "the Appellant's now recited passage does not define the form of the access from the remote server (perhaps access is merely the remote server sending some information that allows access)."

The Examiner's [] point evidences, yet again, the Examiner [sic] unreasonableness in considering the language of the claim. In this instance the Examiner somehow (without any evidence for support) believes that a remote server assembly accessing auxiliary site data (i.e., within the data storage assembly associated with the local processor assembly) is disclosed by sending some information that allows access. To "allow access" is not the same as "accessing"…Although the Examiner continues to set forth <u>broad</u> interpretations of the language at issue, these interpretations are <u>not</u> reasonable.

*Id*. at 17-18 (emphasis original).

The Board was ultimately persuaded by Rothschild Trust's vigorous arguments that the

claims of the '534 Patent were limited.  In reversing the Examiner, the Board held:

> The Examiner and Rothschild disagree about the interpretation to be given [the final limitation of claim 1].  The Examiner finds that the claim language only requires the remote server to be in some form involved in the access of auxiliary site addresses and data, and does not require the remote server to read, have possession of or even directly control the auxiliary site data or addresses…Rothschild argues that the Examiner's claim interpretation is unreasonable.  Specifically, Rothschild disagrees that "access" could include sending information that indirectly allows access.  Rothschild also argues that the Examiner's claim interpretation is inconsistent with the Specification which discloses that "only the remote server assembly [] can access the auxiliary site data at the auxiliary site addresses" …
>
> Since the language of claim 1 requires that the encoded auxiliary site addresses are structured to be accessed by the remote server, we find, according to that claim, that the addresses are directly accessed by the remote server.  The scope of claim 1 <u>does not cover</u> encoded auxiliary site addresses that are structured to be accessed by a local processor or any other intermediary, ultimately resulting in the addresses being indirectly accessed by the remote server.

Fahy Decl., Appendix 10 at 8-10 (citations and emphasis omitted, underline added).  The Board then confirmed the claims because the cited prior art did not disclose a remote server *directly* accessing auxiliary site data from a compact, portable and interchangeable computer readable medium:

> The Examiner does not direct us to, and we cannot find where Mages describes that the CD-ROM audio/video data (i.e., auxiliary site addresses, auxiliary site data) are *structured to be remotely accessed by the remote server* (i.e., directly).  Instead, Mages describes that the CD-ROM audio/video data (i.e., auxiliary site addresses, auxiliary site data) are accessed by the local end-user's computer (i.e., processor)…For all these reasons, we do not sustain the rejection of claims 1, 3-4, 6-8, 21, 23, and 26 as anticipated by Mages.  *Id.* at 10-11 (emphasis original).
>
> The Examiner does not direct us to, and we cannot find where Reisman describes that the new/current/additional content (i.e., auxiliary site addresses, auxiliary site data) is *structured to be remotely accessed by the remote server* (i.e., directly).  Instead, Reisman Describes that the new/current/additional content elements (i.e., auxiliary site addresses) are accessed by the local computer (i.e., processor)….For these reasons, we do not sustain the rejection of claims 1, 6-21 and 23 as anticipated by Reisman.  *Id.* at 11-12 (emphasis original).
>
> The Examiner does not direct us to, and we cannot find where Uranaka describes

that the display script (i.e., auxiliary site addresses) is *encoded* on a compact, portable and interchangeable computer readable medium and *structured to be remotely accessed by the remote server* (i.e., directly).  As acknowledged by the Examiner, Uranaka describes that the server generated display script (i.e., auxiliary site addresses) is transferred from the remote server to the local catalog shopping client (i.e., local processor) which uses (i.e., accesses) the display script for displaying the electronic catalog shopping DVD content (i.e., primary site data)…For all these reasons, we do not sustain the rejection of claims 1, 4, and 6-8 as anticipated by Uranaka.  *Id.* at 12-13 (emphasis original).

The Examiner does not direct us to, and we cannot find where Fidelibus describes that the CD data (i.e., auxiliary site addresses) are *structured to be remotely accessed by the remote server* (i.e., directly)…Instead, Fidelibus describes that the local computer reads the CD data…For all these reasons, we do not sustain the rejection of claims 1 and 3-8 as anticipated by Fidelibus.  *Id.* at 13-14 (emphasis original).

Accordingly, the Board repeated on four different occasions, with respect to four different prior art references, that the scope of the invention does not encompass a server that indirectly accesses auxiliary site addresses through a local processor or other intermediary in order to initiate utilization of the data stored there.  Over and over again, the Board emphasized that it is not enough for the local computer or processor to access or read the auxiliary site data on instruction from the server.  Rather, the Board held that the invention is limited to auxiliary site addresses that are specifically structured to be accessed directly by the remote server, and "*does not cover*" addresses that "are structured to be accessed by a local processor or any other intermediary." Fahy Decl., Appendix 10 at 8-10.

Rothschild Trust did not indicate any disagreement with the Board's construction, since the Board adopted precisely the limiting construction that Rothschild Trust had asked for.  No request for a rehearing was filed and the reexamination certificate for the '534 Patent issued.

### B.  Pre-Filing Discussion with Plaintiff

Plaintiff's original letter to SCEA attached a claim chart purportedly explaining why Plaintiff believed SCEA's products infringed the '534 Patent.   That chart is now also attached to Plaintiff's Complaint.  In the chart, despite all of the prosecution history recited above, Plaintiff asserts that the limitation "said remotely accessible, auxiliary site addresses being structured to be remotely accessed by said remote server assembly so as to initiate utilization" is performed by

SCEA because the local game consoles access data on PlayStation game discs and (allegedly) mount the data on the PlayStation Network. Complaint, Ex. A at 30 [Dkt. 1-3] ("In the accused products, auxiliary site data residing on game discs or game cards is structured to be remotely accessed because it is made available (i.e. mounted) to PlayStation Network servers *from the local consoles*…") (emphasis added). This is precisely the same interpretation of the claim that Rothschild Trust urged the Examiner and the Board to reject, and which the Board then explicitly rejected in its Order in the course of distinguishing four different prior art references.

On April 2, 2014, counsel for SCEA sent a letter to counsel for Plaintiff detailing how Plaintiff's present claim construction flatly contradicts the prosecution history, and requesting clarification from Plaintiff. *See* Fahy Decl., Appendix 1. Plaintiff's responsive correspondence, however, failed to address at all the discrepancy in Plaintiff's claim construction position. *Id*. at Appendix 2. Instead, Plaintiff made bizarre arguments concerning the meaning of the word "mounted" within the computer industry. *Id*.

SCEA sent a second letter to Plaintiff on April 23, 2014, again requesting the good faith basis for Plaintiff's allegation of infringement given the prosecution history. *Id*. at Appendix 3. This time Plaintiff responded by trying to divorce itself from the reexamination history, equating the Board's ruling to "unilateral statements" by an examiner, which it alleged could not form the basis of estoppel. *Id*. at Appendix 4. Plaintiff further claimed that there was a subtle distinction between "indirect" and "direct" access, asserting that the prior art was distinguished as allowing the local processor to access data on a computer readable medium (*i.e.,* CD or DVD) even when the local processor was not online and connected to the remote server. *Id*. Not only did Plaintiff fail to provide any analysis of the file history to support this contention, it is clear from the foregoing section that the argument is untrue. The Order by the Board is straightforward, clear, and unambiguous.

Significantly, Plaintiff's letter *conceded* that the accused products did not permit the remote server assembly to communicate directly with the portable media except through the local processor. *Id*. at Appendix 4 ("the state of the art did not then and does not now allow for a local

data storage assembly (like a CD-ROM or DVD-ROM drive) to communicate with a remote server assembly without the aid of a local processor interface").  This concession should, by itself, have spelled the end of Plaintiff's infringement claim, but Plaintiff did not relent.

Plaintiff and SCEA met in person on May 27, 2014 to discuss Plaintiff's allegations, whereupon SCEA - for a third time - brought to Plaintiff's attention that, per Rothschild Trust's arguments during reexamination, the relevant claim element in the '534 Patent does not cover the remote server indirectly accessing the auxiliary site data through a local console or processor in order to initiate utilization of the corresponding data.  *See* Declaration of Gregory P. Sitrick (September 26, 2014) ("Sitrick Decl."), at ¶¶ 4-6.  Plaintiff responded by filing the instant litigation less than two weeks later.  *Id*. at ¶ 7.

## IV.    STATEMENT OF LAW

### A.    Rule 11 Sanctions

Federal Rule of Civil Procedure 11(b) prevents frivolous claims.  In presenting papers to a Federal Court, the signing attorney certifies that the filing is "not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation," and that the legal argument presented is "warranted by existing law or by a nonfrivolous argument" for changing the law and that "the factual contentions have evidentiary support or . . . will likely have evidentiary support after a reasonable opportunity for further investigation or discovery."  Fed. R. Civ. P. 11(b)(1)–(3).

In determining whether Rule 11 sanctions apply in a patent case, the law of the regional circuit is applied.  *Raylon, LLC v. Complus Data Innovations, Inc*., 700 F.3d 1361, 1367 (Fed. Cir. 2012).  In the Ninth Circuit, Rule 11 sanctions are appropriately imposed where: (1) a paper is filed with the court for an improper purpose; or (2) the paper is "frivolous."  *Intamin Ltd. v. Magnetar Techs., Corp.*, 483 F.3d 1328, 1338 (Fed. Cir. 2007).  "A 'frivolous' argument or claim is one that is 'both baseless and made without a reasonable and competent inquiry.'"  *S. Bravo Sys., Inc. v. Containment Techs. Corp.*, 96 F.3d 1372, 1375 (Fed. Cir. 1996) (*quoting Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir. 1990).

As claim construction is a matter of law, a plaintiff's proposed claim construction is subject to Rule 11(b)(2)'s requirement that all legal arguments be nonfrivolous. *Raylon*, 700 F.3d. at 1368 (*citing Antonious v. Spalding & Evenflo Cos., Inc.*, 275 F.3d 1066, 1071 (Fed. Cir. 2002)). The Federal Circuit has repeatedly cautioned that, while "[r]easonable minds can differ as to claim construction positions and losing constructions can nevertheless be nonfrivolous…there is a threshold below which a claim construction is so unreasonable that no reasonable litigant could believe it would succeed." *Id.* (internal citations omitted).

## B.    Prosecution History Disclaimer

The Federal Circuit has long recognized that a "clear and unmistakable" disavowal during the original prosecution or reexamination overcomes the presumption that claim terms carry their full ordinary and customary meaning. *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323, 1326 (Fed.Cir. 2003); *see also Epistar Corp. v. Int'l Trade Comm'n*, 566 F.3d 1321, 1334 (Fed. Cir. 2009) ("A heavy presumption exists that claim terms carry their full ordinary and customary meaning, *unless it can be shown the patentee expressly relinquished claim scope.*") (emphasis added); *Krippelz v. Ford Motor Co.*, 667 F.3d 1261, 1266 (Fed. Cir. 2012) ("A patentee's statements during reexamination *can* be considered during a claim construction, in keeping with the doctrine of prosecution disclaimer."). Thus, when the patentee unequivocally and unambiguously disavows a certain meaning to obtain a patent, the doctrine of prosecution history disclaimer narrows the meaning of the claim consistent with the scope of the claim surrendered. *Id.* at 1324.

The role of prosecution history disclaimer is an important one in the patent system. It "promotes the public notice function of the intrinsic evidence and protects the public's reliance on definitive statements made during prosecution." *Id.* Competitors are entitled to rely on representations made by the patentee concerning the scope and meaning of the claims when determining a course of lawful conduct, such as launching a new product or designing-around a patented invention. *Seachange Int'l, Inc. v. C-COR Inc.*, 413 F.3d 1361, 1372 (Fed.Cir. 2005). Beyond the notice function and reliance-based aspects of a patent's prosecution history, it also

"provides evidence of how the [USPTO] and the inventor understood the patent." *Edwards Lifesciences LLC v. Cook Inc.*, 582 F.3d 1322, 1327 (Fed.Cir. 2009) (quoting *Phillips*, 415 F.3d at 1317) (alteration in original).

It is well-settled that an assertion of a patent infringement claim can violate Rule 11 if the claim is based on an infringement theory that is precluded by a clear prosecution history disclaimer.  Indeed, just a few weeks ago, the District of Delaware granted Rule 11 sanctions against a plaintiff and its attorneys because they continued to press baseless arguments after being warned by defendants that those arguments were precluded by a prosecution disclaimer.  *Vehicle Operation Tech. LLC v. Am. Honda Motor Co. Inc.*, __ F.Supp.3d __, 2014 WL 4540064 *21 (Sept. 12, 2014).

## V.     ARGUMENT

The '534 Patent was subject to *ex parte* reexamination during which extensive arguments and findings were made by both the PTO and Rothschild Trust, Plaintiff's predecessor-in-interest, on the proper scope of the claims.  Prosecution history disclaimer now bars Plaintiff from asserting any position that attempts to reclaim the claim scope relinquished during the reexamination.  As Plaintiff has knowingly done just that, its claim is objectively frivolous and made without competent inquiry.  Sanctions under Rule 11 are warranted.

### A.     The Reexamination History Clearly Precludes Any Infringement Claim Against Auxiliary Site Addresses That Are Structured To Be Accessed by a Local Processor or Other Intermediary

As carefully detailed in Section III.A, Rothschild Trust disputed the Examiner's broad interpretation of "said remotely accessible, auxiliary site addresses being structured to be remotely accessed by said remote server assembly so as to initiate utilization" and presented an alternative, narrower construction in order to distinguish over the prior art.  In doing so, Rothschild Trust purposefully limited the scope of the claims of the '534 Patent to encompass only situations where the remote server directly accesses the auxiliary site addresses in order to initiate utilization of the associated data; explicitly disclaiming instances of indirect access, such

as where the remote server accesses the auxiliary site addresses through a local processor or other intermediary.   Indeed, that was the conclusion of the Board when it reversed the Examiner's rejections:

> Since the language of claim 1 requires that the *encoded* auxiliary site addresses are *structured to be accessed by the remote server*, we find, according to that claim, that the addresses are directly accessed by the remote server.  <u>The scope of claim 1 does not cover encoded auxiliary site addresses that are structured to be accessed by a local processor or any other intermediary, ultimately resulting in the addresses being indirectly accessed by the remote server.</u>

Fahy Decl., Appendix 10 at 9.  (italics in original; underline added).  In sum, Rothschild Trust definitively argued, and the Board evidently understood, that the '534 Patent does not encompass a remote server which accesses auxiliary site addresses indirectly by utilizing a local processor or other intermediary.  *See e.g., Cheetah Omni v. Level 3 Comm*, 2013 WL 3865593 *18 (E.D.Tex Sept. 24, 2013) (finding the patentee had made a disclaimer where the patentee argued there was a distinction between modulating a signal and optical switching it and the Board agreed); *Schindler Elevator Corp. v. Otis Elevator Co.* 2010 WL 199600 *9(N.J. Jan 13, 2010) (finding a patentee had disclaimed scope where the patentee's arguments on appeal, and the Board's corresponding decision, emphasized the preamble as a structural requirement of the claims).

 If Rothschild Trust disagreed with the decision of the Board regarding the scope of the claims, it could have requested a rehearing under 37 C.F.R. 41.52.  Rothschild Trust, instead, chose to do nothing.  As a result, Plaintiff - as the successor-in-interest - is bound by both Rothschild Trust's arguments during reexamination and the holding of the Board limiting the scope of the '534 Patent's claims. *See Omega Eng'g Inc.*, 334 F.3d at 1324 ("[W]here the patentee has unequivocally disavowed a certain meaning to obtain his patent, the doctrine of prosecution disclaimer attaches and narrows the ordinary meaning of the claim congruent with the scope of surrender."); *Typhoon Touch Tech. v. Dell, Inc.*, 659 F.3d 1376, 1381 (Fed. Cir. 2011) ("The patentee is bound by representations made and actions that were taken in order to obtain the patent."); *Seachange Int'l*, 413 F.3d at 1372 ("[t]he prosecution history constitutes a public record of the patentee's representations concerning the scope and meaning of the claims, and competitors

are entitled to rely on those representations").  It does not matter now that Plaintiff wishes the prosecution history was different; the history says what it says and the public is entitled as a matter of law to rely upon it.

Two recent Federal Circuit cases are particularly instructive.  First, in *American Piledriving Equip. v. Geoquip*, the Federal Circuit found that statements made by the patentee during prosecution constituted an express disavowal of claim scope.  637 F.3d 1324, 1336 (Fed. Cir. 2011).  In that matter, the patent-in-suit had previously been construed by seven different district courts, each resulting in different claim construction orders.  In a consolidated appeal, the patentee challenged two of the district courts' constructions of the term "integral" to mean "formed or cast of one piece."  *Id.* at 1334-1335.  Although neither the claims nor the specification expressly defined "integral," during reexamination the patentee distinguished the claims on this term:

> Claim 1, 6, and 11 are further distinguished…because such claims further recited that the eccentric weight portion be "integral with said cylindrical gear portion"…In other words, the claims recite that the counterweight has "cylindrical gear portion and an eccentric weight portion" and that these two components are "integral" - i.e., they are simply components of the "one-piece" counterweight.

*Id.* at 1336.  The Federal Circuit agreed that the foregoing statement constituted an express disavowal of claim scope, stating that:

> [W]e have made clear…[that] an applicant's argument that a prior art reference is distinguishable on a particular ground can serve as a disclaimer of claim scope even if the applicant distinguishes the reference on other grounds as well. Moreover, regardless of whether the examiner agreed with [the patentee's] arguments concerning "integral," its statements still inform the proper construction of the term.  [The patentee] unambiguously argued that "integral" meant "one-piece" during reexamination and cannot attempt to distance itself from the disavowal of broader claim scope.

*Id.*

Even more recently, the Federal Circuit in *Krippelz v. Ford Motor Co.* reaffirmed the application of prosecution disclaimer over statements made during reexamination to distinguish the prior art.  667 F.3d 1261 (Fed. Cir. 2012).  In that case, the Federal Circuit affirmed the district court's construction of the terms "conical beam of light" and "beam of light" to include

15

certain requirements concerning the shape and focal point of the reflector.  *Id*. at 1267.  In doing so, the Federal Circuit carefully considered the patentee's arguments before the Board characterizing the prior art as not disclosing a "beam of light," which the patentee asserted required a bulb to be positioned at or near a focal point of a reflector.  *Id*. 1266-67.  In light of such arguments, the Federal Circuit confirmed that the claimed invention requires (1) a reflector having a focal point, and (2) the positioning of the light source at or near the reflector's point, despite that neither limitation is recited in the claims.  *Id*. at 1267.

Similar to *American Piledriving Equip. v. Geoquip* and *Krippelz v. Ford Motor Co*., Rothschild Trust's arguments during reexamination, and particularly on appeal to the Board, disclaimed interactive remote computer interface systems where utilization of the auxiliary site data is initiated when the remote server accesses the auxiliary site addresses indirectly, such as by instructing the local processor to access the data.  Rothschild Trust unambiguously argued that the prior art failed to teach direct access of the auxiliary site data by the remote server and ultimately persuaded the Board that this was a requirement of the claimed invention.  Accordingly, the principles of prosecution disclaimer prevent this term from being construed otherwise.

### B.    Plaintiff's Infringement Allegations Are Premised On An Objectively Baseless Claim Construction

Plaintiff's infringement allegations intentionally ignore the prosecution history of the '534 Patent.  The broad claim construction now applied by Plaintiff is the very same broad interpretation Rothschild Trust railed against during reexamination.

Specifically, Plaintiff has asserted that this limitation of claim 1 (and therefore presumably the same limitation of claims 23 and 24) is met by the accused SCEA products "because [auxiliary site data residing on game discs or game cards] is made available (i.e. mounted) to PlayStation Network servers from the local consoles…"  *See* Complaint, Exhibit A at 30 [Dkt. 1-3].  In other words, utilization is initiated *through indirect access* by the remote servers.  This is despite the Board's unambiguous finding that auxiliary site addresses which are structured to be accessed through a local processor or other intermediary are not covered by the invention.  Fahy

QUARLES & BRADY LLP
ATTORNEYS AT LAW
TUCSON

Decl., Appendix 10 at *9.

In patent litigation, an asserted claim construction, like all other legal arguments, must be nonfrivolous and a plaintiff can find itself in violation of Rule 11 where it asserts a construction that is "so unreasonable that no reasonable litigant could believe it would succeed." *Raylon, LLC v. Complus Data Innovations, Inc.*, 700 F.3d 1361, 1368 (Fed. Cir. 2012); *MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907, 918 (Fed. Cir. 2012) (finding a claim construction position objectively baseless where "no reasonable application of the principles enunciated in *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) supports its position"). Plaintiff has done just that; its claim construction position is so unreasonable as to run afoul of Rule 11. While reasonable minds might disagree over the proper construction of other aspects of the claims, reasonable minds <u>cannot</u> disagree over what has been disclaimed here: "The scope of claim 1 does not cover encoded auxiliary site addresses that are structured to be accessed by a local processor or any other intermediary, ultimately resulting in the addresses being indirectly accessed by the remote server." Fahy Decl., Appendix 10 at *9; *see also* Complaint, Exhibit A at Claims 23 and 24 (having the same limitation).

The Federal Circuit's decision in *Raylon, LLC v. Complus Data Innovations, Inc.*, 700 F.3d 1361, 1368 (Fed. Cir. 2012) is instructive. In that case the Federal Circuit upheld the district court's imposition of Rule 11 sanctions and award of attorneys' fees and costs under 35 U.S.C. § 285 against the plaintiff for asserting an objectively frivolous claim construction. *Id*. The case specifically involved the construction of the term "display pivotally mounted on said housing." *Id*. Raylon asserted that this term should be construed as a "display" capable of being "moved" "relative to *the viewer's perspective*" instead of relative to the housing. *Id*. (emphasis added). The Federal Circuit found that none of the intrinsic evidence supported Raylon's position, rather, during the prosecution history, the patentee described the display as "pivotally *mounted on said housing*" and no other display placement was described in the patent or prosecution history. *Id.* at 1369. In light of this, the Federal Circuit upheld the imposition of Rule 11 sanctions and found that Raylon's claim construction—that pivotally mounted only required the display to be

pivotable relative to the user—was contrary to all the intrinsic evidence and did "not conform to the standard canons of claim construction." *Id.*; *see also MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907, 918 (Fed. Cir. 2012) (finding a claim construction position objectively baseless where "no reasonable application of the principles enunciated in *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) supports its position").

Likewise, in the instant case, Plaintiff's infringement allegations (which require a claim construction directly at odds with the intrinsic evidence) do "not conform to the standard canons of claim construction." *Id.* Like in *Raylon*, nothing in the intrinsic evidence supports Plaintiff's interpretation. If anything, this case is an even more egregious violation of Rule 11, because here the intrinsic evidence directly and unequivocally states that Plaintiff's proposed construction is incorrect. Further compounding Plaintiff's improper behavior is the fact that SCEA warned Plaintiff of this error by pointing out— three times before this case was ever filed—that the file history expressly disclaimed Plaintiff's infringement theory. Fahy Decl. at Appendix 1, Appendix 3; Sitrick Decl. at ¶¶ 2-8. Yet, Plaintiff chose to file this lawsuit anyway. Sanctions under Rule 11 are therefore warranted. *Raylon*, 700 F.3d at 1368.

## C.  **Plaintiff's Allegations of Infringement are Neither Reasonable Nor Made After Competent Inquiry**

In bringing the present case, Plaintiff cannot credibly argue that it made either a reasonable or competent inquiry. Plaintiff's principal, Leigh Rothschild, is the principal of Rothschild Trust. Accordingly, Plaintiff was well aware of the disclaimer of claim scope made during reexamination. Even were this not so, any reasonable and competent investigation by an attorney would have revealed that the claims cannot encompass initiating utilization of the auxiliary site data by a remote server indirectly accessing the auxiliary site addresses through a local console or processor. *See Q-Pharma, Inc. v. Andrew Jergens Co.*, 360 F.3d 1295, 1300 (Fed. Cir. 2004) (finding that, under Ninth Circuit law, a reasonable and competent inquiry in the patent context requires "at a minimum, that an attorney interpret the asserted patent claims"). There is rarely a case where the evidence of prosecution disclaimer is as clear as it is here.

Disturbingly, counsel for Plaintiff has admitted that there is no possibility that SCEA infringes the '534 Patent if the scope of the claims is restricted to direct access.  Fahy Decl., Appendix 4 at 2 ("the state of the art did not then and does not now allow for a local data storage assembly (like a CD-ROM or DVD-ROM drive) to communicate with a remote server assembly without the aid of a local processor interface").   Yet, Plaintiff still filed the Complaint and has continued to litigate this matter.  "While patent law is certainly complicated, prosecution history disclaimer is a bedrock of the patent world."  *Vehicle Operation Tech. LLC*, __ F.Supp.3d __, 2014 WL 4540064 *21.  Accordingly, sanctions are warranted.

## VI.    <u>CONCLUSION</u>

For the reasons stated above, SCEA asks the Court to sanction Plaintiff under Rule 11 for bringing this baseless and frivolous lawsuit.  Specifically, SCEA requests that Plaintiff's claims be dismissed with prejudice and that monetary sanctions be levied in an amount not less than SCEA's costs and reasonable attorneys' fees.

Pursuant to Rule 11 of the Federal Rules of Civil Procedure, a copy of this Motion was first served under Rule 5 on all counsel of record for Plaintiff on September 26, 2014.

Dated: October 22, 2014                   Respectfully submitted,

By:  */s/ Gregory P. Sitrick*
_____

Gregory P. Sitrick (*pro hac vice*)
Gregory.sitrick@quarles.com
Quarles & Brady LLP
One Renaissance Square
Two North Central Avenue
Phoenix, AZ  85004-2391
Phone: (602) 229-5200

Michael J. Curley (CA Bar No. 230343)
michael.curley@quarles.com
Nikia L. Gray (*pro hac vice*)
nikia.gray@quarles.com
QUARLES & BRADY LLP
One South Church Avenue, Suite 1700
Tucson, Arizona 85701-1621
T: (520) 770-8700
F: (520) 770-2206

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

David R. Cross (*pro hac vice pending*)
David.Cross@quarles.com
Quarles & Brady LLP
411 East Wisconsin Avenue
Milwaukee, Wisconsin 53202
Phone: (414) 277-5669

Christopher J. Fahy (*pro hac vice*)
Christopher.Fahy@quarles.com
Quarles & Brady LLP
300 North LaSalle Street
Suite 4000
Chicago, Illinois 60654
Phone: (312) 715-5000

Jeremy T. Elman (CA Bar No. 223696)
Jeremy.elman@dlapiper.com
DLA Piper LLP (US)
200 South Biscayne Blvd., Suite 2500
Miami, Florida 33131
Phone: (305) 423-8514
Fax: (305) 503-7551

Krista A. Celentano (CA Bar No. 279526)
Krista.celentano@dlapiper.com
DLA Piper LLP (US)
2000 University Avenue
East Palo Alto, CA 94303-2214
Phone: (650) 833-2000
Fax: (650) 833-2001

*Attorneys for Defendant/Counterplaintiff*
*Sony Computer Entertainment America*
*LLC*

QUARLES & BRADY LLP
ATTORNEYS AT LAW
TUCSON

Motion for Rule 11 Sanctions and Memorandum of Law
Case No. 5:14-CV-03928-PSG

## <u>CERTIFICATE OF SERVICE</u>

On October 22, 2014, a true and correct copy of the foregoing documents was served to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.1.

Executed on October 22, 2014, 2014.

<u>s/ *Cynthia Woods*    </u>

Cynthia Woods