**(11) Related Proceeding(s) Appendix**

No decision rendered by a court or the Board is identified by the examiner in the

Related Appeals and Interferences section of this examiner's answer.

For the above reasons, it is believed that the rejections should be sustained.

Respectfully submitted,

/William H. Wood/

Primary Examiner, Art Unit 3992

Conferees:

/Sam  Rimell/

Primary Examiner, Art Unit 3992

JESSICA HARRISON
SUPERVISORY PATENT EXAMINER

# Appendix 9

Attorney Docket No. 1093-008                                    **PATENT**

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
## BEFORE THE BOARD OF PATENT APPEALS AND INTERFERENCES

| | | |
|---|---|---|
| In re Patent of | : | Customer Number:  29973 |
| | : | |
| Leigh ROTHSCHILD | : | Confirmation Number:  7502 |
| | : | |
| Control No.:  90/008,591 | : | Group Art Unit:  3992 |
| | : | |
| Patent No.: 6,101,534 | : | Examiner:  William H. Wood |
| | : | |
| For:   INTERACTIVE, REMOTE, COMPUTER INTERFACE SYSTEM | | |

### REPLY BRIEF

Mail Stop Appeal Brief - Patents
Commissioner For Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Sir:


This Reply Brief is submitted under 37 C.F.R. § 41.41 in response to the EXAMINER'S ANSWER dated September 24, 2009.  The Examiner's response to Appellant's arguments submitted in the Appeal Brief of March 13, 2009, raises additional issues and underscores the factual and legal shortcomings in the Examiner's rejection.  In response, Appellant relies upon the arguments presented in the Appeal Brief of March 13, 2009, and the arguments set forth below.

Control No.:  90/008,591

1                                            **REMARKS**

2

3          The Examiner's response to Appellant's arguments is found on pages 28-44

4    of the Examiner's Answer.  Where possible, Appellant will address the Examiner's

5    response in the order in which it is presented within the Examiner's Answer.

6

7          Referring to the third full paragraph on page 28 of the Examiner's Answer,

8    the Examiner asserted the following:

9               To initial point a), and as explicitly noted throughout the reexamination

10              prosecution, the claim language has been given and is still given its broadest

11              reasonable interpretation. This is consistent with examination and reexamination

12              practice (see the above "Principles of Law" and MPEP 2258 I. G. and MPEP

13              2111.01).

14

15   The Examiner's terse response that "the claim language has been given and is still

16   given its broadest reasonable interpretation" is non-responsive.  The Examiner fails

17   to identify where the claim construction the Examiner has purportedly provided is

18   found in the prior Office Actions.  In fact, the <u>first</u> explicit claim construction of

19   the claim term "to initiate utilization" was presented in the Examiner's Answer.

20

21   _____

2

Control No.:  90/008,591

1      The Examiner's response to the arguments presented on pages 12 and 13 of

2      the Appeal Brief is found in the last full paragraph on page 28 of the Examiner's

3      Answer and is reproduced below:

4          As to point b), though Appellant has given instruction on the meaning and

5          interpretation of the phrase "to initiate utilization", all of the original terminology,

6          the now recited defining terminology and the newly recited meaning-phrase ("to

7          begin the act of use") are broad and do not define the claim with a clarity and

8          precision that avoids the previously indicated broadest reasonable interpretation.

9          In fact, the phrase "to begin the act of use" is the very meaning given

10         throughout prosecution to the claim term "to initiate utilization", and the

11         language is still found to read upon the cited prior art. The types and forms of

12         "use" or "utilization" are wide and varied, as are the types and forms of

13         "beginning" or "initiating". The broadest reasonable interpretation of "to initiate

14         utilization" is that *some form* of use/utilization is at *some time or in some form*

15         *initiated*/started/begun.  (emphasis in original)

16

17      The Examiner's assertion that the broadest reasonable interpretation of the claim

18      term "to initiate utilization" is that "*some form* of use/utilization is at *some time or*

19      *in some form* initiated/started/begun" (emphasis in original) marks the first time the

20      Examiner has provided an explicit claim construction of the claim term "to initiate

21      utilization."  The late nature of this claim construction has significantly prejudiced

Control No.: 90/008,591

1  Appellant since Appellant does not have the right to amend the claims in response

2  to this claim construction.[1]

3

4       As indicated by the Courts, the justification for the "broadest reasonable

5  interpretation" standard in interpreting claim language is that Appellant has the

6  ability to amend the claims to obtain protection commensurate with Appellant's

7  actual contribution to the art. In re Yamamoto, 740 F.2d 1569, 1571 (Fed. Cir.

8  1984) ("The PTO broadly interprets claims during examination of a patent

9  application since the applicant may 'amend his claims to obtain protection

10  commensurate with his actual contribution to the art.'") (citation omitted). Also, it

11  has been stated that Appellant always has the opportunity to amend the claims

12  during prosecution, and broad interpretation by the examiner reduces the

13  possibility that the claim, once issued, will be interpreted more broadly than is

14  justified. In re Prater, 415 F.2d 1393, 1404-05, 162 USPQ 541, 550-51 (CCPA

15  1969). Appellant, however, was never provided with a realistic opportunity to

16  amend the claims based upon an explicit claim construction of the claim terms at

17  issue.

18

---

[1] Although Appellant could file a Request for Continued Examination during the prosecution of a patent application in order to submit new claim language, this option is not available in an *ex parte* Reexamination either after a Final Office Action or after an Examiner's Answer.

4

Control No.:  90/008,591

1    Appellant respectfully submits that the Examiner's actions in the present

2    Reexamination have prevented Appellant from presenting claims that address the

3    Examiner's "broadest reasonable interpretation" [2] characterization of the limitations

4    at issue.   Specifically, the Examiner has prevented Appellant from having a

5    realistic opportunity to address the Examiner's broadest reasonable interpretation

6    by:

7          1) not mentioning claim construction as an issue in the first

8          Office Action;

9          2) not providing an explicit claim construction of the terms at

10         issue until the Examiner's Answer; and

11         3) rejecting multiple attempts by Appellant to address claim

12         construction during prosecution.

13

14   Instead, the Examiner waited until after the Second and Final Office Action to

15   identify the claim construction of the limitations at issue as being the "key issue."

16   Additionally, as alluded to in the Appeal Brief, the Examiner's reliance upon

17   teachings that were cited during the original prosecution of the underlying patent

18   application further makes the Examiner's failure to provide an explicit claim

19   construction even more egregious since Appellant relied upon the original

---

[2] On page 28 of the Examiner's Answer, the Examiner stated that "the phrase 'to initiate utilization' … are broad and do not define the claim with a clarity and precision that avoids the previously indicated broadest reasonable interpretation."

Control No.: 90/008,591

1   Examiner's implicit construction of the claims, which is different than how the

2   claims have been interpreted during Reexamination.

3

4        Although Appellant performed one personal interview and submitted four

5   after-final amendments, none of the proposed amendments were entered after final.

6   Moreover, after the Examiner initially indicated a willingness to perform another

7   personal interview, Appellant presented five additional different sets of claims in a

8   Request for Interview, which was subsequently denied by the Examiner.   Thus,

9   Appellant has made multiple attempts, on the record, to avail himself of the right to

10  amend the claims – this right being the justification for the "broadest reasonable

11  interpretation" doctrine, as indicated by the Courts.   However, the Examiner's

12  actions have obstructed each one of these attempts.

13

14        It should further be noted that the Examiner has not argued that the applied

15  prior art identically discloses the limitations at issue based upon Appellant's claim

16  construction.   Given no disagreement as to whether or not the cited prior art

17  teaches Appellant's claims, as construed by Appellant, there should have been no

18  reason why a compromise could not have been reached.   However, by the

19  Examiner's actions, Appellant was prevented from addressing, by amendment, the

Control No.:  90/008,591

1    Examiner's claim construction, in a claim construction that was not explicitly

2    provided until the Examiner's Answer.

3

4    _____

5        Returning to the Examiner's claim construction, the Examiner asserts that

6    the broadest reasonable interpretation of the claim term "to initiate utilization" is

7    that "*some form* of use/utilization is at *some time or in some form*

8    *initiated/started/begun*" (emphasis in original).    The broadest reasonable

9    interpretation of a claim term, however, must also be consistent with the

10   interpretation that those skilled in the art would reach.  In re Cortright, 165 F.3d

11   1353, 1359, 49 USPQ2d 1464, 1468 (Fed. Cir. 1999).

12

13       Referring to the first full paragraph on page 29 of the Examiner's Answer,

14   the Examiner addressed the analogy presented on pages 12 and 13 of the Appeal

15   Brief.  Specifically, the Examiner asserted the following:

16           Though patent examination cannot be persuaded by an unrelated
17           hypothetical situation, the Appellant presented illustration *(Appeal Brief:* page 12,
18           starting at the second to last paragraph) does clarify the need for clear, concise
19           and distinct terminology. Appellant's hypothetical illustration argues the question
20           of when a car Borrower's use of that car starts. Appellant suggests use of the car is
21           initiated (started or begun) when the Borrower turns the key in step (ii) of the
22           example. Yet, the example's own step (i), of the Borrower entering the car, is also
23           use of the car and it occurs before step (ii). Opening a car door or sitting in a car

Control No.:  90/008,591

1    are forms of using that car and as such use is initiated at least before turning the

2    key. Notwithstanding other fallacies of Appellant's hypothetical reasoning, this

3    one point illustrates the need for clear, concise and distinct terminology and not

4    merely a broad and arbitrary definition that is itself open to a broadest reasonable

5    interpretation.

6

7    Although the Examiner disparages Appellant's use of a hypothetical, the use of a

8    hypothetical is very common in making legal arguments.

9

10        "*some time or in some form*"

11        The Examiner states that the "use" of a car starts when opening the car door

12    or sitting in the car, but in either case before the key is turned in the ignition.  This

13    characterization, by the Examiner, of the hypothetical clearly illustrates the

14    difference between how Appellant is construing the language of the claims and

15    how the Examiner is construing the language of the claims.

16

17        Appellant's position is that "[o]pening a car door" is not the same as using a

18    car, and "sitting in a car" is also not using a car.  To use a car, as interpreted by one

19    of ordinary skill in the art, means to use a car (i.e., a vehicle for transporting

20    people) for its intended purpose, i.e., by operating/driving a motor vehicle.  For

21    example, if a speaker were to state to an ordinary person that "I used your car," this

22    ordinary person would not think the speaker just sat in the car or opened the car

Control No.: 90/008,591

1    door.  Instead, an ordinary person would believe that the speaker drove the car.  By

2    referring to "some form" the Examiner unreasonably ignores that the use of a car,

3    as interpreted by one skilled in the art, occurs when the car is used as a car (i.e.,

4    driven).

5

6        If the "opening of a car door" is initiation of use of the car, then taking a

7    CD-ROM (i.e., an example of a compact, portable and interchangeable computer

8    readable medium) containing "said select portions of said quantity of auxiliary site

9    data" and tossing the CD-ROM, Frisbee-style, also constitutes the initiation of

10   utilization of the select portions of the quantity of auxiliary site data, based upon

11   the Examiner's interpretation, since the Examiner does not limit the "form" of

12   utilization to anything.

13

14       On page 12 of the Appeal Brief, Appellant stated that the term "to initiate,"

15   when used in conjunction with the term "utilization," establishes a point in time

16   (i.e., the beginning) of the act of use.  This point in time is critical since it

17   establishes when the "remotely accessibly, auxiliary sites addresses [are] remotely

18   accessed by said remote server assembly."  The Examiner, however, cannot

19   establish that the prior art identically teaches this timing limitation based on

20   Appellant's claim construction.

Control No.:  90/008,591

1

2       To establish that the applied prior art teaches the claim language at issue, the

3    Examiner must construe the language of the claim to remove this limitation as to

4    timing.   As result, the Examiner has interpreted the language at issue as only

5    requiring that at "some time" is utilization initiated.  Since "some time" can mean

6    any time, the Examiner has removed the distinctive character of this limitation and,

7    in essence, reads this limitation as to timing out of the claims.

8

9       To   illustrate   how   the   Examiner   interpretation   has   removed   the

10   distinctiveness of this limitation as to timing from the claims, consider the

11   following hypothetical.  The phrase "initiate use of an interstate highway system

12   with a car" describes an act that is normally preceded by a series of events, in

13   order, such as:  "mine ore;" "smelt ore into metal;" "cast key from liquid metal;"

14   "cut key;" "retrieve key;" "open door with key;" "sit in car;" "insert key into

15   ignition and start car;" "steer car;" "use on-ramp to interstate highway; and "enter

16   interstate highway from on-ramp."   Under the Examiner's interpretation, the

17   initiation of the use of the interstate highway system by the car occurs, absurdly, at

18   least before the ore for the key is mined since all of the above-identified events

19   precede the use of the interstate highway system at "*some time.*"

20

Control No.:  90/008,591

1      Appellant's interpretation, on the other hand, would have the initiation of the

2    utilization of the interstate highway system occurring when the car physically

3    enters the highway.    Appellant respectfully submits that this is a <u>reasonable</u>

4    interpretation according to a person of ordinary skill in the art.  On the contrary, an

5    interpretation based upon the Examiner's analysis would unreasonably ignore the

6    distinctiveness of the language being used and how it is interpreted by one skilled

7    in the art.

8

9      In responding to arguments on page 13 of the Appeal Brief, the Examiner

10   presented the following assertion on page 29 of the Examiner's Answer:

11          In regard to point c), Appellant argues the actions cited from the prior art

12        are preparing for utilization, that they precede the utilization initiation.  They only

13        precede Appellant's argument-provided arbitrary definition of when initiate

14        utilization occurs.  They do not precede the broadest reasonable interpretation of

15        what the broad claim language defines.  <u>It is not clear that "to initiate utilization"</u>

16        <u>doesn't read upon "to prepare for utilization".</u>  Further, it is not evident that any

17        such interpretation has been rendered by the prosecution. (emphasis added)

18

19   Referring  to  the  underlined-portion  of  the  above-reproduced  passage,  the

20   Examiner's error in interpreting the language of the claims is clearly evident.

21   Specifically, the Examiner does not see a difference between initiate utilization and

22   preparing for utilization.   Appellant respectfully submits that "to prepare for

23   utilization" identifies a time <u>prior to</u> when utilization begins.  On the other hand "to

Control No.: 90/008,591

1    initiate utilization" identifies the point in time at which utilization begins.   Thus,

2    Appellant's position is that one skilled in the art would not identify "to prepare for

3    utilization" as identically disclosing "to initiate utilization."

4

5       The Examiner's interpretation introduces considerable uncertainty as to how

6    far back preparation goes.  Using the phrase "initiate use of an interstate highway

7    system" and based upon the Examiner's interpretation, one skilled in the art one

8    could assert that preparation goes as far back as "sitting in the car," "mining the

9    ore" or even father back.   Appellant respectfully submits that by redrafting "to

10   initiate utilization" as "preparing to initiate utilization," the Examiner has presented

11   a  claim  construction  that  a  person  skilled  in  the  art  would  deem  as  being

12   unreasonable.

13

14   _____

15       In the paragraph spanning pages 29 and 30 of Examiner's Answer, the

16   Examiner further asserted the following:

17          As to point d), the claim language has been given the broadest reasonable
18          interpretation. As demonstrated above, the plain meaning has been similarly
19          reached by both the Office examination and the Appellant's own reasoning. The
20          above rejections and below prior art specific responses demonstrate how the
21          terminology's plain meaning reads upon the cited prior art.

22

Control No.: 90/008,591

1    In responding to Appellant's argument that the Examiner's claim

2    construction is not consistent with the plain meaning of the words of the claim, the

3    Examiner tersely states "as demonstrated above, the plain meanings has been

4    similarly reached by both the Office and the Appellant's own reasoning. The above

5    rejections and below prior art specific responses demonstrate how the

6    terminology's plain meaning reasons upon the prior art."   As best can be

7    understood, the Examiner is simply making a conclusory statement that the

8    Examiner's claim construction is consistent with the plain meaning of the words of

9    the claim.   Such conclusory statements, however, are not responsive and do not

10   move the discussion of the issues forward.

11

12   _____

13   In the first full paragraph on page 30 of the Examiner's Answer, the

14   Examiner asserted the following:

15           In regard to point e), it would be mere speculation to determine the claim

16           interpretations used or considered during the previous examination of the current

17           patent in question (USPN 6,101,534). The original prosecution allowed the claims

18           in a first office action without directly applying any of the cited references. All of

19           the references listed on the patent are different than the currently applied prior art.

20           Inconsistency is not applicable.

21

22   Appellant respectfully submits that the Examiner's analysis is in error.

23

Control No.:  90/008,591

1        The fact that two references are different (i.e., with different patent numbers)

2    does not establish that the disclosures within these references are entirely different.

3    Instead, different references can disclose the same or similar subject matter, in

4    whole or in part.   Thus, contrary to the Examiner's conclusion, an inconsistent

5    claim construction can occur, as it did in the present instance.

6

7        As discussed in the Appeal Brief, two currently-applied references include

8    subject matter previously disclosed in a reference previously-cited during the

9    original examination.   Specifically, the teachings within Mages and Reisman

10   (6,594,692) being relied upon by the Examiner in the present Reexamination do

11   not substantively differ from the teachings found within the Reisman 5,694,546

12   Patent, which was previously cited against Appellant during the original

13   examination.  In fact, the Reisman 6,594,692 Patent is a continuation-in-part of the

14   Reisman 5,694,546 Patent.

15

16       Referring to the second full paragraph on page 30 of the Examiner's Answer,

17   the Examiner attempts to rebut Appellant's assertions by stating that Fig. 12 and

18   columns 41-43 of the Reisman 6,594,692 Patent include "new technological

19   teachings."  However, these alleged "technology teachings" are not new.  Instead,

Control No.:  90/008,591

1    this subject matter can found in Figs. 5-6 and col. 27-31 of the Reisman 5,694,546

2    Patent, which also teach the interactions between a client and a server.

3

4         Since Mages and Reisman (6,594,692) do not substantively differ from the

5    teachings found within the Reisman 5,694,546 Patent, which has not been

6    successfully rebutted by the Examiner, Appellant maintains that the Examiner's

7    explicit claim construction in the present reexamination is inconsistent with the

8    claim construction applied during the original examination.

9

10        In the paragraph spanning pages 30 and 31 of the Examiner's Answer, the

11   Examiner asserts that "[t]here is no indication in the record that the issues currently

12   raised by *Reisman `692* and *Mages* were ever considered during the original

13   prosecution."  The problem with the Examiner's statement is the Examiner has

14   ignored that the Examiner has yet to *specifically identify* what issues, raised by

15   Reisman 6,594,692 and Mages, are different than the issues raised by 5,694,546.

16   Despite being given ample opportunity to identify these substantial new questions

17   of patentability, the Examiner's sole analysis involves a nonspecific reference to

18   "new technological teachings" within Reisman 6,594,692 that appear to disclose

19   well known concepts as to client/server interactions.

20

Control No.: 90/008,591

1    Therefore, the only apparent new issue identified by the Examiner is the

2    issue of claim construction (see page 6 of the Second Office Action, where the

3    Examiner asserts "the examiner believes that the issue is the claim interpretation of

4    the key phrase of the claims in question").   The issue of claim construction,

5    however, was not raised in the First Office Action and was not raised until the

6    Second Office Action.   Thus, as discussed in greater detail above, Appellant was

7    prevented from addressing this issue by amendment since the Second Office

8    Action was a Final Office Action.

9

10

11   In the first full paragraph on page 31 of the Examiner's Answer, the

12   Examiner responds to Appellant's argument that the Examiner's claim construction

13   is not consistent with a Court's claim construction.   On this issue, the Examiner

14   recites a portion of M.P.E.P. § 2258, which states that "[d]uring reexamination,

15   claims are given the broadest reasonable interpretation consistent with the

16   specification."   The legal requirement that claims are to be given the broadest

17   reasonable interpretation includes the requirement that interpretation must be

18   reasonable.   Appellant's reference to the Court's claim construction is evidence as

19   to the reasonableness of Appellant's claim construction, and this evidence should

20   have been considered by the Examiner.

Control No.:  90/008,591

1

2

3      In the paragraph spanning pages 31 and 32 of the Examiner's Answer, the

4   Examiner responds to Appellant's argument that the Examiner's claim construction

5   is not consistent with the Appellant's specification.  In response, the Examiner

6   concludes that the Examiner's claim construction is "supported by Appellant's

7   specification."  The Examiner's conclusion, however, is not based upon any real

8   analysis of the Examiner's claim construction in view of Appellant's specification.

9   Instead, the Examiner refers to case law in the Examiner's first point, but does not

10   apply this case law to the facts at hand.  In the second point, the Examiner's

11   disparages Appellant's use of boiler plate language in the specification, the

12   disparagement of which does nothing to support the Examiner conclusion.  Finally,

13   in the third point, the Examiner alleges that "the Appellant's now recited passage

14   does not define the form of the access from the remote server (perhaps access is

15   merely the remote server sending some information that allows access)."

16

17      The  Examiner's  third  point  evidences,  yet  again,  the  Examiner

18   unreasonableness in considering the language of the claim.  In this instance the

19   Examiner somehow (without any evidence for support) believes that a remote

20   server assembly accessing auxiliary site data (i.e., within the data storage assembly

Control No.: 90/008,591

1   associated with the local processor assembly) is disclosed by sending some

2   information that allows access. To "allow access" is not the same as "accessing."

3   A person, living in Maryland, sending a key to a person in California with the key

4   opening a door to a room in California is not "accessing" the room by sending the

5   key. Instead, the person in California that is adjacent to the door when the key is

6   inserted into the lock and the door has been opened is "accessing" the room.

7   Although the Examiner continues to set forth <u>broad</u> interpretations of the language

8   at issue, these interpretations are <u>not</u> reasonable.

9

10  _____

11      In the paragraph spanning pages 32 and 33 of the Examiner's Answer, the

12  Examiner responds to Appellant's argument that the Examiner's new claim

13  construction raises a substantial new question of patentability. In response, the

14  Examiner states that "all of the reexamination-rejection applied prior art are

15  different than the original prosecution." As already discussed above, this statement

16  is not accurate. The teachings within Mages and Reisman 6,594,692 being relied

17  upon by the Examiner in the present reexamination do not substantively differ

18  from the teachings found within the Reisman 5,694,546 Patent, which was

19  previously cited against Appellant during the original examination using a different

20  claim construction.

Control No.:  90/008,591

1

2

3      In the first full paragraph on page 34 of the Examiner's Answer, the

4 Examiner stated the following:

5           The broadest reasonable interpretation of the claim language is that

6      auxiliary site data is used in some form in conjunction with the primary site

7      data, the use is by the local processor, and the use is initiated in some form by

8      some form of remote server access of auxiliary site addresses. The terms "initiate"

9      and "utilization" are broad and merely mean "to start or begin" and "to use"

10     respectively. The terms do not define the type or form of initiation or

11     utilization. The term "access" is broad and merely means "the ability to read

12     or write data, that is to gain entry to data or use data of a system". The term

13     does not indicate how the data is accessed, what forms the ability to read or write

14     the data may take, what forms the gained entry or use of the data must take, or a

15     length of time or a degree of control for the access. The term "access" is

16     further qualified with the terminology "so as to initiate utilization ... of auxiliary

17     site data by said local processor ... in conjunction with said primary site data".

18     This clarifies the form of remote access to require nothing more than "remotely

19     established ability to read or write data, gain entry to or use data of a system, so

20     *as to initiate utilization* of data by the local processor". (emphasis in original)

21

22 Despite the Examiner's assertion that "[t]he terms do not define the type or form of

23 initiation or utilization," claim 1 clearly recites "initiate utilization of said select

24 portions of said quantity of auxiliary site data by said local processor assembly."

25 Thus, contrary to the Examiner's assertion, claim 1 clearly recites a particular "type

26 or form of initiation or utilization."  Appellant respectfully submits that a person of

Control No.: 90/008,591

1   ordinary skill in the art would interpret the utilization of data to mean reading the

2   data and/or the using of the data in a process, e.g., a calculation or in a look-up.

3

4       Notably, the Examiner asserts that the form of Appellant's claim term

5   "initiate utilization of … data" leads to an interpretation that the claim requires

6   nothing more than an ability to read or write data.  Thus, the Examiner is equating

7   "*using* data" with the "*ability* to read or write data."  This is an unreasonable

8   interpretation as viewed by a person skilled in the art.  The ability to use data is not

9   the same as using data.  The "ability to use" describes a potential for use whereas

10  "utilization of … data" describes actual use.  Thus, Appellant again respectfully

11  submits that the Examiner's claim construction is not reasonable.

12

13  _____

14      The Examiner's comments in the paragraph spanning pages 34 and 35 of the

15  Examiner's Answer have already been addressed.  Additionally, the Examiner's

16  remaining discussion on pages 35-44 involves the Examiner's analysis of the

17  applied prior art based upon the Examiner's claim construction.  Since the

18  Examiner is employing an incorrect claim construction in analyzing the prior art,

19  Appellant's position is that the Examiner's discussion on pages 35-44 is also in

20  error.

Control No.: 90/008,591

1

2

3       As discussed above, Appellant's position is that Appellant has never been

4  given a fair opportunity to address the Examiner's claim construction as to the

5  issues at issue.  Since being given a fair opportunity to address the Examiner's

6  claim construction is the basis for permitting the Examiner to employ a "broadest,

7  reasonable interpretation" analysis, Appellant has been unfairly prejudiced during

8  the present Reexamination.  Thus, in the event the Honorable Board does favor the

9  Examiner's claim construction over Appellant's claim construction, Appellant

10  respectfully requests that the Honorable Board remand the present Reexamination

11  to the Examiner and direct the Examiner to permit Appellant to enter an

12  Amendment so as to address the Examiner's claim construction.

13

14       Column 12, lines 26-29 of the '534 Patent states:

15       Along these lines, the remotely accessible, auxiliary site addresses are preferably

16       structured to be remotely accessed by the remote server assembly 50 in order to

17       initiate utilization of the select portions of the auxiliary site data contained in that

18       auxiliary site address by the local processor assembly. Moreover, interchangeable

19       computer readable medium 36 is preferably structured such that only the remote

20       server assembly 50 can access the auxiliary site data at the auxiliary site

21       addresses. Such a structure ensures the preferred utilization of the auxiliary site

22       data only in conjunction with the primary site data.

23

Control No.:  90/008,591

1        Additionally, column 12, lines 26-29 of the '534 Patent:

2            Specifically, the interactive remote computer interface system 11 is structured to

3            enable the display system 10 of the present invention to be initiated and operated

4            via a remote, on-line type connection.

5

6    Although Appellant's current claims are directed to the *initiation* of the utilization

7    of the data based upon the remote access of the auxiliary site data by the remote

8    server assembly, many of the proposed claim amendments presented to (and

9    refused entry by) the Examiner were directed to the additional concept of actual

10   utilization (i.e., after utilization has been initiated) of the data conditioned upon the

11   auxiliary site data being accessed by the remote server assembly (e.g., "via a

12   remote, on-line type connection).

13

14       Appellant's position is that regardless as to how the phrase "to initiate

15   utilization … of auxiliary site data" is interpreted, the applied prior art can be

16   distinguished over by adding the concept that the actual utilization (as opposed to

17   the initiation of utilization) occurs while the local processor assembly is

18   communicating with the remote server assembly.

19

20       As argued by Appellant in the Appeal Brief (and not refuted by the

21   Examiner), none of the applied prior art identically discloses the limitation that

Control No.:  90/008,591

1   there is a connection between the local processor assembly and the remote server

2   assembly to initiate utilization of the auxiliary site data based upon Appellant's

3   claim construction.   Since the applied prior art does not disclose this connection

4   between the local processor assembly and the remote server assembly when

5   utilization of the auxiliary site data has been initiated, the applied prior art also

6   does not disclose this connection during the actual utilization of the auxiliary site

7   data.

8

9          Referring to M.P.E.P. § 1213.01:

10               An explicit statement by the Board on how a claim on appeal may be
11          amended to overcome a specific rejection is not a statement that a claim so-
12          amended is allowable. The examiner may reject a claim so-amended, provided
13          that the rejection constitutes a new ground of rejection. Any new ground of
14          rejection made by an examiner following the Board's decision must be approved
15          by a Technology Center Director and must be prominently identified as such in
16          the action setting forth the new ground of rejection.

17

18   Therefore, the Board is permitted to direct the Examiner to allow Appellant to

19   present an amendment.  See 37 C.F.R. § 41.50(c).

20

For the reasons set forth in the Appeal Brief of March 13, 2009, and for those set forth herein, Appellant respectfully solicits the Honorable Board to reverse the Examiner's rejections under 35 U.S.C. §§ 102, 103.


Date:  November 24, 2009                    Respectfully submitted,

                                            /Scott D. Paul/_____
                                            Scott D. Paul
                                            Registration No. 42,984
                                            Steven M. Greenberg
                                            Registration No. 44,725
                                            CAREY, RODRIGUEZ, GREENBERG &
                                            PAUL, LLP
                                            950 Peninsula Corporate Circle
                                            Suite 3020
                                            Boca Raton, Florida 33487
                                            Phone:  (561) 922-3845
                                            CUSTOMER NUMBER 29973
                                            ATTORNEYS FOR PATENTEE

# Appendix 10



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/008,591 | 04/11/2007 | 6101534 | 1093-008 | 7502 |

| 29973          7590          09/17/2010 | |
|---|---|
| CAREY, RODRIGUEZ, GREENBERG & PAUL LLP | |
| ATTN: STEVEN M. GREENBERG, ESQ. | |
| 950 PENINSULA CORPORATE CIRCLE | |
| SUITE 2022 | |
| BOCA RATON, FL 33487 | |

| EXAMINER | |
|---|---|
| WOOD, WILLIAM H | |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3992 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 09/17/2010 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

UNITED STATES PATENT AND TRADEMARK OFFICE
_____

BEFORE THE BOARD OF PATENT APPEALS
AND INTERFERENCES
_____

*Ex parte* Rothschild Trust Holdings, LLC
Appellant
_____

Appeal 2010-003273
Reexamination Control 90/008,591
Patent 6,101,534
Technology Center 3900
_____


Before, SALLY C. MEDLEY, SCOTT R. BOALICK, and
KEVIN F. TURNER, *Administrative Patent Judges*.

MEDLEY, *Administrative Patent Judge*.


DECISION ON APPEAL[1]


_____

[1] The two-month time period for filing an appeal or commencing a civil action, as recited in 37 C.F.R. § 1.304, or for filing a request for rehearing, as recited in 37 C.F.R. § 41.52, begins to run from the "MAIL DATE" shown on the PTOL-90A cover letter attached to this decision.

Appeal 2010-003273
Reexamination Control 90/008,591
Patent 6,101,534

## STATEMENT OF THE CASE

Rothschild Trust Holdings, LLC ("Rothschild"), the owner of the patent under reexamination, appeals under 35 U.S.C. §§ 134(b) and 306 from a final Rejection of claims 1, 3-21, 23 and 26. We have jurisdiction under 35 U.S.C. §§ 134(b) and 306. We REVERSE.

## BACKGROUND

This reexamination proceeding arose from a third-party request for *ex parte* reexamination, filed by Van Mahamedi (Request for Ex Parte Reexamination, filed 11 Apr. 2007). Patent 6,101,534 issued with 22 claims. Claim 22 is not subject to reexamination. Rothschild has added claims 23 and 26 and cancelled claims 2, 24 and 25.

Rothschild's patented invention is related to an interactive remote computer interface system that includes a remote server, a local processor, and a compact, portable interchangeable computer readable medium associated with the local processor. The remote sever includes primary site data and at least one primary site address (i.e., URL or web site address) that include at least a portion of the primary site data. The computer readable medium includes auxiliary site data associated with the primary site data and are encoded with a plurality of remotely accessible auxiliary site addresses that each include select portions of auxiliary site data. The auxiliary site addresses encoded on the computer readable medium are structured to be accessed by the remote server so as to initiate utilization of the select portions of the auxiliary site data by the local processor in conjunction with the primary site data. Col. 12, l. 23-col. 14, l. 24.

Appeal 2010-003273
Reexamination Control 90/008,591
Patent 6,101,534

Claim 1 is representative:

1. An interactive, remote, computer interface system comprising:

a remote server assembly, said remote server assembly including a quantity of primary site data;

said remote server assembly including at least one primary site address, said primary site address including at least a portion of said primary site data and being distinct so as to identify a location thereof on a computer network;

a local processor assembly;

said local processor assembly being coupled in data transmitting and receiving communication with said remote server assembly;

said local processor assembly being structured to access said primary site address so as to achieve said data transmitting and receiving communication with said remote server assembly;

at least one data storage assembly associated with said local processor assembly and structured to contain a quantity of auxiliary site data thereon, said auxiliary site data being associated with said primary site data;

said data storage assembly including a compact, portable and interchangeable computer readable medium;

said compact, portable and interchangeable computer readable medium including a plurality of remotely accessible, auxiliary site addresses encoded therein, each of said remotely accessible, auxiliary site addresses including select portions of said quantity of auxiliary site data; and

said remotely accessible, auxiliary site addresses being structured to be remotely accessed by said remote server assembly so as to initiate utilization of said select portions of said quantity of auxiliary site data by said local processor assembly in conjunction with said primary site data.

Appeal 2010-003273
Reexamination Control 90/008,591
Patent 6,101,534

The Examiner relies on the following prior art references:

| | | |
|---|---|---|
| Mages et al. ("Mages") | 5,892,825 | Apr. 06, 1999 |
| Fidelibus, Jr. et al. ("Fidelibus") | 5,931,906 | Aug. 03, 1999 |
| Uranaka | 5,937,158 | Aug. 10, 1999 |
| Reisman | 6,594,692 | Jul. 15, 2003 |

Rothschild appeals the following rejections under 35 U.S.C. § 102(e)[2]:

> claims 1, 3-4, 6-8, 21, 23 and 26 as anticipated by Mages;

> claims 1, 6-21 and 23 as anticipated by Reisman;

> claims 1, 4 and 6-8 as anticipated by Uranaka;

> claims 1 and 3-8 under as anticipated by Fidelibus.

Rothschild appeals the following rejections under 35 U.S.C. § 103(a):

> claim 23 as unpatentable over Fidelibus;

> claim 9 as unpatentable over Mages.

## ISSUE

Does the applied prior art describe auxiliary site addresses encoded on a compact, portable, and interchangeable computer readable medium that are structured to be remotely accessed by a remote server?

## FINDINGS OF FACT

Patent 6,101,534

1. Patent 6,101,534 discloses that the "interchangeable computer readable medium [] is preferably structured such that only the remote

---

[2] Rothschild additionally argues that there is no substantial new question of patentability specifically with respect to Reisman and Mages. (App. Br. 18-22; Reply Br. 13-16, 18). Since we reverse the rejections over all of the prior art, we need not and do not address the arguments regarding the substantial new question of patentability.

Appeal 2010-003273
Reexamination Control 90/008,591
Patent 6,101,534

> server assembly [] can access the auxiliary site data at the auxiliary
> site addresses."  Col. 13, ll. 59-62.

2. "[T]he remotely accessible, auxiliary site addresses are specifically
   encoded so as to restrict access by the local processor assembly []
   unless the access is directed by the remote server assembly []."  Col.
   14, ll. 34-37.

<u>Mages</u>

3. Mages describes providing a CD-ROM to an end-user in "crippled"
   form in which critical information such as the video-audio header is
   removed from the video/audio files stored on the CD-ROM.  Col. 6, ll.
   18-24; col. 6, l. 66-col. 7, l. 20.

4. The end-user requests an uncrippling key from a remote server, which
   sends an encoded key to the end-user's computer where the key is
   caught by a catcher program and stored in the RAM of the end-user's
   computer.  Col. 5, l. 64-col. 6, l. 17; col. 7, ll. 21-42.

5. A player subroutine of the catcher program decodes the key, combines
   the key with the CD-ROM video/audio data and passes the now
   uncrippled CD-ROM video/audio data to a local audio-video system
   for immediate playback.  Col. 7, l. 47-col. 8, l. 8; fig. 8.

<u>Reisman</u>

6. Reisman discloses an offline browser operating at a local computer
   station for viewing locally stored Web pages containing local content
   elements that are accessed via hyperlinks.  Col. 39, l. 54-col. 40, l. 5;
   col. 40, ll. 16-19.

7. An information transporter component, initiated by the local Web
   page, automatically retrieves at least one new content element from a

Appeal 2010-003273
Reexamination Control 90/008,591
Patent 6,101,534

remote information source to update or augment the local web page.
Col. 39, l. 66-col. 40, l. 5.

8. The offline browser is utilized to access the new content elements via the local Web page and also provide user interface functions for accessing the new content. Col. 40, ll. 6-10.

9. An update of a local content element is preferably locally stored and is transparently accessed and integrated with other local content elements for viewing and processing by the user with the offline browser. Col. 41, ll. 15-21.

Uranaka

10. Uranaka describes a catalog shopping system that includes an electronic catalog on a DVD, a catalog shopping client that is a local computer used by the catalog shopping user and a catalog shopping server. Col. 17, l. 17-col. 18, l. 3; figs. 12, 14.

11. The catalog shopping server determines a script for displaying the electronic catalog DVD data on the catalog shopping client display based on purchase history information and transfers the script to the catalog shopping client. Col. 19, ll. 13-21; fig. 14: step 1402.

12. The catalog shopping client controls the DVD driving means based on the display script and sends electronic catalog DVD data to be displayed on the catalog shopping client display based on the script. Col. 19, ll. 22-36; fig. 14: step 1403.

Fidelibus

13. Fidelibus describes an interactive multimedia system that includes a remote computing device and a user's local computing device with a media drive. Col. 3, ll. 24-52; fig 1.

Appeal 2010-003273
Reexamination Control 90/008,591
Patent 6,101,534

14. The user places a recorded medium into a media drive and establishes a communication session with a web server maintained at the remote computing device.  Col. 5, l. 50-col. 6, l. 16.

15. The remote web server transmits a standard web page to the user's local computing device to initiate remote interactive access of the interactive multimedia entertainment system running on the remote computing device.  Col. 6, ll. 16-20.

16. The user views the webpage and via inputs at the local computing device indicates that a multimedia presentation is desired, identifies the CD mounted in the media drive and indicates which component on the CD that the user wishes to have presented in multimedia format. Col. 6, ll. 21-30.

17. The data input by the user are transmitted from the local computer to the remote computer where the interactive multimedia system validates the identity of the CD in the media drive by instructing the local computing device to scan the CD, including identifying the CD and/or the locating a particular track.  Col. 6, ll. 21-52, Fig. 2A: steps 204, 205.

18. The result of the validation is sent to the remote computing device. Col. 6, ll. 52-57.

19. If the proper CD is in the media drive, the remote computer transmits an interactive media system web page that includes a control panel to the local computer where the user activates the multimedia presentation by operating one or more control panel icons.  Col. 7, ll. 4-22; col. 7, l. 36-col. 8, l. 25.

Appeal 2010-003273
Reexamination Control 90/008,591
Patent 6,101,534

20.  The interactive multimedia system integrates the multimedia segments
     from the remote computer server resulting in a multimedia
     presentation defined by the user and includes program materials
     retrieved from the local computing device, typically including audio
     and/or visual components from the CD mounted in the CD drive.  Col.
     4, l. 64-col. 5, l. 20.

21.  The multimedia entertainment is activated simultaneously with the
     audio from the CD in the media drive mounted in the user terminal.
     Col. 2, ll. 51-60; col. 7, ll. 36-40.

ANALYSIS

<u>Claim Interpretation</u>

Independent claim 1 recites (disputed limitations in *italics*): a
"compact, portable and interchangeable computer readable medium
including a plurality of remotely accessible, auxiliary site addresses encoded
therein . . . including select portions of . . . auxiliary site data . . . *said
remotely accessible, auxiliary site addresses being structured to be remotely
accessed by said remote server assembly* so as to initiate utilization of said
select portions of said quantity of auxiliary site data by said local processor
assembly in conjunction with said primary site data."

The Examiner and Rothschild disagree about the interpretation to be
given to the highlighted portion immediately above.  App. Br. 34.  The
Examiner finds that the claim language only requires the remote server to be
in some form involved in the access of auxiliary site addresses and data, and
does not require the remote server to read, have possession of or even
directly control the auxiliary site data or addresses.  Ans. 34.  The Examiner
explains that "access" could be the remote server sending some information

8

Appeal 2010-003273
Reexamination Control 90/008,591
Patent 6,101,534

that indirectly allows access.  Ans. 32.  The Examiner also finds that "remotely accessed" in the context of the other claim limitation "so as to initiate utilization…of auxiliary site data…by the local processor…" requires nothing more than "remotely established ability to read or write data, gain entry to or use data of a system so as to initiate utilization of data by the local processor".  Ans. 34.

Rothschild argues that the Examiner's claim interpretation is unreasonable.  Reply Br. 17-18.  Specifically, Rothschild disagrees that "access" could include sending information that indirectly allows access. Reply Br. 17-18.  Rothschild also argues that the Examiner's claim interpretation is inconsistent with the Specification which discloses that "only the remote server assembly [] can access the auxiliary site data at the auxiliary site addresses."  App. Br. 24, citing col. 13, ll. 59-61.

The Examiner's interpretation does not take into account the remaining limitations of claim 1 that require the remotely accessible auxiliary site addresses to be: (1) encoded on a compact, portable and interchangeable computer readable medium; and (2) structured to be remotely accessed by the remote server assembly.  Since the language of claim 1 requires that the *encoded* auxiliary site addresses are *structured to be accessed by the remote server*, we find, according to that claim, that the addresses are directly accessed by the remote server.  The scope of claim 1 does not cover encoded auxiliary site addresses that are structured to be accessed by a local processor or any other intermediary, ultimately resulting in the addresses being indirectly accessed by the remote server.  Such a broad interpretation would be unreasonable since the auxiliary site addresses

9

Appeal 2010-003273
Reexamination Control 90/008,591
Patent 6,101,534

are both *encoded* and *structured* for the purpose of being accessed by the remote server.

In addition, broadly interpreting claim 1 to include auxiliary site addresses that are structured to be accessed by a local processor would not be consistent with Patentee's Specification. The Specification discloses that "the remotely accessible, auxiliary site addresses are specifically encoded so as to restrict access by the local processor assembly [] unless the access is directed by the remote server assembly []." Col. 14, ll. 33-37. For these reasons, the broadest reasonable interpretation of claim 1 is limited to remotely accessible auxiliary site addresses encoded on a compact, portable and interchangeable computer readable medium being structured to be remotely accessed by the remote server assembly directly.

Mages

The Examiner finds that Mages describes auxiliary site addresses that are structured to be remotely accessed by a remote server since Mages' host computer sends a key to the end-user's computer, the downloaded key data are written to local memory addresses which allows data to be read from the local memory addresses including the CD-ROM; and the end-user's computer accesses and uses the local memory addresses along with the downloaded key data. Ans. 5, 34-35, citing col. 4, ll. 7-17, 47-64; col. 7, l. 21-col. 8, l. 17. The Examiner further finds that the remote server accesses the addresses by causing the data therein to be manipulated or used. Ans. 34-35. Rothschild argues that Mages does not teach the disputed limitations but instead teaches that the remote server just sends a key. App. Br. 27.

The Examiner does not direct us to, and we can not find where Mages describes that the CD-ROM audio/video data (i.e., auxiliary site addresses,

Appeal 2010-003273
Reexamination Control 90/008,591
Patent 6,101,534

auxiliary site data) are *structured to be remotely accessed by the remote
server* (i.e., directly).  Instead, Mages describes that the CD-ROM
audio/video data (i.e., auxiliary site addresses, auxiliary site data) are
accessed by the local end-user's computer (i.e., processor).  Specifically,
Mages describes the audio/video data on the CD-ROM (i.e., auxiliary site
addresses, auxiliary site data) are accessed by a player subroutine of a
software program operating on the local end-user's computer (i.e.,
processor) and passes the CD-ROM video/audio data to a local audio-video
system.  Col. 5, l. 64-col. 6, l. 17; col. 7, ll. 21-col. 8, l. 8; fig. 8.

    For all these reasons, we do not sustain the rejection of claims 1, 3-4,
6-8, 21, 23 and 26 as anticipated by Mages.  Since claim 9 is dependent on
claim 1, for the same reasons we cannot sustain the rejection of claim 9 as
obvious over Mages.

Reisman

    The Examiner finds that Reisman teaches auxiliary site addresses that
are structured to be remotely accessed by the remote server because Reisman
describes that a sponsor website or other remote location writes
new/current/additional content to the local computer station and the local
computer station accesses the new/current/additional content in conjunction
with local pages or content stored on a CD.  Ans. 10, 38-39, citing col. 41, ll.
15-45; col. 42, ll. 8-53.  Rothschild argues that Reisman does not describe
the disputed limitations but instead teaches that the remote server sends a
new content element to the local system.  App. Br. 31.

    The Examiner does not direct us to, and we can not find, where
Reisman describes that the new/current/additional content (i.e., auxiliary site
addresses) is *structured to be remotely accessed by the remote server* (i.e.,

11

Appeal 2010-003273
Reexamination Control 90/008,591
Patent 6,101,534

directly). Instead, Reisman describes that the new/current/additional content elements (i.e., auxiliary site addresses) are accessed by the local computer (i.e., processor). In particular, Reisman describes the new/current/additional content elements (i.e., auxiliary site addresses, auxiliary site data) are retrieved from a remote information source (i.e. remote server) and locally stored at a local computer station (i.e., local processor) and accessed by an offline browser operating on the local computer station (i.e., local processor) and integrated with other local content elements (i.e., primary site data). Col. 39, l. 54-col. 40, l. 10; col. 41, ll. 15-21.

For all these reasons, we do not sustain the rejection of claims 1, 6-21 and 23 as anticipated by Reisman.

Uranaka

The Examiner finds that Uranaka teaches auxiliary site addresses that are structured to be remotely accessed by the remote server because Uranaka describes that a server generated display script for displaying DVD content is sent to and written to the catalog shopping client which accesses and uses the script in conjunction with DVD data. Ans. 16, 39-40, citing col. 16, l. 17-col. 18, line 21; fig. 12. Rothschild argues that Uranaka does not describe the disputed limitations but instead teaches that the remote server sends a script. App. Br. 33-34.

The Examiner does not direct us to, and we can not find, where Uranaka describes that the display script (i.e., auxiliary site addresses) is *encoded* on a compact, portable and interchangeable computer readable medium and *structured to be remotely accessed by a remote server* (i.e., directly). As acknowledged by the Examiner (Ans. 16, 39-40), Uranaka describes that the server generated display script (i.e., auxiliary site

12

Appeal 2010-003273
Reexamination Control 90/008,591
Patent 6,101,534

addresses) is transferred from the remote server to the local catalog shopping
client (i.e., local processor) which uses (i.e., accesses) the display script for
displaying the electronic catalog shopping DVD content (i.e., primary site
data).  Col. 19, ll. 6-36.

For all these reasons, we do not sustain the rejection of claims 1, 4 and
6-8 as anticipated by Uranaka.

Fidelibus

The Examiner finds that Fidelibus teaches auxiliary site addresses that
are structured to be remotely accessed by a remote server because Fidelibus
describes a remote server that reads the local computer's CD data with the
remote server providing data that can be used in conjunction with the local
CD data.  Ans. 19, 42, citing col. 4, l. 39-col. 5, l. 20.  Rothschild argues that
Fidelibus does not teach the disputed limitations but instead teaches that the
remote server sends a webpage with a control panel.  App. Br. 37.

The Examiner does not direct us to, and we can not find, where
Fidelibus describes that the CD data (i.e., auxiliary site addresses) are
*structured to be remotely accessed by the remote server* (i.e., directly).
Additionally, the Examiner does not direct us to, and we can not find, where
Fidelibus describes that the remote sever *reads* the CD data as found by the
Examiner.  Instead, Fidelibus describes that the local computer reads the CD
data.  Specifically, Fidelibus describes that data input by a user regarding the
CD data (i.e., auxiliary site addresses) are transmitted from the local
computer (i.e., processor) to the remote server.  Col. 6, ll. 16-34.  Thereafter,
the local computer (i.e., processor) is instructed to scan (i.e., access, read)
the CD in the media drive (i.e., auxiliary site addresses) to validate the CD,

13

Appeal 2010-003273
Reexamination Control 90/008,591
Patent 6,101,534

including identifying the CD and/or the locating a particular track.  Col. 6, ll.
35-57, Fig. 2A: steps 204, 205.

For all these reasons, we do not sustain the rejection of claims 1 and
3-8 as anticipated by Fidelibus.  Independent claim 23 recites identical
limitations to the disputed limitations of claim 1 and the Examiner's
rationale with respect to the identical limitations is the same.  Therefore we
do not sustain the rejection of claim 23 as obvious over Fidelibus for the
same reasons.

### DECISION

We REVERSE the rejection of claims 1, 3-4, 6-8, 21, 23 and 26 under
35 U.S.C. § 102(e) as anticipated by Mages.

We REVERSE the rejection of claims 1, 6-21 and 23 under
35 U.S.C. § 102(e) as anticipated by Reisman.

We REVERSE the rejection of claims 1, 4 and 6-8 under
35 U.S.C. § 102(e) as anticipated by Uranaka.

We REVERSE the rejection of claims 1 and 3-8 under
35 U.S.C. § 102(e) as anticipated by Fidelibus.

We REVERSE the rejection of claim 23 under 35 U.S.C. § 103(a) as
unpatentable over Fidelibus.

We REVERSE the rejection claim 9 under 35 U.S.C. § 103(a) as
unpatentable over Mages.

### ORDER

### REVERSED

14

Appeal 2010-003273
Reexamination Control 90/008,591
Patent 6,101,534

CAREY, RODRIGUEZ, GREENBERG & PAUL LLP
ATTN: STEVEN M. GREENBERG, ESQ.
950 PENINSULA CORPORATE CIRCLE
SUITE 2022
BOCA RATON, FL 33487

Third Party Requester:

Van Mahamedi
Shemwell Mahamedi LLP
4880 Stevens Creek Blvd. Suite 201
San Jose, CA 95129