1   Gregory P. Sitrick (*pro hac vice*)
    Gregory.sitrick@quarles.com
2   Quarles & Brady LLP
    One Renaissance Square
3   Two North Central Avenue
    Phoenix, AZ 85004-2391
4   Phone: (602) 229-5200
    Fax: (602) 229-5690
5   AZ Bar No. 028756

6   Krista Celentano (*local counsel*)
    Krista.celentano@dlapiper.com
7   DLA Piper LLP (US)
    2000 University Avenue
8   East Palo Alto, CA 945303-2214
    Phone: (650) 833-2000
9   Fax: (650) 833-2001
    CA Bar No. 279526

10

    Attorneys for Defendant/Counterplaintiff Sony
11  Computer Entertainment America LLC
    (See signature page for all counsel of record)

12

13              UNITED STATES DISTRICT COURT

14              NORTHERN DISTRICT OF CALIFORNIA

15

16

17  ROTHSCHILD DIGITAL MEDIA
    INNOVATIONS, LLC,                            Case No. 5:14-CV-03928-PSG

18              Plaintiff/Counterdefendant,

                                                 **DEFENDANT SONY COMPUTER**
19  v.                                           **ENTERTAINMENT AMERICA LLC'S**
                                                 **REPLY IN SUPPORT OF ITS MOTION**
20  SONY COMPUTER ENTERTAINMENT              **FOR RULE 11 SANCTIONS**
    AMERICA LLC,
                                                 Date:      December 16, 2014
21              Defendant/Counterplaintiff.      Time:      10:00 AM
                                                 Judge:     Magistrate Judge Paul S. Grewal
22                                               Courtroom: 5, 4th Floor

23          Defendant/Counterplaintiff, SONY COMPUTER ENTERTAINMENT AMERICA LLC,

24  by and through undersigned counsel, hereby submits its Reply in support of its Motion for Rule

25  11 Sanctions [Dkt. # 43].

26

27

28

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION……………………………………………………………..…....1

II.     ARGUMENT………………………………………………………………………...2

    A.     Prosecution History Disclaimer Precludes An Infringement Theory Based Upon Indirect Access Of The Auxiliary Site Addresses By The Remote Server…………………………………………………………………………………2

        i.      Rothschild Trust Argued For - And Received - A Narrow Claim Construction In Order To Overcome Strong Prior Art……………………………..……...……..2

        ii.     Rothschild Trust's Disclaimer Extends to Claims 23 And 24……...…………7

        iii.    The Scope Of *Ex Parte* Reexamination Is Statutorily Limited; "Impossibility" Is Not A Ground Of Review…………………………………………………...…7

    B.     SCEA's Motion Is Procedurally Proper And SCEA Should Not Be Sanctioned……..9

    C.     Rule 11 Sanctions Are Proper...……………………………………………………...12

    D.     RDMI's Request For A Surreply Should Be Denied………………...…………..……13

    E.     The Declarations Provided In Support Of RDMI's Opposition Are Inadmissible Under Rule 702…………..……………………………………………………………………13

III.    CONCLUSION………………………………………………………………………..15

1

**TABLE OF AUTHORITIES**

2

**Page**

3

CASES

4

*Acco Brands, Inc. v. Micro Sec. Devices*, 346 F.3d 1075 (Fed. Cir. 2003) ........................... …5, 7

5

6

*Biodex Corp. v. Loredan Biomedical, Inc.*, 946 F.2d 850 (Fed. Cir. 1991).............................. ….3

7

*Cordis Corp. v. Medtronic Ave, Inc.*, 511 F.3d 1157 (Fed. Cir. 2008) ................................. ……2

8

*Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993)………………………….……13

9

*Dixon v. Caulfield*, 1997 WL 414163 (N.D. Cal. July 11, 1997)………………………….…12

10

*Endress + Hauser, Inc. v. Hawk Measurement Sys. Pty. Ltd.*, 122 F.3d 1040 (Fed. Cir. 1997)……………………………………………………………………………………………15

11

12

*Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314 (Fed. Cir. 2011)………………………11

13

*Eon-Net LP v. Flagstar Bancorp*, 249 Fed. Appx 189 (Fed. Cir. 2007)………………………10

14

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 535 U.S. 722 (2002)……...2

15

*GN Resound A/S v. Callpod, Inc.*, 2013 WL 5443046 (N.D. Cal. Sept. 30, 2013)……11, 12

16

*Golden Bridge Tech., Inc. v. Apple Inc.*, 758 F.3d 1362 (Fed. Cir. 2014)………………..13

17

*Inventio AG v. ThyssenKrupp Elevator Ams. Corp.*, 718 F.Supp.2d 529 (D. Del. 2010)...9

18

*Kumbo Tire Co. v. Carmichael*, 526 U.S. 137, 157 (1999)…………………………….…....14

19

20

*Lucent Tech. v. Gateway*, 525 F.3d 1200 (Fed. Cir. 2008)……………………….…………..8

21

*N. Telecom Ltd. V. Samsung. Elec. Co.*, 215 F.3d 1281 (Fed. Cir. 2000)………..……………..5

22

*MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907 (Fed. Cir. 2012)………………………11

23

*Netbula, LLC v. Bindview Dev. Corp.*, 2007 WL 2298624 (N.D. Cal. 2007) ………………10

24

*Omega Eng'g., Inc. v. Raytek Corp.*, 334 F.3d 1314 (Fed. Cir. 2003) ………………………2, 13

25

*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005)………………………………..……11

26

*Process Control Corp. v. Hydreclaim Corp.*, 190 F.3d 1350 (Fed. Cir. 1999)…………...……9

27

*Raylon, LLC v. Complus Data Innovations, Inc.*, 700 F.3d 1361 (Fed. Cir. 2012)……11, 12

28

*Salazar v. Procter & Gamble Co.*, 414 F.3d 1342 (Fed. Cir. 2005)………………………5

**TABLE OF AUTHORITIES**

**Page**

*Seachange Int'l, Inc. v. C-COR Inc.*, 413 F.3d 1361 (Fed. Cir. 2005) ……………………4

*Source Vagabond Sys. Ltd. v. Hydrapak, Inc.*, 753 F.3d 1291 (Fed. Cir. 2014)…………9, 11, 12

*Sundance v. Demonte Fabricating Ltd.*, 550 F.3d 1356 (Fed. Cir. 2009) (1361-62)……….14

*U.S. v. City and County of San Francisco*, 132 F.R.D. 553 (N.D. Cal. 1990)…………………10

*Vanliner Ins. Co. v. DerMargosian*, 2014 WL 1632181 (N.D. Tex. 2014)…………………10

**RULES**

Fed. R. Civ. P. 11 .................................................................................................................. passim

Fed. R. Evid. 702………………………………………………………………….....13, 14

L.R. 7-3(d)………………………………………………………………………….....13

## I.     **INTRODUCTION**

Sony Computer Entertainment America LLC's ("SCEA") Motion is based on a single dispositive issue from the clear and unambiguous prosecution history.  Rather than focus on this point, RDMI uses the kitchen sink approach, devoting most of its brief to wholly irrelevant issues, including personal attacks on SCEA's outside and in-house counsel, and other efforts to distract from the issue at hand.  But none of RDMI's arguments change the fact that its infringement claim violates Rule 11.

RDMI's predecessor, Rothschild Trust Holdings, LLC ("Rothschild Trust"), expressly disclaimed using a remote server to initiate indirect access to auxiliary site data in order to survive ex parte reexamination over multiple prior art references teaching that very process.  In light of that prior art, Rothschild Trust argued for a narrow claim construction, asserting that the claims of the asserted '534 Patent are limited to direct access by the remote server.  The Board of Patent Appeals and Interferences ("Board") accepted Rothschild Trust's disclaimer, adopted it's proposed narrow construction, and allowed the '534 Patent to survive reexamination on that basis.  RDMI's entire case is thus baseless and frivolous as its infringement contentions rely on asserting the now-disclaimed indirect access.

At bottom, RDMI's Opposition [Dkt. #53] raises two issues: one procedural and one substantive.  Procedurally, RDMI argues that SCEA's Motion is improper because it overlaps with claim construction and therefore was filed too early.  This is incorrect for two reasons.  First, the only procedural requirement for bringing a motion under Rule 11 is that the responding party be given a 21-day safe harbor to withdraw its allegation before the motion is filed.  There is no dispute that RDMI was served with a copy of the Motion 21-days prior to filing.  Second, as SCEA's Motion explained, issuing Rule 11 sanctions for an infringement claim that is clearly contradicted by the prosecution history is well-precedented.

Substantively, RDMI's contention is that the prosecution history could not mean what it says because the local processor is clearly discussed in the patent, and therefore SCEA's attempt to remove the local processor from the patent is wrong.  This assertion completely misses the point.  SCEA did not argue that the local processor is irrelevant to the patent or should be read out

of the claims.  Rather, SCEA's Motion concerns only a <u>single</u> claim limitation ("structured to be remotely accessed by the remote server") and the proper interpretation of *that* limitation alone. Over and over again, the prosecution history establishes that this limitation requires the remote server to directly access the removable media, without involvement of the local processor or any other intermediary.  After direct access by the remote server, the local processor may indeed be involved, but this is irrelevant to the proper construction of the only limitation-at-issue.

RDMI also claims that the prosecution cannot mean what it says because it would make infringement of the '534 Patent "impossible."  But this is precisely the point.  The '534 Patent was confirmed only because Rothschild Trust urged an exceptionally narrow claim construction during reexamination to overcome the prior art.  If that narrow claim construction had not been adopted, all of the claims would have been invalidated over the prior art.  And it is this same narrow claim construction that compels the conclusion that RDMI's infringement claim against SCEA is baseless.  RDMI is not permitted to assert a claim that is clearly foreclosed by the prosecution history, whether that makes infringement of the '534 Patent "impossible" or not.

In short, a review of the record makes clear that RDMI's infringement claim violates Rule 11.  It would be a waste of resources for both parties, and the Court, for this case to be litigated any further.  Accordingly, SCEA respectfully requests that its Motion be granted.

**II.    ARGUMENT**

    **A.    Prosecution History Disclaimer Precludes An Infringement Theory Based Upon Indirect Access Of The Auxiliary Site Addresses By The Remote Server.**

        i.    <u>Rothschild Trust Argued For - And Received - A Narrow Claim Construction In Order To Overcome Strong Prior Art.</u>

SCEA's opening brief demonstrates that the application of prosecution history disclaimer[1]

---

[1] SCEA's Motion asserts that RDMI's interpretation of the claims is precluded by prosecution history *disclaimer*, not *estoppel*, as argued in RDMI's Opposition.  Though related, the concepts are not the same.  Prosecution history disclaimer concerns the literal scope of a claim, preventing a patentee from reclaiming subject matter surrendered through statements or claim amendments during prosecution. *See e.g., Cordis Corp. v. Medtronic Ave, Inc.* 511 F.3d 1157, 1177 (Fed. Cir. 2008); *Omega Eng'g., Inc. v. Raytek Corp.*, 334 F.3d 1314, 1324 (Fed. Cir. 2003).  Prosecution history estoppel prevents a patentee from arguing infringement under the doctrine of equivalents based on subject matter surrendered during prosecution and is irrelevant to the determination of

2

could not be clearer than it is in this case.  As detailed in SCEA's Motion, Rothschild Trust repeatedly argued that the '534 Patent's remote server did not indirectly access the auxiliary site data, and criticized the PTO Examiner who read the patent in that manner, as follows:

- The Examiner's proposed claim construction was improper because it permitted the remote server to initiate utilization via the local processor, but "**only** the remote server assembly 50 can access the auxiliary site data at the auxiliary site addresses."  Motion, Decl. of Christopher J. Fahy (September 26, 2014) ("Fahy Decl.") [Dkt. 43-2, 43-3], Appendix 7 at 24 (emphasis added).

- The Examiner's rejections were improper because "[t]he Patentee's claimed system very clearly recites that *it is the remote server assembly that initiates* the utilization of the auxiliary site data."  Fahy Decl. Appendix 5 at 13 (emphasis added).

- The Examiner's interpretation of the claims which posited that "there is no requirement for the remote server to read, have possession of or even directly control the auxiliary site data or addresses…[t]he remote server accesses the addresses by simply causing the initiation of utilization of the addresses and their data by the local processor," Fahy Decl, Appendix 8 at 34-35, was too broad in view of the prior art.  Rothschild's Trust specifically expressed that such a broad construction showed the "Examiner [sic] unreasonableness in considering the language of the claim" and "[a]lthough the Examiner continues to set forth *broad* interpretations of the language at issue, these interpretations are *not* reasonable."  Fahy Decl., Appendix 9 at 17-18 (emphasis original).

Accordingly, Rothschild Trust clearly and forcefully argued that the patent claims must be limited to direct access by the remote server to the auxiliary site data, and indirect access through the local processor is not enough.

The Board took Rothschild Trust at its word and adopted the very argument that Rothschild Trust made.  The Board then confirmed the claims on that basis:

> The Examiner and Rothschild disagree about the interpretation to be given to [said remotely accessible, auxiliary site addresses being structured to be remotely accessed by said remote server assembly]….Rothschild argues that the Examiner's claim interpretation is unreasonable.  Specifically, ___Rothschild disagrees that "access" could include sending information that indirectly___

literal claim scope.  *See e.g., Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 535 U.S. 722, 726 (2002); *Biodex Corp. v. Loredan Biomedical, Inc.*, 946 F.2d 850, 862 (Fed. Cir. 1991).  As RDMI asserts only literal infringement, SCEA has not argued the doctrine of prosecution history estoppel.

*allows access.  Rothschild also argues that the Examiner's claim interpretation is inconsistent with the Specification which discloses that "only the remote server assembly [] can access the auxiliary site data at the auxiliary site addresses."*

… Since the language of claim 1 requires that the *encoded* auxiliary site addresses *are structured to be accessed by the remote server*, we find, according to that claim, that the addresses are directly accessed by the remote server.  The scope of claim 1 does not cover encoded auxiliary site addresses that are structured to be accessed by a local processor or any other intermediary, ultimately resulting in the addresses being indirectly accessed by the remote server.  Such a broad interpretation would be unreasonable since the auxiliary site addresses are both *encoded* and *structured* for the purpose of being accessed by the remote server.

Fahy Decl., Appendix 10 at 8-10 (italics emphasis original, italics bold emphasis added, internal citations omitted).

As this prosecution history makes clear, Rothschild Trust purposefully argued for and received a narrow claim construction establishing that the scope of the claims "***does not cover encoded auxiliary site addresses that are structured to be accessed by a local processor or any other intermediary***."  Rothschild Trust expressly relinquished claim scope and RDMI is prohibited from attempting to recapture, in an infringement action against SCEA, the very subject matter surrendered in order to obtain the patent.  *Seachange Int'l, Inc. v. C-COR Inc.*, 413 F.3d 1361, 1372 (Fed. Cir. 2005) ("the prosecution history constitutes a public record of the patentee's representations concerning the scope and meaning of the claims, and competitors are entitled to rely on those representations when ascertaining the degree of lawful conduct") (*citing Hockerson-Halberstadt, Inc. v. Avia Group Int'l, Inc.*, 222 F.3d 951, 957 (Fed. Cir. 2000)).

RDMI's attempt to avoid the application of prosecution history disclaimer by arguing that SCEA relies "primarily" on statements by the Board is without merit.  SCEA presented numerous arguments highlighting statements made by Rothschild Trust, as well as statements made by the Board during reexamination as to the narrow scope of the claims.  Tellingly, in its Opposition, RDMI focuses on the statements made by the Board, but does not address the statements Rothschild Trust made during reexamination as to the narrow scope of the claims, which go to the core of the issue at hand.  RDMI's failure to address the affirmative statements made by

Rothschild's Trust during reexamination is grounds enough to establish prosecution history disclaimer, and thus grant SCEA's motion.

RDMI instead focused on statements made by the Board, and argues that such statements do not amount to prosecution history disclaimer.  As illustrated, Rothschild Trust explicitly argued for the same claim scope that the Board adopted.  The Board's Decision did not come out of thin air; the Board repeated and then adopted the very arguments that Rothschild Trust had presented.  Such a situation gives rise to a disclaimer as a matter of law.

In this regard, RDMI's reliance on *N. Telecom Ltd. V. Samsung. Elec. Co.*, 215 F.3d 1281 (Fed. Cir. 2000) and *Salazar v. Procter & Gamble Co.*, 414 F.3d 1342 (Fed. Cir. 2005) for the proposition that statements by the US Patent and Trademark Office cannot give rise to prosecution history disclaimer is misplaced.  Those cases concerned unilateral statements by an examiner rather than the Board, the latter being a tribunal while the former is not.  But even ignoring this difference, the Federal Circuit has expressly found statements by an examiner *do* give rise to prosecution history disclaimer where, as here, the examiner is adopting the patentee's arguments.  *See Acco Brands, Inc. v. Micro Sec. Devices*, 346 F.3d 1075, 1079 (Fed. Cir. 2003) (finding that statements by an examiner in a Notice of Allowance limited the scope of the claims at issue where the examiner had "simply repeated arguments that the patentee had presented").

That is precisely the situation here.  Faced with a bevy of prior art which disclosed utilization of alleged auxiliary site data by the local processor, Rothschild Trust repeatedly and vigorously argued that the remote server must itself be accessing the auxiliary site addresses, and indirect access through a local processor was insufficient.  The Board reviewed this argument, agreed with Rothschild Trust, and adopted the argument that Rothschild Trust had made.

Further, the Board adopted Rothschild Trust's argument as the sole basis to distinguish every piece of prior art that it addressed.  When, for example, it addressed prior art reference Mages (U.S. Pat. No. 5,892,825) involving the reading of auxiliary site data from a CD-ROM, the Board adopted Rothschild Trust's argument and reversed the Examiner's rejection because "Mages describes that the CD-ROM audio/video data (i.e., auxiliary site addresses, auxiliary site data) *are accessed by the local end-user's computer (i.e., processor)*."  Fahy Decl., Appendix 10

5

at 10-11. When addressing prior art reference Reisman (U.S. Pat. No. 6,594,692) concerning accessing content in conjunction with local pages stored on CD, the Board reversed the Examiner's rejection because the content in Reisman was "***accessed by the local computer (i.e., processor)***." *Id.* at 11-12. When addressing prior art reference Fidelibus (U.S. Pat. No. 5,931,906) that disclosed reading CD data, the Board reasoned that Fidelibus was not invalidating because it does not disclose that the remote servers reads the CD data, but instead "***the local computer reads the CD data.***" *Id.* at 13. All told, the Board adopted Rothschild Trust's argument as the sole basis to distinguish four different prior art references. This is as clear as prosecution history can be.

RDMI is incorrect in its contention that the Board construed the claims as encompassing the local processor accessing the auxiliary site data when it is acting under the direction of the remote server assembly. *See* Opposition at 11. Rather, in the passage quoted by RDMI in its Opposition, the Board was acknowledging that the *Examiner's* broad construction allowed for such a situation, but that it was *not* the correct interpretation of the claim scope in light of the disclaimer by Rothschild Trust. Specifically, the Board, disagreeing with the Examiner's interpretation, stated "broadly interpreting claim 1 to include auxiliary site addresses that are structured to be accessed by a local processor would <u>*not*</u> be consistent with Patentee's Specification." Fahy Decl., Appendix 10 at 11 (emphasis added). The Board then quoted the portion of the Specification relied upon by the Examiner and stated that, for all the reasons set forth in the Decision, the scope of the claims was being limited to where a remote server assembly directly accesses the auxiliary site addresses: "For these reasons, the broadest reasonable interpretation of claim 1 *<u>is limited to</u>* remotely accessible auxiliary site addresses encoded on a compact, portable and interchangeable computer readable medium being structured to be remotely *<u>accessed by the remote server assembly directly</u>*." *Id.* (emphasis added).

It appears that RDMI's only substantive response to this overwhelming prosecution history is to argue that it cannot mean what it says, because this would mean that the local processor has been written entirely out of the patent. But this argument is a red herring. SCEA's Motion did not contend, and the Board did not find, that the local processor was entirely

6

1   irrelevant to the claimed invention in any respect.  Rather, Rothschild Trust's argument and the

2   Board's Decision were addressed to a single claim limitation ("structured to be remotely accessed

3   by the remote server").  With respect to that claim limitation, the prosecution history disclaimer is

4   clear and unambiguous.  For purpose of this Motion, that is all that matters.

5          ii.     Rothschild Trust's Disclaimer Extends To Claims 23 And 24.

6        RDMI's argument that the Board's Decision specifically mentioned only claim 1 while the

7   same limitation appears in claim 23 and 24 is a non sequitur and does not prevent prosecution

8   history disclaimer from attaching to all of the claims.  First, the Board held that the rejections of

9   claims 23 and 24 could not be sustained for the same reasons as claim 1.  *See Fahy Decl.*,

10  Appendix 10 at 11-14.  Second, although Rothschild Trust focused on claim 1, it expressly

11  extended those arguments to claims 23 and 24 just as the Board did.  *See* Fahy Decl., Appendix 7

12  at 25 ("For convenience of the Honorable Board in addressing the rejections, claims 4, 6-8, 21,

13  23, and 26[2] stand or fall together with independent claim 1."); *Id.* at 29, 39 (same).  Indeed, as

14  RDMI admits, the relevant limitation in claims 23 and 24 is the same as in claim 1, and it

15  therefore made perfect sense for Rothschild Trust and the Board to treat the claims collectively.

16  Accordingly, the same limitation of scope applies to claims 23 and 24.[3]  *See e.g., Acco Brands,*

17  346 F.3d at 1079 (finding statements made during prosecution that limited the scope of claim 1

18  also applied to claim 10 because the patentee "made no arguments for claim 10 that could suggest

19  that [the limiting statements] did not apply to all the claims").

20         iii.    The Scope Of *Ex Parte* Reexamination Is Statutorily Limited; "Impossibility"
21             Is Not A Ground Of Review.

22       RDMI argues that the '534 Patent should not be burdened by disclaimer because limiting

23  the scope of the claims would result in the claims being directed to an "impossibility" which it

24  asserts is a "sure sign" that the claim construction is erroneous.  *See* Opposition at 2, 17-18.  This

25  [2] Upon issuance, claim 26 was renumbered as claim 24.
26  [3] RDMI's argument is also a red herring because it has only asserted claim 1 in this litigation.  *See*
    Complaint, Exhibit A at 19-30 [Dkt. 1-3]; Decl. of Ernesto M. Rubi (Nov. 19, 2014), Exhibit A at
27  3:18-21 [Dkt. 53-4] ("It involves one patent, probably just one patent claim…there's a Claim 1
    that is probably the only one that is likely to need to be litigated").  Indeed, despite the many
28  months of pre-filing and post-filing discussions with RDMI, there has never given any hint or
    suggestion that RDMI was alleging infringement of claims 23 and 24.

1  contention is illogical and neglects the fact that the scope of *ex parte* reexamination is statutorily

2  limited – the "impossibility" of an issued claim cannot be reviewed.  *See* 37 C.F.R. § 1.552.

3      RDMI's "impossibility" argument appears to be an assertion that the claims, if limited,

4  could not currently be infringed because no one in any industry employs a remote server that

5  directly accesses auxiliary site date from a disc at a local site.  See Opposition at p. 17.  RDMI

6  contends that the Board would therefore not have confirmed the claims if it intended them to be

7  so limited.  This contention fails to consider that the compliance of issued claims with § 101 or §

8  112 is not a matter that can be resolved in a reexamination proceeding.  37 C.F.R. § 1.552

9  (limiting *ex parte* reexamination of issued claims to patentability over issued patents and printed

10  publications).  Only "subject matter added or deleted in the reexamination proceeding" may be

11  examined on the basis of § 112 and no subject matter may be reviewed for compliance with §

12  101.  The Board could not have addressed the "impossibility" of claim 1 even if it desired to.  In

13  fact, the latter caveat does not even apply to claims 23 and 24 as, even though they were new

14  claims, the limitation in question was not added "subject matter" as it was already included in

15  claim 1.  Even if that was not the case, the Board is not required to examine claims added during

16  reexamination for additional grounds of rejection.  MPEP § 1213.02.

17      In any event, RDMI's argument is irrelevant.[4]  Prosecution history disclaimer focuses on

18  the statements that appear in the public record.  The public is entitled to rely upon the arguments

19  that Rothschild Trust made and that the Board adopted in rejecting four different prior art

20  references.  When the prosecution history is this clear, it makes no difference whether this

21  allegedly results in "impossibility."  Indeed, the Federal Circuit has repeatedly made clear that

22  claims can only be construed to preserve their validity where there is reasonable ambiguity.

23  *Lucent Tech. v. Gateway*, 525 F.3d 1200, 1215 (Fed. Cir. 2008) ("This court has repeatedly held

24  that courts may not redraft claims to cure a drafting error made by the patentee, whether to make

---

[4] It is also a red herring.  Many inventions are conceived and patented well before they are adopted by any industry.  Many patented inventions never get commercialized or physically reduced to practice.  Future industries may find a need for a server to directly access auxiliary site data on a portable media at a local site, but as of now, RDMI knows that no one is practicing the '534 Patent claims, and thus its infringment claim is baseless.  *See* Opposition at p. 17.

them operable or to sustain their validity.  To do so would unduly interfere with the function of claims in putting competitors on notice of the scope of the claimed invention.") (internal citations omitted).  Since the prosecution history leaves room for only one conclusion, the fact that the result may be an "impossible" claim simply has no bearing on the issue.  *See Inventio AG v. ThyssenKrupp Elevator Ams. Corp.*, 718 F.Supp.2d 529, 554-55 (D. Del. 2010) (holding that the prosecution history demonstrated the patentee had disclaimed a disjunctive interpretation of the claim, even though a "conjunctive reading would be nonsensical"), *rev'd in part on other grounds,* 649 F.3d 1350 (Fed. Cir. 2011); *Process Control Corp. v. Hydreclaim Corp.*, 190 F.3d 1350 (Fed. Cir. 1999) ("a nonsensical result does not require the court to redraft the claims").

The Federal Circuit's decision in *Becton, Dickenson & Co. v. Tyco Healthcare Group, LP*, 616 F.3d 1249, 1255 (Fed. Cir. 2010) is distinguishable: the patentee did not disclaim claim scope during prosecution.  *See* Opposition at 17.  To be specific, the patent-at-issue in *Becton, Dickenson* had little prosecution history and the issue disclaimer, and whether the same resulted in the "nonsensical" construction, was never raised by the defendant nor addressed by the Court. In fact, the Federal Circuit recently upheld an award of Rule 11 sanctions based on a plaintiff's frivolous claim construction despite the argument that the defendant's proposed claim construction rendered the claim "nonsensical." *Source Vagabond Sys. Ltd. v. Hydrapak, Inc.*, 753 F.3d 1291, 1301 (Fed. Cir. 2014) (reaffirming an award of Rule 11 sanctions despite the plaintiff's arguments that the defendant's proposed construction rendered the claim "nonsensical," stating "Source should have known it could not prevail because a court may not rewrite a claim even if giving a disputed claim its plain meaning would lead to a 'nonsensical result.'").  Precisely the same result is compelled here.  Accordingly, RDMI's "impossibility" argument fails.

**B.      SCEA's Motion Is Procedurally Proper And SCEA Should Not Be Sanctioned.**

RDMI appears to assert two bases for its argument that SCEA's Motion is procedurally improper: (1) the Motion (allegedly) violates the Local Patent Rules and (2) the Motion is directed to an improper subject for a Rule 11 motion.  Both arguments are without merit.

First, the Local Patent Rules do not address when or how to file a motion under Rule 11 of the Federal Rules of Civil Procedure.  The only procedural requirement for bringing a Rule 11

9

motion is that the responding party be given a 21-day safe harbor to withdraw its allegations before the motion is filed. Fed. R. Civ. P. 11(c)(2). RDMI does not dispute that it was served with SCEA's Motion on September 26, 2014, 21 days before the Motion was filed.[5]

On this point, RDMI's assertion that SCEA should be sanctioned under Rule 11 for filing a Rule 11 Motion is not well-taken. *See* Opposition, at 20-22. As shown in both its Motion and this Reply, SCEA did not undertake filing this Rule 11 Motion lightly. SCEA, whose business is focused on the products accused of infringement, read the '534 Patent and its file history, along with RDMI's infringement contentions closely, and conducted a detailed investigation to defend itself against these allegations. SCEA brought this prosecution history disclaimer issue to RDMI's attention over seven months ago. This Rule 11 Motion is not "sudden hysteria" as RDMI claims, but rather has been SCEA's consistent response to RDMI since the infringement was threatened.

All of the cases substantively relied upon by RDMI for its contention that SCEA and its counsel should be sanctioned for bringing the Motion are distinguishable on their facts. *See Netbula, LLC v. Bindview Dev. Corp.*, 2007 WL 2298624, *2 (N.D. Cal. 2007) (awarding sanctions against the movant because it waited "ma[n]y months after Defendants offending contentions were made and long after the presiding judge had already considered or ruled upon the papers"); *Vanliner Ins. Co. v. DerMargosian*, 2014 WL 1632181, *2 (N.D. Tex. 2014) (awarding sanctions against the movant only upon a finding that the Rule 11 motion was "devoid of any good-faith arguments); *U.S. v. City and County of San Francisco*, 132 F.R.D. 553 (N.D. Cal. 1990) (awarding sanctions against the movant because a Rule 11 motion against employees in a Title VII action is strictly prohibited under Supreme Court precedent); *Eon-Net LP v. Flagstar Bancorp*, 249 Fed. Appx. 189, 195-96 (Fed. Cir. 2007) (holding that the district court erred where it *sua sponte* found a patent did not cover the alleged infringing product and awarded sanctions based on that finding without providing the parties an opportunity to address claim

---

[5] In fact, as SCEA outlined in its Motion, SCEA brought this issue to RDMI's attention on April 2, 2014, months before the case was even filed, and continued to discuss the matter with RDMI up until filing the Motion with this Court. *See* Fahy Decl., Appendix 1, Appendix 3; Motion, Decl. of Gregory P. Sitrick (September 26, 2014) [Dkt. 43-1] at ¶¶ 4-6

construction).

RDMI has provided no evidence that SCEA brought this motion in bad faith, to increase RDMI's costs, or to "bully" RDMI. *See* Opposition, at 2-3, 20-22. That is simply mudslinging, to which no response is required. Suffice it to say, SCEA has complied with all procedures to properly file a Rule 11 motion, has afforded RDMI every opportunity to withdraw these allegations, and RDMI has cited nothing showing any improper purpose by SCEA or its counsel or any attempt to "circumvent" the Local Rules.

Second, it is well-settled that assertion of patent infringement based on a frivolous construction of the claims violates Rule 11, including assertion of infringement which is contrary to a clear prosecution history. *See e.g., Raylon, LLC v. Complus Data Innovations, Inc.*, 700 F.3d 1361, 1368 (Fed. Cir. 2012) (upholding the imposition of Rule 11 sanctions where the plaintiff's construction of "pivotally mounted on said housing" was contrary to the specification and the prosecution history); *MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907, 918 (Fed. Cir. 2012) (finding a claim construction position objectively baseless where "no reasonable application of the principles enunciated in *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) supports its position"); *Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1329 (Fed. Cir. 2011) (reaffirming a district court's finding that a complaint was objectively unreasonable where defendant's proposed claim construction contradicted the specification's express definition of the invention). Indeed, the Federal Circuit has just reaffirmed an award of Rule 11 sanctions based on a frivolous claim construction position taken by a plaintiff in order to assert infringement. *See Source Vagabond Sys. Ltd.*, 753 F.3d at 1301 (affirming Rule 11 sanctions where the plaintiff proposed a definition that "ignore[d] the cannons of claim construction," despite that the proper construction rendered the claim "nonsensical").

Plaintiff's reliance on this Court's decision in *GN Resound A/S v. Callpod, Inc.*, 2013 WL 5443046 (N.D. Cal. Sept. 30, 2013) is not well founded. *See* Opposition at 7. While the Court in *GN Resound A/S* did deny the defendant's Rule 11 motion as improperly seeking summary judgment, the motion was premised on the contention that the infringement claim ultimately failed on the merits because the accused device did not contain the claimed directional

11

microphone - a fact based issue.  *GN Resound A/S*, 2013 WL 5443046 *4.  Claim construction and prosecution history disclaimer, however, are matters of law.  *Raylon,* 700 F.3d at 1368 (*citing Antonious v. Spalding & Evenflo Cos., Inc.*, 275 F.3d 1066, 1071 (Fed. Cir. 2002)).  There is no question that a claim construction adopted by a plaintiff to support allegations of infringement is subject to Rule 11(b)(2)'s requirement that all legal arguments be nonfrivolous.  *Id*.  As for the nature of a sanction, Rule 11 expressly provides for nonmonetary sanctions and the Advisory Committee notes explain that: "The court has available a variety of possible sanctions to impose for violations, *such as striking the offending paper*…"  Rule 11(c)(4); Rule 11, 1993 Advisory Comm. N. 12 (emphasis added).  *See also Dixon v. Caulfield*, 1997 WL 414163, at *1 (N.D. Cal. July 11, 1997), *aff'd* 201 F.3d 443, 1999 WL 997288, at *1 (9th Cir. 1999) ("Dismissal [pursuant to Rule 11] may be an appropriate sanction under certain circumstances.").  Accordingly, SCEA's Motion is procedurally proper.

### C.    Rule 11 Sanctions Are Proper.

RDMI does not deny that it was aware of the arguments made by Rothschild Trust during reexamination.  Accordingly, there is no objective view of the facts under which one could conclude RDMI made a reasonable or competent pre-filing investigation.  The weakness of RDMI's arguments in its Opposition simply reaffirms this fact.  At a bare minimum, a plaintiff must "perform an objective evaluation of the claims to satisfy its obligation to conduct a reasonable presuit evaluation."  *Source Vagabond Sys. Ltd.*, 753 F.3d at 1301.  There is not one mention that any independent claim construction analysis was performed by RDMI prior to SCEA's assertion that RDMI's infringement theory was precluded.  *See* Opposition at 7-8; Decl. of John Carey (Nov. 19, 20140 [Dkt. 53-3] (generally); Decl. of Ernesto M. Rubi (Nov. 19, 2014) [Dkt. 53-4] (generally).  This alone is enough to show that RDMI's pre-suit investigation was not objectively reasonable.  But even if this was not the case, asserting an infringement theory based on a claim construction that is so clearly precluded by prosecution history disclaimer does not meet the requirement of a reasonable or competent inquiry.

RDMI's strangely contends that SCEA has acted frivolously by not providing evidence of it's noninfringement under *RDMI's* interpretation of the claims.  But SCEA has not moved on that

12

basis.  Rather, SCEA seeks an order under Rule 11 because RDMI has asserted an objectively baseless claim construction in order to bring this case.  The prosecution history shows that RDMI's current interpretation of the claims was clearly disclaimed in order to obtain a reexamination certificate.  RDMI does not dispute that SCEA cannot infringe under the proper construction of the claims.  *See* Opposition at 17 (SCEA attempts to limit the claims to a system in which the remote server accesses auxiliary data without the aid of a local processor, *which is a physical and technological impossibility*.") (emphasis added).   Since RDMI admits that infringement is a "physical and technological impossibility" under the proper construction of the claims, there simply is no good faith basis for this lawsuit.

**D.      RDMI's Request For A Surreply Should Be Denied.**

RDMI's request to file a surreply should be denied.  A surreply is only permitted under the Local Rules where new evidence has been submitted in the reply or to bring to the Court's attention a relevant judicial opinion published after the date of opposition or reply.  L.R. 7-3(d).  SCEA's Reply does not present new evidence, and thus a surreply is not appropriate.

**E.      The Declarations Provided In Support Of RDMI's Opposition Are Inadmissible Under Rule 702.**

The declarations provided with the Opposition are inadmissible under Rule 702 of the Federal Rules of Evidence. Under Rule 702, an expert may testify only if the expert's testimony would assist the trier of fact and is based upon sufficient facts or data, is the product of reliable principles and methods, and those principles and methods were reliably applied to the facts.  Fed. R. Evid. 702.  In short, the expert's testimony must be both reliable and relevant.  *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993).  Dr. Liu's declaration is neither.

First, Dr. Liu's opinion on how a person of ordinary skill in the art would have interpreted the '534 Patent is irrelevant to the question of whether Rothschild Trust disclaimed claim scope.  *See e.g. Golden Bridge Tech., Inc. v. Apple Inc.*, 758 F.3d 1362, 1365 (Fed. Cir. 2014) (stating that one exception to the maxim that "claim terms are generally given their plain and ordinary meanings to one of ordinary skill in the art" is "when the patentee disavows the full scope of the claim term in either the specification or during prosecution"); *Omega Eng., Inc. v. Raytek Corp.*,

13

334 F.3d 1314 (Fed. Cir. 2003) ("where the patentee has unequivocally disavowed a certain meaning to obtain his patent, the doctrine of prosecution disclaimer attaches and narrows the ordinary meaning of the claim congruent with the scope of the surrender").

Second, Dr. Liu's opinions are not reliable as he completely fails to set forth the principles and methods he used to reach his conclusions. In fact, there is no indication that Dr. Liu understood or applied any accepted principles of claim construction, including consideration of prosecution history disclaimer, when reaching his opinions. Further, while Dr. Liu makes assertions about how a person of ordinary skill in the art would have understood the claim terms, Dr. Liu fails to set forth a definition of such a hypothetical person or indicate that he considered the proper factors to determine who such a person would be. Without the foregoing, Dr. Liu's conclusory statements concerning the proper interpretation of the claims are unsupported and unreliable. *See Kumbo Tire Co. v. Carmichael*, 526 U.S. 137, 157 (1999) ("Nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.").

Third, Dr. Liu offers an opinion on whether the Board would have interpreted the scope of the claims to be limited to direct access of the auxiliary site addresses by the remote server. Decl. of Jason Liu (Nov. 19, 2014) ("Liu Decl.") at ¶10. As neither Dr. Liu nor RDMI assert that Dr. Liu is an expert in patent law, Board opinions, *ex parte* reexamination procedure, or any other area that would qualify him to render an opinion on what the Board would conclude, his declaration must further be excluded for this reason. Fed. R. Evid. 702 (only a witness qualified as an expert may testify in the form of an opinion). In any event, Dr. Liu's opinions on the Board's decision are entitled to no weight.

Finally, to the extent Mr. Carey's and Mr. Rubi's declarations [Dkt. 53-3 and 53-4, respectively] are offered as evidence of infringement by SCEA or the scope of the claims, those declarations are likewise inadmissible. As with Dr. Liu, neither Mr. Carey nor Mr. Rubi set forth a definition of a person of ordinary skill in the art or established that they meet such a definition. *Sundance v. Demonte Fabricating Ltd.*, 550 F.3d 1356 (Fed. Cir. 2009) (1361-62) (infringement and validity of a patent are analyzed from the "perspective of a person of ordinary skill in the art"

14

and testimony from a person "with no skill in the pertinent art, serves only to cause mischief and confuse the fact finder" and is inadmissible); *Endress + Hauser, Inc. v. Hawk Measurement Sys. Pty. Ltd.*, 122 F.3d 1040, 1042 (Fed. Cir. 1997) ("[T]his court has on numerous occasions noted the impropriety of patent lawyers testifying as expert witnesses and giving their opinion regarding the proper interpretation of a claim as a matter of law, the ultimate issue for the court to decide.").

## III.   CONCLUSION

For the foregoing reasons and the reasons set forth in SCEA's Motion, SCEA asks that the Court grant its Motion pursuant to Rule 11.  Specifically, SCEA requests that Plaintiff's claims be dismissed with prejudice and that monetary sanctions be levied in an amount not less than SCEA's costs and reasonable attorneys' fees.

Dated: November 26, 2014                 Respectfully submitted,


By:  */s/ Gregory P. Sitrick*

Gregory P. Sitrick (*pro hac vice*)
Gregory.sitrick@quarles.com
Quarles & Brady LLP
One Renaissance Square
Two North Central Avenue
Phoenix, AZ  85004-2391
Phone:  (602) 229-5200
Fax:  (602) 229-5690

Michael J. Curley (CA Bar No. 230343)
michael.curley@quarles.com
Nikia L. Gray (*pro hac vice*)
nikia.gray@quarles.com
QUARLES & BRADY LLP
One South Church Avenue, Suite 1700
Tucson, Arizona 85701-1621
T:  (520) 770-8700
F:  (520) 770-2206

David R. Cross (*pro hac vice*)
David.Cross@quarles.com
Quarles & Brady LLP
411 East Wisconsin Avenue
Milwaukee, Wisconsin 53202
Phone:  (414) 277-5669
Fax:  (414) 271-3552

1

2
Christopher J. Fahy (*pro hac vice*)
Christopher.Fahy@quarles.com
3
Quarles & Brady LLP
300 North LaSalle Street
Suite 4000
4
Chicago, Illinois 60654
Phone: (312) 715-5000
5
Fax: (312) 715-5155

6
Jeremy T. Elman (CA Bar No. 223696)
Jeremy.elman@dlapiper.com
7
DLA Piper LLP (US)
200 South Biscayne Blvd., Suite 2500
8
Miami, Florida 33131
Phone: (305) 423-8514
9
Fax: (305) 503-7551

10
Krista A. Celentano (CA Bar No. 279526)
Krista.celentano@dlapiper.com
11
DLA Piper LLP (US)
2000 University Avenue
12
East Palo Alto, CA 94303-2214
Phone: (650) 833-2000
13
Fax: (650) 833-2001

14
*Attorneys for Defendant/Counterplaintiff Sony
Computer Entertainment America LLC*
15

16

17

18

19

20

21

22

23

24

25

26

27

28

Reply in Support of Defendant's Motion for Rule 11 Sanctions
Case No. 5:14-CV-03928-PSG

1

## **CERTIFICATE OF SERVICE**

2      On November 26, 2014, a true and correct copy of the foregoing documents was served to

3 all counsel of record who are deemed to have consented to electronic service via the Court's

4 CM/ECF system per Civil Local Rule 5.1.

5

6      _s/ Cynthia Woods_

7      Cynthia Woods

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Reply in Support of Defendant's Motion for Rule 11 Sanctions
Case No. 5:14-CV-03928-PSG