```
 1                IN THE UNITED STATES DISTRICT COURT

 2             FOR THE NORTHERN DISTRICT OF CALIFORNIA

 3                       SAN JOSE DIVISION

 4

 5

    ROTHSCHILD DIGITAL MEDIA          )  CV-14-3928-PSG
 6  INNOVATIONS, LLC,                 )
                                      )  SAN JOSE, CALIFORNIA
 7              PLAINTIFF,            )
                                      )  DECEMBER 16, 2014
 8        VS.                         )
                                      )  PAGES 1-47
 9  SONY COMPUTER ENTERTAINMENT       )
    AMERICA, LLC,                     )
10                                    )
                  DEFENDANT.

11

12               TRANSCRIPT OF PROCEEDINGS
             BEFORE THE HONORABLE PAUL S. GREWAL
13              UNITED STATES MAGISTRATE JUDGE

14

15  A P P E A R A N C E S:

16  FOR THE PLAINTIFF:     CAREY RODRIGUEZ O'KEEFE MILIAN GONYA
                           BY:  JOHN CAREY
17                              ERNESTO RUBI
                           1395 BRICKELL AVENUE, STE 700
18                         MIAMI, FL 33131

19

    FOR THE DEFENDANT:     QUARLES AND BRADY, LLP
20                         BY: GREGORY SITRICK
                           TWO N. CENTRAL AVENUE
21                         PHOENIX, AZ 85004

22            APPEARANCES CONTINUED ON THE NEXT PAGE

23  OFFICIAL COURT REPORTER:     SUMMER FISHER, CSR, CRR
                                 CERTIFICATE NUMBER 13185
24

25         PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
            TRANSCRIPT PRODUCED WITH COMPUTER
```

```
 1    FOR THE PLAINTIFF:       PUNZALAN LAW, P.C.
                               BY:  MARK PUNZALAN
 2                             600 ALLERTON ST., STE 201
                               REDWOOD CITY, CA 94063
 3

 4    FOR THE DEFENDANT:       QUARLES AND BRADY, LLP
                               BY:  NIKIA GRAY
 5                             ONE SOUTH CHURCH AVENUE, STE 1700
                               TUCSON, AZ 85701
 6

 7    FOR THE DEFENDANT:       DLA PIPER, LLP
                               BY:  JEREMY ELMAN
 8                             200 S. BISCAYNE BLVD., STE 2500
                               MIAMI, FL 33131
 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1    SAN JOSE, CALIFORNIA                    DECEMBER 16, 2014

 2                      P R O C E E D I N G S

 3       (WHEREUPON, COURT CONVENED AND THE FOLLOWING PROCEEDINGS

 4    WERE HELD:)

 5             THE CLERK:  CALLING ROTHSCHILD DIGITAL MEDIA

 6    INVASIONS LLC VERSUS SONY COMPUTER ENTERTAINMENT AMERICA LLC.

 7    CASE NUMBER CV-14-3928-PSG.

 8             MATTER ON FOR DEFENDANT'S MOTION FOR RULE 11 SANCTIONS.

 9             PLEASE STATE YOUR APPEARANCES.

10             MR. PUNZALAN:  GOOD AFTERNOON, YOUR HONOR.

11             MARK PUNZALAN, LOCAL COUNSEL FOR THE PLAINTIFF,

12    ACCOMPANIED BY JOHN CAREY, THE LEAD COUNSEL FOR THE PLAINTIFF

13    AS WELL AS ERNESTO RUBI.

14             THE COURT:  GOOD AFTERNOON, COUNSEL.

15             MR. SITRICK:  GOOD AFTERNOON, YOUR HONOR.

16             GREG SITRICK, QUARLES AND BRADY, ON BEHALF OF SONY

17    COMPUTER ENTERTAINMENT AMERICA.

18             WITH ME TODAY IS NIKIA GRAY, AND ALSO WITH ME TODAY IS

19    MR. ELMAN, SENIOR DIRECTOR OF LITIGATION FOR SONY COMPUTER

20    ENTERTAINMENT.

21             THE COURT:  GOOD AFTERNOON, WELCOME TO EACH OF YOU.

22             ALL RIGHT.  AS WE ARE SETTING UP LET ME JUST NOTE WE HAVE

23    THIS AFTERNOON A MOTION FOR RULE 11 SANCTIONS.  I SUPPOSE WE

24    ACTUALLY HAVE TWO MOTIONS FOR SANCTIONS.  I KNOW THAT'S AN

25    ISSUE THE PARTIES ADDRESS IN THEIR PAPERS, AND I'M EAGER TO
```

1    HEAR YOUR ARGUMENTS AROUND THAT.

2        I HAVE DONE MY VERY BEST TO GET UP TO SPEED ON THE CLAIM

3    CONSTRUCTION AND OTHER ISSUES THAT YOU HAVE RAISED WITH RESPECT

4    TO THE '534 PATENT, SO I'M HOPEFUL WE WILL BE ABLE TO MARCH

5    THROUGH THIS IN REASONABLE FASHION, BUT I'M LOOKING FOR

6    GUIDANCE FROM YOU ALL.

7        THIS IS SONY'S MOTION.  I WILL BEGIN WITH SONY'S

8    PRESENTATION, THEN WE WILL TURN TO PLAINTIFFS FOR THEIR

9    RESPONSE.

10        MR. SITRICK, WHENEVER YOU ARE READY, YOU MAY PROCEED

11            MR. SITRICK:  THANK YOU, YOUR HONOR.

12    GOOD AFTERNOON.

13            THE COURT:  GOOD AFTERNOON.

14            MR. SITRICK:  THIS IS A UNIQUE CASE, YOUR HONOR.

15        THIS CASE WAS BROUGHT AFTER EIGHT MONTHS OF DISCUSSION

16    BETWEEN THE PARTIES WHERE SONY CONTINUED TO ADVOCATE ITS CLEAR

17    POSITION THE BOARD TOOK BASED ON THE DISCLAIMERS MADE BY

18    ROTHSCHILD.  THIS WAS ONLY BROUGHT AFTER A LOT OF THOUGHT.

19        THIS CASE IS UNIQUE IN THE SENSE THAT CLAIM CONSTRUCTION

20    WAS THOROUGHLY VETTED BY THE BOARD DURING REEXAMINATION.  THE

21    BOARD CLEARLY AND UNAMBIGUOUSLY SET FORTH THE BROADEST POSSIBLE

22    SCOPE OF THE CLAIMS.

23            THE COURT:  CAN I JUST STOP YOU THERE, MR. SITRICK,

24    AND ASK A PRELIMINARY QUESTION, WHICH IS, YOU HAVE FRAMED THIS

25    ISSUE IN YOUR PAPERS AND EVEN JUST NOW IN YOUR OPENING COMMENTS

1    AS BOTH AN ISSUE OF CLAIM CONSTRUCTION, PERHAPS ALSO OF THE

2    PLAINTIFFS INFRINGEMENT THEORY; IS IT BOTH OR IS IT ONE OR THE

3    OTHER?  I DON'T KNOW IF IT MATTERS, BUT I WOULD LIKE YOUR

4    INITIAL THOUGHT ON THAT.

5            MR. SITRICK:  SO THE WAY I WILL ADDRESS THAT IS WE

6    DON'T BELIEVE ANY ADDITIONAL CLAIM CONSTRUCTION BY THIS COURT

7    IS NECESSARY HERE.

8            THE COURT:  OKAY.  THAT'S WHERE I'M GOING WITH THIS.

9        SO YOU DON'T BELIEVE I HAVE TO DO ANYTHING WITH CLAIM

10   CONSTRUCTION?

11           MR. SITRICK:  NO.  WE BELIEVE PUBLIC NOTICE FUNCTION

12   IS OUT THE WINDOW IF WE CAN'T READ THIS OPINION AS CLEAR AS IT

13   IS AND RELY ON IT AS TO WHAT IT DISCLOSES, PARTICULARLY AS TO

14   WHAT THE CLAIM SCOPE DOES NOT COVER HERE.

15           THE COURT:  ALL RIGHT.  GO AHEAD.

16           MR. SITRICK:  SO THE INFRINGEMENT THEORY THAT'S BEEN

17   ADVANCED BY ROTHSCHILD WAS DISCLAIMED AND GOES BEYOND THE SCOPE

18   OF THE CLAIMS.  BY IGNORING ITS OWN DISCLAIMS AND THE BOARD'S

19   CLEAREST CONVEYANCE OF THE BROADEST POSSIBLE SCOPE OF THE

20   CLAIMS, ROTHSCHILD HAS ADVANCED AN OBJECTIVELY BASELESS

21   INFRINGEMENT THEORY PREMISED ON AN UNREASONABLE INQUIRY.

22       AND THERE'S NO WAY TO READ THE CLEAR BOARD DECISION AND

23   COME TO ANY OTHER CONCLUSION AS TO WHAT THE CLAIMS SCOPE DOES

24   NOT COVER.  SUCH THAT IF YOU WERE TO SAY THAT IT WAS UNCLEAR,

25   OUR POSITION IS THE PUBLIC NOTICE FUNCTION IS MEANINGLESS AT

1    THIS POINT.

2         SO WE BELIEVE THIS IS THE RIGHT TIME TO DECIDE THIS ISSUE

3    IN THIS CASE.

4         AS I SAID, THE BOARD DECISION WAS CLEAR AND UNAMBIGUOUS

5    AS TO THE SCOPE OF WHAT THE CLAIMS DO NOT COVER.  AND THE BOARD

6    NOT ONLY SET FORTH ITS CLEAR INTERPRETATION TO DISTINGUISH THE

7    CLAIMS FROM THE PRIOR ART FOUR DIFFERENT PIECES WHICH I WILL

8    DISCLOSE VARIOUS WAYS THE PRIOR ART WAS DOING THIS.

9         THE BOARD DOES NOT USUALLY LAY OUT THE PARTY'S ARGUMENTS

10   AND THEN CLEARLY DEFINE WHAT THE CLAIM SCOPE IS THEN WALK

11   THROUGH PRIOR ART TO SHOW HOW THE CLAIM SCOPE DOES NOT APPLY.

12   THAT'S VERY UNIQUE IN THIS CASE.

13        ROTHSCHILD ADVOCATED FOR THAT NARROW CONSTRUCTION TO GET

14   THE CLAIM SCOPE IN ORDER TO HAVE THOSE PATENTS ISSUE OUT OF

15   REEXAM.  AND FOR THE PURPOSES OF PUBLIC NOTICE, WE BELIEVE THE

16   DISCUSSION BEGINS AND ENDS RIGHT THERE.

17            THE COURT:  AM I RIGHT IN UNDERSTANDING, AGAIN THIS

18   MAY NOT BE MATERIAL TO THE DECISION I HAVE TO MAKE, BUT AM I

19   RIGHT IN UNDERSTANDING THIS WAS AN EX PARTE REEXAM, THE OLD

20   FASHIONED KIND AS I SOMETIMES DESCRIBE IT, THAT WAS INITIATED

21   BY A PARTY OTHER THAN THE ONES IN FRONT OF ME TODAY.

22            MR. SITRICK:  CORRECT.  AND I'M ACTUALLY GOING TO

23   WALK YOU THROUGH A LITTLE BIT OF THAT BACKGROUND OF HOW IT GOT

24   TO THERE AND WHAT HAPPENED AT A HIGH LEVEL BEFORE I WALK

25   THROUGH THE ACTUAL QUOTES TO SHOW YOU WHERE THE DISCLAIMERS AND

1    THE CLEAR CLAIM SCOPE WAS DEFINED.

2        SO THE PATENT ITSELF IS TITLED AN INTERACTIVE REMOTE

3    COMPUTER INTERFACE SYSTEM.  THE INVENTOR IS LEE ROTHSCHILD, IT

4    WAS ASSIGNED TO ROTHSCHILD DIGITAL MEDIA INNOVATIONS.  IT

5    EXPIRES IN 2017, IT WAS FILED IN 1997.

6        THE PATENT IS ABOUT PROVIDING TOURS OF DEVELOPED OR

7    PLANNED REAL ESTATE PROJECTS FOR PROSPECTIVE BUYERS.  AS YOU

8    CAN SEE FROM THE QUOTE OF THE FIELD OF THE INVENTION, IT IS

9    CERTAINLY NOT DIRECTED TO ONLINE GAMING.

10       NOW THE RELEVANT CLAIM LANGUAGE, CLAIM 1 IS SET UP THERE,

11   THE RELEVANT CLAIM LANGUAGE HAS BEEN HIGHLIGHTED FOR YOU THAT

12   WE ARE FOCUSSING IN ON.

13       SO THERE'S A COUPLE OF ELEMENTS IN THIS SYSTEM.  THERE'S

14   A REMOTE SERVER, THERE'S A LOCAL PROCESSOR.  THERE'S A DISK

15   THAT HAS AXILLARY SITE DATA ON IT THAT'S BEEN ENCODED TO BE

16   ACCESSED BY THE REMOTE SERVER.

17       AND THE LANGUAGE IN PARTICULAR THAT WE ARE FOCUSED ON

18   HERE IS THE SAID REMOTELY ACCESSIBLE AUXILIARY SITE ADDRESSES

19   OF --

20           THE COURT:  NOT TO GET AHEAD OF MYSELF, MR. SITRICK,

21   YOU NATURALLY CHOOSE YOUR WORDS VERY CAREFULLY, YOU ARE AN

22   ADVOCATE FOR YOUR CLIENT, BUT YOU SPECIFICALLY SAID THE

23   AUXILIARY DATA ON THE DISK WAS CODED FOR ACCESS BY THE REMOTE

24   SERVER, ISN'T THAT NOT THE OPERATIVE ISSUE HERE IN THE CASE

25   WHETHER IT WAS ACCESSED BY THE LOCAL PROCESSOR BEFORE IT WAS

1    ACCESSED BY THE --

2              MR. SITRICK:  YES.

3         SO THE CLAIM LANGUAGE ITSELF IS ENCODED WITH AUXILIARY

4    SITE ADDRESSES.  AS THE BOARD LATER FOUND, THAT ENCODED IN THE

5    STRUCTURED MODIFIERS MEANT IT WAS FOR THE REMOTE SERVER TO

6    DIRECTLY ACCESS.  WE WILL GET TO THAT A LITTLE BIT LATER.

7              THE COURT:  OKAY.  GO AHEAD.

8              MR. SITRICK:  SO THE LANGUAGE THAT IS IN QUESTION IS

9    WHAT WE HAVE HIGHLIGHTED UP THERE, I'M NOT GOING TO READ IT

10   AGAIN UNLESS YOU WOULD LIKE ME TO.

11        WHAT THE BOARD SAID COULDN'T HAVE BEEN MORE CLEAR.  WE

12   FIND, ACCORDING TO THE CLAIM, THAT THE ADDRESSES ARE DIRECTLY

13   ACCESSED BY THE REMOTE SERVER.  THE SCOPE OF CLAIM 1 DOES NOT

14   COVER ENCODED AUXILIARY SITE ADDRESSES THAT ARE STRUCTURED TO

15   BE ACCESSED BY A LOCAL PROCESSOR OR ANY OTHER INTERMEDIARY,

16   ULTIMATELY RESULTING IN THE ADDRESSES BEING INDIRECTLY ACCESSED

17   BY THE REMOTE SERVER.

18        WHEN YOU PUT A COMPARISON OF WHAT THE BOARD DECISION IS

19   VERSUS ROTHSCHILD'S INFRINGEMENT THEORY, I MEAN, THE BOARD SAYS

20   THE CLAIM DOES NOT COVER THIS.  ROTHSCHILD SAYS THE CLAIM DOES

21   COVER THIS.  THAT'S OUR -- THAT'S WHERE WE ARE AT ON THIS

22   PUBLIC NOTICE FUNCTION.

23        THEY CLEARLY DISCLAIMED, ROTHSCHILD CLEARLY DISCLAIMED,

24   THE BOARD WAS CLEAR, THE SCOPE OF THE CLAIMS DO NOT COVER

25   SITUATIONS WHERE THE SERVER IS GOING TO DIRECT A LOCAL

1    PROCESSOR TO ACCESS THE AUXILIARY DATA ON THE LOCAL DISK.

2    THAT'S INDIRECT ACCESS.

3         ROTHSCHILD ADMITS THE ACCUSED SERVER CAN ONLY ACCESS DATA

4    ON A LOCAL DISK BY USING THE LOCAL PROCESSOR TO GET TO IT.

5    THAT'S INDIRECT ACCESS.  SO WHERE WE ARE AT DESPITE THIS

6    UNDISPUTED FACT, ROTHSCHILD MAINTAINS ITS PATENT IS INFRINGED.

7         THE COURT:  I KNOW IN THE PAPERS ANYWAY, YOU PERHAPS

8    HAVE A DIFFERENT -- YOU DRAW A DIFFERENT CONCLUSION FROM THIS

9    FACT.  IT SEEMS THAT ONE THING THE PARTIES KIND OF AGREE ON

10   HERE IS IT DOESN'T REALLY MAKE MUCH SENSE FOR A REMOTE SERVER

11   TO ACCESS AUXILIARY DATA UNLESS THERE'S SOME KIND OF LOCAL

12   PROCESSOR INTERMEDIARY.

13        I FIND IT UNUSUAL, PERHAPS, I SUPPOSE IT'S THEORETICALLY

14   POSSIBLE, BUT I HAVE A HARD TIME GETTING MY MIND AROUND THIS

15   NOTION THAT YOU HAVE A REMOTE SERVER OUT HERE AND A PLAYSTATION

16   DISK OVER HERE AND THAT SOMEHOW THAT SERVER OR DISK CAN

17   INTERACT WITHOUT SOMETHING IN BETWEEN.

18        MR. SITRICK:  SO WHAT YOU ARE DRILLING AT IS IT

19   SOUNDS LIKE THE IMPOSSIBILITY THEY HAVE RAISED HERE.

20        I WILL TELL YOU RIGHT NOW IN THE A REEXAMINATION THE

21   BOARD CANNOT EXAMINE FOR ONE ON ONE FOR THAT ISSUE OKAY.  SO

22   THE BOARD, ALL THEY CAN DO IS TAKE THE DISCLAIMERS, EVEN IF IT

23   RENDERS A NONSENSICAL RESULT, THEY CANNOT EXAMINE FOR THAT

24   BASIS.

25        THE COURT:  AND THAT'S OKAY, RIGHT, I MEAN, THE

1    PATENT OFFICE HAS BEEN RENDERING NONSENSICAL INVENTIONS FOR

2    220 YEARS, THAT'S NOTHING NEW HERE.

3              MR. SITRICK:  I WON'T TAKE AN AFFIRMATIVE STANCE ON

4    THAT POSITION, BUT THEY DO MAKE MISTAKES.

5              THE COURT:  WELL, BUT MY POINT IS SLIGHTLY DIFFERENT,

6    THEN WE CAN MOVE ON, WHICH IS IT'S ACTUALLY NOT A MISTAKE AT

7    ALL.  THE PATENT OFFICE IS CONSTRAINED BY ITS STATUTORY

8    AUTHORITY.

9         IN THIS INSTANCE IF WHAT IS RENDERED IS AN INVENTION

10   WHICH NOBODY WOULD ACTUALLY WATCH OR BE ABLE TO PRACTICE,

11   THAT'S OF NO CONSEQUENCE TO THE PTO IN DOING ITS JOB.

12             MR. SITRICK:  THAT'S CORRECT.  I MEANT IT MIGHT HAVE

13   BEEN A MISTAKE IN THE WAY THE RULES WERE DRAFTED IN THE

14   EXAMINATION NOT THAT THE BOARD WAS MAKING A MISTAKE.

15             THE COURT:  FAIR ENOUGH.  OKAY.

16             MR. SITRICK:  SO THE BACKGROUND, BEFORE WE JUMP INTO

17   THE ACTUAL QUOTES THAT WE HAVE LAID OUT IN OUR BRIEF THAT I

18   SUMMARIZE AND STREAMLINED TO KIND OF HELP SHOW YOU WHERE THESE

19   DISCLAIMERS WERE AT, I THINK IT HELPS TO PROVIDE SOME CONTEXT.

20        SO YOU ASKED ABOUT HOW THIS GOT INTO REEXAM.  SO

21   ROTHSCHILD ASSERTED THE PATENT FOR PRE-REEXAMINATION AT A

22   COMPANY CALLED CITRIX IN FLORIDA.  AND IT ARGUED FOR A BROAD

23   CONSTRUCTION THAT INCLUDED A REMOTE SERVER INDIRECTLY ACCESSING

24   THE AUXILIARY SITE DATA VIA THE LOCAL PROCESSOR.  NOW CITRIC'S

25   PETITION FOR THE REEXAM IT WAS GRANTED, THE EXAMINER --

1              MR. CAREY:  EXCUSE ME, YOUR HONOR.  I'M SORRY TO

2    INTERRUPT.  I WANT TO MAKE A POINT FOR THE RECORD BEFORE WE

3    MOVED ON.

4         I WAS NOT GIVEN ANY ADVANCE NOTICE OF THIS PRESENTATION

5    THAT'S BEING MADE BY POWERPOINT TO YOUR HONOR, AND I JUST

6    WANTED TO LET THE RECORD REFLECT THAT THE LAST SLIDE WHICH

7    SHOWED A COLUMN OF THE BOARD DECISION AND ROTHSCHILD'S

8    INFRINGEMENT THEORY, WHAT WAS REPRESENTED AS ROTHSCHILD'S

9    INFRINGEMENT THEORY CONSPICUOUSLY HAD NO QUOTE ON IT.

10        IT DOES NOT REPRESENT OUR INFRINGEMENT THEORY AND IT IS

11   NOT WHAT WAS ATTACHED AT PAGE 30 OF THE COMPLAINT WHICH WAS THE

12   CITATION AT THE BOTTOM OF THE COLUMN.

13        HAD I BEEN GIVEN ADVANCE NOTICE, I MIGHT HAVE BEEN ABLE

14   TO RESOLVE THIS BEFORE.  SO I APOLOGIZE FOR INTERRUPTING.

15             THE COURT:  I WILL GIVE YOU A CHANCE TO ADDRESS THOSE

16   ISSUES IN YOUR OWN PRESENTATION.

17        LET'S SEE IF WE CAN GET THROUGH THIS.  GO AHEAD.

18             MR. SITRICK:  SURE.

19        SO THE EXAMINER ON REEXAM GAVE THE CLAIMS THE BROADEST

20   REASONABLE INTERPRETATION AND REJECTED THE CLAIMS AS INVALID IN

21   LIGHT OF THE PRIOR ART.

22        ROTHSCHILD COMES BACK, HE DOESN'T SAY WHAT HIS INVENTION

23   DOES, BUT IT ARGUES THAT ITS PATENT IS DIFFERENT THAN THE PRIOR

24   ART.

25             THE COURT:  AND AGAIN, NOT TO NIT PICK, WHEN YOU SAY

1    ROTHSCHILD, YOU ARE TECHNICALLY REFERRING TO A PREDECESSOR IN

2    INTEREST.

3              MR. SITRICK:  CORRECT.  ROTHSCHILD TRUST.

4              THE COURT:  I UNDERSTAND.  I JUST WANT TO MAKE SURE I

5    APPRECIATE THE DISTINCTION.  GO AHEAD.

6              MR. SITRICK:  CORRECT.

7         SO ROTHSCHILD DIDN'T SAY WHAT ITS INVENTION WAS BUT IT

8    DID ARGUE THAT ITS PATENT WAS DIFFERENT THAN THE PRIOR ART THAT

9    TEACHES THE SERVER INCORRECTLY ACCESSING THE DATA ON THE LOCAL

10   DISK VIA THE LOCAL PROCESSOR.

11        AND ROTHSCHILD REPEATEDLY CITES TO THE EMBODIMENT IN THE

12   SPECIFICATION WHERE THE DIRECT SERVER CAN DIRECTLY ACCESS THE

13   AUXILIARY SITE DATA ON THE DISK, ONLY THE REMOTE SERVER CAN

14   DIRECTLY ACCESS IT.

15        NOW THE EXAMINER, IN COMING BACK AND MAINTAINING HIS

16   FINAL REJECTION, HE KNEW THAT ROTHSCHILD WAS ASSERTING AN

17   INCONSISTENT CLAIM CONSTRUCTION BETWEEN THE LITIGATION AND THE

18   DISCLAIMERS THAT WERE BEING MADE WHEN FACED WITH THE PRIOR ART.

19        SO ROTHSCHILD APPEALED AND HE MAINTAINED ITS POSITION

20   THAT ITS PATENT DISCLOSES A SERVER THAT INDIRECTLY ACCESSES THE

21   DATA ON THE LOCAL DISK VIA THE LOCAL PROCESSOR.  BUT AT THE

22   SAME TIME IT WAS ADAMANT THAT IT WAS DIFFERENT THAN THE PRIOR

23   ART WHICH TEACHES THE SERVER INSTRUCTIONS TO A LOCAL PROCESSOR

24   TO ACCESS THE DATA ON THE LOCAL DISK.

25        SO THE EXAMINER CALLED ROTHSCHILD OUT ON THESE

1    INCONSISTENT POSITIONS, AND THEN THE EXAMINER DISMISSED THE

2    DISCLAIMERS THAT ROTHSCHILD TRIED TO MAKE AND MAINTAINED THE

3    PATENT WAS INVALID BASED ON THE BROADEST REASONABLE

4    INTERPRETATION.

5         NOW ROTHSCHILD ACKNOWLEDGED THAT THE ISSUE WAS ONE OF

6    CLAIM CONSTRUCTION IN THE APPEAL BRIEFS AND ASKED THE BOARD FOR

7    A NARROW CONSTRUCTION TO KEEP THE PATENT VALID IN LIGHT OF THE

8    PRIOR ART.

9         THE COURT:  HE TOOK -- SO ROTHSCHILD TOOK A DIFFERENT

10   POSITION THAN THE ONE THAT WAS TAKEN WITH THE EXAMINER, IN THAT

11   SENSE ANYWAY.

12        MR. SITRICK:  NO, I DON'T BELIEVE SO.  I BELIEVE HE

13   MAINTAINED THE SAME POSITION.  AND I WILL SHOW YOU VISUALLY THE

14   POSITION HE MAINTAINED THROUGHOUT WAS THAT IT WAS ONLY DIRECT

15   ACCESS, THAT INDIRECT ACCESS IS NOT -- THE EXAMINER'S POSITION

16   WAS THAT BOTH WERE ON THE TABLE AND ROTHSCHILD'S WAS --

17        THE COURT:  ROTHSCHILD'S POSITION IS IT WAS ONLY

18   DIRECT ACCESS THAT WAS COVERED BY THE CLAIM.

19        MR. SITRICK:  CORRECT.  AND THE BOARD ADOPTED THAT.

20        SO THE BOARD WAS CLEAR THAT THE SCOPE OF THE CLAIMS OF

21   THE PATENT DO NOT COVER SITUATIONS WHERE THE SERVER IS

22   INDIRECTLY ACCESSING THE DATA ON THE LOCAL DISK.  THE BOARD WAS

23   CLEAR THAT SUCH TEACHINGS ARE FOUND IN THE PRIOR ART, CITED BY

24   THE EXAMINER.  AND THE BOARD WAS CLEAR THAT THE BROADEST

25   POSSIBLE CONSTRUCTION IS WHERE THE SERVER DIRECTLY ACCESSES THE

1    DATA ON THE LOCAL DISK WITHOUT A LOCAL PROCESSOR OR OTHER, ANY

2    OTHER INTERMEDIARY ULTIMATELY RESULTING IN THE ADDRESSES BEING

3    INDIRECTLY ACCESSED BY THE REMOTE SERVER.

4         THE COURT:  AND CRITICALLY, THE BOARD WASN'T COMING

5    UP WITH THIS ON ITS OWN, IT WAS RELYING UPON ROTHSCHILD'S

6    REPRESENTATIONS.

7         MR. SITRICK:  ABSOLUTELY.

8         AND THE REASON THIS CASE IS SO UNIQUE IS THE BOARD GOES

9    OUT AND LAYS THOSE ARGUMENTS OUT JUST AS WAS STATED BY THE

10   EXAMINER AND BY ROTHSCHILD DURING THE REEXAMINATION

11   PROCEEDINGS.  WE WILL GET TO THAT HERE TOWARDS THE END OF THESE

12   SLIDES.

13        SO WITH THAT BACKGROUND OF THE STORY, THIS IS WHERE

14   ROTHSCHILD STARTED THE DISCLAIMERS AS TO INDIRECT ACCESS TO

15   OVERCOME THE PRIOR ART.

16        WE HAVE MORE EXAMPLES IN OUR BRIEF, AS HE WAS MENTIONING,

17   HOW HIS -- DISCLAIMING HOW HIS PATENT WAS DIFFERENT THAN THE

18   PRIOR ART.  BUT THIS IS ILLUSTRATIVE.  AND THIS IS WHERE IT

19   SAYS URINAKA RELATES TO A REMOTE SHOPPING SYSTEM WHICH UTILIZES

20   A LOCALLY MAINTAINED CATALOG.

21        HERE AGAIN, AS WITH THE PREVIOUS REFERENCES, URINAKA

22   REQUIRES THAT THE SCRIPT, ESSENTIALLY A PROGRAM WITH A SET OF

23   INSTRUCTIONS, BE DOWNLOADED BY THE LOCAL COMPUTER AND THEN RUN.

24        AGAIN, UNLIKE THE PATENTEE'S CLAIMED SYSTEM, IT IS THE

25   SCRIPT, NOT THE REMOTE SERVER THAT INITIATES THE UTILIZATION OF

1    THE LOCAL DATA.

2       THE EXAMINER REJECTED THE CLAIMS.  HE SAID THE CLAIMS

3    INCLUDED INDIRECT AND DIRECT ACCESS.  AND HE CALLS OUT THE FACT

4    THAT THE ISSUE AGAIN APPEARS TO BE WHAT PROPERLY CONSTITUTES

5    INITIATES AS THE EXAMINER IS INTERPRETING THIS IN ITS BROADEST

6    REASONABLE SENSE TO INCLUDE THE INITIAL TRANSFER OF DATA FROM

7    THE SERVER.  IT'S CLEARLY DEFINING INDIRECT AS PART OF IT.

8       ROTHSCHILD THEN APPEALED ON GROUNDS THAT THE CLAIMS ARE

9    LIMITED TO DIRECT ACCESS.  HE TAKES THE EXAMINER TO TASK ON

10    THIS ONE.  HE SAYS THE EXAMINER HAS FAILED TO ESTABLISH THAT

11    THE APPELLATE SPECIFICATION SUPPORTS THE BREADTH OF THE

12    EXAMINER'S PROPOSED CLAIM CONSTRUCTION.

13       UNLIKE THE TEACHINGS OF MAGES, REISMAN, URINAKA AND

14    FIDELIBUS, WHICH ALL PROVIDE A MECHANISM BY WHICH UTILIZATION

15    OF DATA ON A COMPUTER READABLE MEDIUM CAN BE INITIATED WHEN THE

16    REMOTE SERVER ASSEMBLY IS NOT REMOTELY ACCESSING THE AUXILIARY

17    SITE ADDRESSES, THE TEACHINGS OF APPELLATE'S DISCLOSURE DO NOT

18    DESCRIBE THE MECHANISM.

19       ROTHSCHILD THEN SPECIFICALLY CALLS OUT AN EMBODIMENT

20    WITHIN THE SPECIFICATION TO SUPPORT THIS NARROW CONSTRUCTION.

21       HE SAYS, FOR EXAMPLE, REFERENCES MADE TO COLUMN 13, LINES

22    59 TO 61 OF THE '534 PATENT WHICH STATES THAT ONLY THE REMOTE

23    SERVER ASSEMBLY CAN ACCESS THE AUXILIARY SITE DATA AT THE

24    AUXILIARY SITE ADDRESSES.

25       THUS, ACCORDING TO THE CLAIMED INVENTION, TO INITIATE

1   UTILIZATION, THE REMOTE SERVER MUST BE REMOTELY ACCESSING THE

2   AUXILIARY SITE ADDRESSES.

3           THE COURT:  AND IN COLUMN 13, OR OTHERWISE IN THIS

4   BRIEF, IS ROTHSCHILD SPECIFICALLY DISCLAIMING OR EXPLICITLY

5   DISCLAIMING THE USE OF AN INTERMEDIARY A LOCAL PROCESS OR

6   ANYTHING LIKE THAT?

7           MR. SITRICK:  SO THAT'S THE PROBLEM.

8       ROTHSCHILD NEVER TAKES AN AFFIRMATIVE STATEMENT AS TO

9   WHAT THEY DO OR WHAT THEIR PATENT TEACHES.  THEY ARE VERY CLEAR

10  ABOUT WHAT IT DOESN'T TEACH.  AND THE LAW IS CLEAR THAT A

11  DISCLAIMER CAN BE MADE BASED ON THE FACT THAT YOU ARE TRYING TO

12  DISTINGUISH WHAT YOUR PATENT DOES FROM THE PRIOR ART.

13          THE COURT:  OKAY.

14          MR. SITRICK:  SO ROTHSCHILD THEN URGED THE BOARD TO

15  ADOPT ITS NARROWER DIRECT ACCESS CONSTRUCTION RATHER THAN THE

16  EXAMINER'S.

17      THEY SAID, AS NOTED ABOVE, THE EXAMINER'S CLAIM

18  CONSTRUCTION ENCOMPASSES SITUATIONS IN WHICH THE REMOTE SERVER

19  IS NOT REMOTELY ACCESSING THE AUXILIARY SITE ADDRESSES;

20  THEREFORE THE EXAMINER HAS ERRED IN RELYING UPON A CLAIM

21  CONSTRUCTION THAT IS INCONSISTENT WITH APPELLANT'S

22  SPECIFICATION.

23      AS DESCRIBED IN DETAIL ABOVE WITH REGARD TO THE CLAIM

24  CONSTRUCTION OF THE PHRASE INITIATE UTILIZATION, APPELLANT

25  DISAGREES THAT THE SENDING OF A SCRIPT, A SET OF INSTRUCTIONS,

1    ACTS TO INITIATE UTILIZATION.

2         THE EXAMINER CALLED OUT ROTHSCHILD'S INCONSISTENT CLAIM

3    CONSTRUCTION POSITIONS.  HE WAS WELL AWARE OF WHAT WAS BEING

4    ARGUED AND ADVOCATED FOR IN THE CASE IN FLORIDA AGAINST CITRIX.

5         HE SAYS IT'S INCONSISTENT FOR APPELLATE TO INSIST ON A

6    NARROW CLAIM INTERPRETATION FOR THE PURPOSE OF AVOIDING PRIOR

7    ART, YET A BROAD INTERPRETATION FOR DECIDING SCOPE FOR

8    POTENTIAL INFRINGEMENT.

9         THE COURT:  I'M GLAD YOU BROUGHT THIS UP, BECAUSE

10   WHEN I READ IT IN THE PAPERS, I HAD A QUESTION.

11        SO WHEN THE EXAMINER IS ADDRESSING POTENTIAL INFRINGEMENT

12   HERE IN HIS BRIEF, HE'S REFERRING TO THE ALLEGATIONS IN THE

13   CITRIX LITIGATION IN FLORIDA?

14        MR. SITRICK:  YEAH.  ROTHSCHILD SUBMITTED THE CLAIM

15   CONSTRUCTION THAT HAD BEEN RENDERED IN THAT CASE AND ADVOCATED

16   FOR SUCH.  SO HE WAS WELL AWARE OF WHAT WAS BEING ADVOCATED AT

17   THIS POINT.  AND THAT'S EXACTLY WHAT'S GOING ON NOW HERE, WE

18   BELIEVE HE DISCLAIMED.

19        IT'S CLEAR WHAT THE SCOPE OF THE CLAIMS DON'T COVER AND

20   WE ARE RIGHT BACK TO HIM ARGUING THAT IT COVERS THE INDIRECT

21   ACCESS.

22        SO THE EXAMINER MAINTAINED THAT THE CLAIMS INCLUDED

23   DIRECT AND INDIRECT ACCESS.  I'M NOT GOING TO READ THIS ENTIRE

24   QUOTE, IT'S IN THE BRIEF, BUT THE RELEVANT PART IS THE EXAMINER

25   SAYS THE REMOTE SERVER ACTS AS THE ADDRESS SIMPLY BY CAUSING

1   THE INITIATION OF UTILIZATION OF THE ADDRESSES AND THEIR DATA

2   BY THE LOCAL PROCESSOR.  IT'S CLEAR IT'S AGAIN REFERRING TO THE

3   FACT THAT IT INCLUDES INDIRECT AND DIRECT ACCESS.

4        SO ROTHSCHILD ON ITS REPLY, ON THE APPEAL BRIEF, SAYS IT

5   WAS ENTITLED TO A NARROW CONSTRUCTION OF ONLY DIRECT ACCESS.

6   THE EXAMINER POINTS -- THE EXAMINER'S POINT EVIDENCES YET AGAIN

7   THE EXAMINER'S UNREASONABLENESS IN CONSIDERING THE LANGUAGE OF

8   THE CLAIM.

9        IN THIS INSTANCE THE EXAMINER SOMEHOW BELIEVES THAT A

10  REMOTE SERVER ASSEMBLY ACCESSING AUXILIARY SITE DATA IS

11  DISCLOSED BY SENDING SOME INFORMATION THAT ALLOWS ACCESS.  TO

12  ALLOW ACCESS IS NOT THE SAME AS ACCESSING.

13        THE COURT:  SO THE ANALOGY I WAS DRAWING AS I WAS

14  READING ALL OF THIS, IT WOULD BE SOMETHING LIKE IS IT THE SAME

15  THING FOR ME TO OPEN THE DOOR AND GIVE YOU THE KEY, RIGHT?

16  THAT'S THE DEBATE THAT THE EXAMINER AND ROTHSCHILD SEEM TO BE

17  HAVING IN THESE BRIEFS.

18        AND I READ ROTHSCHILD HERE AS MAKING VERY CLEAR THAT ITS

19  VIEW, MY GIVING YOU THE KEY IS NOT THE SAME THING AS MY SIMPLY

20  OPENING THE DOOR MYSELF; FAIR ENOUGH?

21        MR. SITRICK:  YES.

22        SO THE BOARD HERE THEN RESTATES THE ARGUMENTS IN ITS

23  OPINION.  IT DIDN'T JUST MAKE THESE UP.  COMES OUT AND SAYS THE

24  EXAMINER ROTHSCHILD DISAGREED ABOUT THE INTERPRETATION GIVEN TO

25  SAID REMOTELY ACCESSIBLE AUXILIARY SITE ADDRESSES BEING

1    STRUCTURED TO BE REMOTELY ACCESSED BY REMOTE SERVER ASSEMBLY.

2    IT'S A MOUTHFUL.

3         SO THE FIGURES ARE FROM THE PATENT.  THE RED LINES WE

4    HAVE ADDED AS DEMONSTRATIVES TO HELP IDENTIFY WHAT'S GOING ON

5    HERE TO SHOW THE DIRECT INDIRECT AND DIRECT ACCESS.

6         SO FIRST OF ALL, THE BOARD RESTATES THE EXAMINER'S

7    CONSTRUCTION.  THE BOARD SAYS THE EXAMINER FINDS THE CLAIM

8    LANGUAGE ONLY REQUIRES THE REMOTE SERVER TO BE IN SOME FORM

9    INVOLVED IN THE ACCESS OF THE AUXILIARY SITE ADDRESSES AND DATA

10   AND DOES NOT REQUIRE THE REMOTE SERVER TO READ, HAVE POSSESSION

11   OR EVEN DIRECTLY CONTROL THE AUXILIARY SITE DATA OR ADDRESSES.

12        THE EXAMINER EXPLAINS THAT ACCESS COULD BE THE REMOTE

13   SERVER SENDING SOME INFORMATION THAT INDIRECTLY ALLOWS ACCESS.

14        THEN THE BOARD RESTATES ROTHSCHILD'S PROPOSED

15   CONSTRUCTION.  ROTHSCHILD ARGUES THE EXAMINER'S CLAIM

16   INTERPRETATION IS UNREASONABLE.  SPECIFICALLY ROTHSCHILD

17   DISAGREES THAT ACCESS COULD INCLUDE SENDING INFORMATION THAT

18   INDIRECTLY ALLOWS ACCESS.

19        ROTHSCHILD ALSO ARGUES THAT THE EXAMINER'S CLAIM

20   INTERPRETATION IS INCONSISTENT WITH THE SPECIFICATION WHICH

21   DISCLOSES THAT ONLY THE REMOTE SERVER ASSEMBLY CAN ACCESS THE

22   AUXILIARY SITE DATA AT THE AUXILIARY SITE ADDRESSES.

23        AND THEY CITE TO THE SAME COLUMN AND LINES THAT

24   ROTHSCHILD CITED TO IN ORDER TO MAKE THE DISCLAIMER TO OVERCOME

25   THE PRIOR ART.

1          THE COURT:  YOU KNOW HERE IN THE COURTS WE TAKE A LOT

2    OF SHOTS AT THE BOARD AND THE PTO IN GENERAL.  ONE MIGHT

3    SUGGEST THIS IS A GOOD EXAMPLE OF THE PTO'S THOROUGHLY

4    SUMMARIZING THE ARGUMENTS OF THE PARTIES IN A WAY THAT THE

5    COURTS SOMETIMES DON'T BOTHER TO DO.

6          MR. SITRICK:  I WOULD SAY THAT'S WHAT MAKE THIS IS A

7    VERY UNIQUE CASE.  THAT'S WHY WE HAVE READ IT AND WE CAN'T COME

8    TO ANY OTHER CONCLUSION.

9          SO THE BOARD'S DECISION WAS THEN CLEAR.  WE FIND,

10   ACCORDING TO THE CLAIM, THAT THE ADDRESSES ARE DIRECTLY

11   ACCESSED BY THE REMOTE SERVER.  SCOPE OF CLAIM 1 DOES NOT COVER

12   ENCODED AUXILIARY SITE ADDRESSES THAT ARE STRUCTURED TO BE

13   ACCESSED BY A LOCAL PROCESSOR OR ANY OTHER INTERMEDIARY

14   ULTIMATELY RESULTING IN THE ADDRESSING BEING INDIRECTLY

15   ACCESSED BY THE REMOTE SERVER.  SUCH A BROAD INTERPRETATION

16   WOULD BE UNREASONABLE SINCE THE AUXILIARY SITE ADDRESSES ARE

17   BOTH ENCODED AND STRUCTURED FOR THE PURPOSE OF BEING ACCESSED

18   BY THE REMOTE SERVER.

19         BUT THE BOARD DIDN'T STOP THERE.  THE BOARD THEN WENT

20   THROUGH EACH OF THE REFERENCES OF THE PRIOR ART THAT WERE AT

21   STAKE IN THIS CASE AND DISTINGUISHED VERY CLEARLY BETWEEN

22   INDIRECT AND DIRECT ACCESS.

23         THE BOARD SAID FOR MAGES, WE CAN CANNOT FIND WHERE MAGES

24   DESCRIBES THE CD ROM IS STRUCTURED TO BE REMOTELY ACCESSED BY

25   THE REMOTE SERVER DIRECTLY.  INSTEAD MAGES TEACHES THAT THE

1    CD-ROM IS ACCESSED BY THE LOCAL END USER'S COMPUTER, PROCESSOR.

2           THE COURT:  IT'S ALSO OF SOME INTEREST, RIGHT, THAT

3    THE BOARD DIDN'T SAY E.G. DIRECTLY, THEY SAID I.E., AND THERE'S

4    A DIFFERENT THERE, RIGHT?

5           MR. SITRICK:  YES.  SORRY FOR THE HEAD NOD.

6       THE BOARD ALSO THEN WENT AND DISTINGUISHED ON REISMAN

7    WHICH IS THE NEXT PIECE OF PRIOR ART.

8       WE CANNOT FIND WHERE REISMAN DESCRIBES THAT THE NEW

9    CONTENT IS STRUCTURED TO BE REMOTELY ACCESSED BY THE REMOTE

10   SERVER DIRECTLY.  INSTEAD, REISMAN DESCRIBES THAT THE NEW

11   CONTENT ELEMENTS ARE ACCESSED BY THE LOCAL COMPUTER, THE

12   PROCESSOR.

13      SAME THING FOR URINAKA.  THE COURT CANNOT FIND WHERE IT

14   DESCRIBES THE DISPLAY SCRIPT AS ENCODED ON A COMPACT PORTABLE

15   AND INTERCHANGABLE COMPUTER READABLE MEDIUM AND STRUCTURED TO

16   BE REMOTELY ACCESSED BY THE REMOTE SERVER DIRECTLY.

17      SAME THING ON FIDELIBUS.  CANNOT FIND WHERE FIDELIBUS

18   DESCRIBES THE CD DATA IS STRUCTURED, CAN BE REMOTELY ACCESSED

19   BY THE REMOTE SERVER DIRECTLY.

20       INSTEAD FIDELIBUS DESCRIBES THAT THE LOCAL COMPUTER

21   READS THE CD DATA.

22      SO HERE WE COME TO THE END OF THIS.  AND WE ARE LOOKING

23   AT WHAT THE BOARD CLEARLY SAID, THIS IS THE EXACT QUOTE FROM

24   ROTHSCHILD'S COMPLAINT.  IT DOESN'T MAP ONE-ON-ONE BECAUSE OF

25   THE LANGUAGE THAT THEY USE.  BUT WHEN YOU READ IT IN CONTEXT IT

1    IS VERY CLEAR AS TO WHAT THEY ARE SAYING.  THEY SAY THE ACCUSED

2    PRODUCTS, THE DATA RESIDING ON THE GAME DISK IS STRUCTURED TO

3    BE REMOTELY ACCESSED BECAUSE IT IS MADE AVAILABLE, IT'S MOUNTED

4    TO THE PLAYSTATION NETWORK SERVERS FROM THE LOCAL CONSOLES.

5         IN THEIR BRIEFING TOO THERE'S NO DISPUTE THAT THEY ADMIT

6    THAT THE ONLY WAY THAT THE PLAYSTATION CONSOLE COULD PROVIDE

7    THE INFORMATION ON THAT DISK IS FOR THE LOCAL PROCESSOR TO READ

8    IT.

9         SO WHERE WE COME OUT ON THIS IS WE -- IT'S CLEAR BASED ON

10   THE PROSECUTION HISTORY, YOU HAVE VERY CLEAR DISCLAIMERS.  THE

11   BOARD IS VERY THOROUGH IN REPEATING THE ARGUMENTS THAT WERE

12   MADE IN PROVIDING A CLEAR DEFINITION AS TO WHAT THE SCOPE OF

13   THE CLAIMS DO NOT COVER BASED ON REPRESENTATIONS AND THE

14   ARGUMENTS MADE IN THE REEXAMINATION AND ULTIMATELY CONCLUDED

15   VERY CLEARLY THAT DID DOES NOT COVER THE SITUATION, THE

16   INFRINGEMENT THEORY THAT'S NOW BEING ADVANCED.

17         THE COURT:  FOR PURPOSES OF OUR CONVERSATION, IS IT

18   REASONABLE FOR ME TO CONSIDER LOCAL CONSOLES AND LOCAL

19   PROCESSORS AS ONE AND THE SAME?

20         MR. SITRICK:  YES.

21         THE COURT:  IN OTHER WORDS, I HAD UNDERSTOOD THAT A

22   PLAYSTATION CONSOLE COMPRISES MANY COMPONENTS, INCLUDING A

23   PROCESSOR, BUT I DON'T WANT TO GET BOXED UP IN ALL OF THAT.

24         MR. SITRICK:  FOR THE SAKE OF THIS ARGUMENT, YES,

25   YOUR HONOR.

1          THE COURT:  OKAY.  WHY DON'T YOU GO AHEAD.

2          MR. SITRICK:  THAT'S IT.

3          THE COURT:  ALL RIGHT.  I THINK I HAVE IT.

4          MR. SITRICK:  I WOULD LIKE TO RESERVE SOME TIME FOR

5     REBUTTAL.

6          THE COURT:  I WILL GIVE YOU THAT OPPORTUNITY.

7        WHY DON'T I HEAR FROM ROTHSCHILD.

8          MR. CAREY:  GOOD AFTERNOON, JUDGE.

9        YOUR HONOR, ONE HOUSEKEEPING ITEM BEFORE I GET STARTED

10    INTO THE SUBSTANCE.

11         THE COURT:  SURE.

12         MR. CAREY:  THERE WAS A DECISION OUT OF THE EASTERN

13    DISTRICT OF TEXAS THAT WE FILED.

14         THE COURT:  I SEE YOU FOLLOW JUDGE GILSTRAP

15    JURISPRUDENCE AS CAREFULLY AS I DO.  I TAKE IT, COUNSEL, YOU

16    WERE SERVED WITH A COPY OF THIS?  WERE YOU PROVIDED A COPY?

17         MR. SITRICK:  NO.

18         MR. CAREY:  WELL, IT WAS FILED AND SERVED

19    ELECTRONICALLY.  WE ARE HAPPY TO GIVE THEM COPIES.

20         THE COURT:  IF IT'S ULTIMATELY SOMETHING YOU WANT TO

21    GET INTO, MAYBE WE CAN ADDRESS IT IN REBUTTAL AS WELL.

22        IN ANY EVENT, GO AHEAD.

23        I WILL JUST PUT IT OUT THERE ON THE RECORD THAT I DO READ

24    THESE THINGS TOO AND I SAW THAT BEFORE IT WAS FILED, BUT I

25    APPRECIATE THE HEADS UP.

```
 1              MR. CAREY:  IT'S SIMILAR, ACTUALLY, TO SOME OF THE

 2    OTHER DECISIONS THAT WE CITED IN OUR PAPERS, THE SAFE-STRAP

 3    DECISION OUT OF THE SOUTHERN DISTRICT OF NEW YORK, THE GN

 4    RESOUND DECISION OUT OF THIS COURT.

 5              ALL THREE OF THESE CASES, THOSE TWO AND THIS ONE ALL SAY

 6    THAT RULE 11 MOTIONS AT THE OUTSET OF PATENT CASES AREN'T THE

 7    PROPER WAY TO LITIGATE CLAIM CONSTRUCTION ISSUES BEFORE MARKMAN

 8    AND SUMMARY JUDGEMENT.  THAT'S NOT THE PURPOSE OF THE RULE.

 9              THE COURT:  BUT TO BE FAIR, I AM EAGER TO GET TO THE

10    MERITS OF YOUR POSITION, IT DOES SEEM TO ME JUDGE GILSTRAP DID

11    EVERYONE ELSE ONE BETTER IN HITTING THE MOVING PARTY WITH THE

12    SANCTIONS IN THE AMOUNT OF A THOUSAND DOLLARS.

13              MR. CAREY:  I THINK HE CAPPED IT AT TEN.

14              THE COURT:  IN ANY EVENT.

15              MR. CAREY:  AND THAT'S WHAT WE ASKED FOR HERE BECAUSE

16    WE BELIEVE THIS MOTION SHOULD NOT HAVE BEEN FILED.  WE BELIEVE

17    THAT IT'S SUBSTANTIVELY WRONG.  WE BELIEVE IT'S SUBSTANTIVELY

18    ACTUALLY WITHOUT BASIS.

19              BUT CERTAINLY IT'S PROCEDURALLY WRONG BECAUSE RULE 11

20    ISN'T A WAY TO LITIGATOR FOR A FINAL JUDGEMENT.  THEY ARE

21    ASKING FOR A FINAL DISMISSAL WITH PREJUDICE.  THEY ARE USING

22    THIS RULE 11 PROCEDURE WHICH HAS IMPORTANT PURPOSES AND

23    DIFFERENT FUNCTIONS.  THEY ARE TRYING TO USE IT AS A CIRCUIT

24    FOR A SUMMARY JUDGEMENT MOTION.

25              MY COLLEAGUE INDICATED THAT THEY BROUGHT THIS AFTER A LOT
```

1    OF THOUGHT.  WELL, THIS CASE GOT HERE BY WAY OF TRANSFER FROM

2    THE SOUTHERN DISTRICT OF FLORIDA AFTER THE PARTIES HAD GONE TO,

3    SEVERAL MONTHS OF THE CASE PENDING THERE, WE HAD GONE TO A

4    SCHEDULING CONFERENCE, WE HAD AGREED TO DO AN EARLY MARKMAN

5    PROCEDURE ON THIS ISSUE.

6        SO THEY NEVER FILED A RULE 11 MOTION THERE, THEY WERE

7    HAPPY TO PRESENT IT TO THE COURT AND WE FACILITATED THAT

8    BECAUSE WE WANTED THIS ISSUE ADDRESSED ON ITS MERITS.

9        AND WE AGREED TO A PROCEDURE WHEREBY SOMEWHAT LIKE THE

10   PATENT RULES OF THIS DISTRICT, THE PARTIES WOULD ENGAGE IN

11   DISCLOSURES AND THEN EXCHANGE THEIR DEFINITIONS OF WHAT THE

12   DISPUTED TERMS MEAN THEN THERE WOULD BE A SEQUENCE OF BRIEFING

13   THEN THERE WOULD BE A HEARING FOR THE COURT, A MARKMAN HEARING

14   ON THIS ISSUE.  THEN IF THAT DIDN'T RESOLVE THE CASE, EITHER

15   BECAUSE IF THEY WIN, PERHAPS WE WOULD LOSE THE CASE, AND IF WE

16   WIN, PERHAPS WE SETTLE THE CASE.  IF IT DIDN'T RESOLVE THE CASE

17   THEN WE WOULD GO ON WITH THE REST OF THE MARKMAN PROCEDURE.

18       WHY THEY HAVE AFTER GETTING TO THIS COURT BY WAY OF

19   TRANSFER WHY THEY HAVE NOW FILED A RULE 11 MOTION IS

20   INEXPLICABLE AND OUGHT TO BE REJECTED.

21       LET ME DIVE INTO THE MERITS OF THIS ARGUMENT OF THE

22   DISCLAIMER.

23            THE COURT:  GO AHEAD.

24            MR. CAREY:  WHAT YOU SAW THERE IN THE PRESENTATION

25   AND WHAT'S IN THEIR BRIEFS IS HIGHLY MISLEADING, IT TAKES THE

1    WHOLE REEXAMINATION OF THIS PATENT OUT OF CONTEXT.  IT

2    SELECTIVELY CITES THINGS LIKE THE EXAMINER'S CLAIM

3    CONSTRUCTIONS ARE UNREASONABLE.  WELL, ABOUT WHAT?  TO SAY

4    WHAT?  OKAY.

5         THERE IS -- FOR A DISCLAIMER TO EXIST, THE CASE LAW WAS

6    CLEAR, THE PATENTEE HAS TO MAKE A CLEAR AND UNAMBIGUOUS

7    DISAVOWAL OF CLAIM SCOPE.  THE SLIDE THAT MR. SITRICK SHOWED

8    YOU SAID THAT THE BOARD'S DECISION IS CLEAR AND UNAMBIGUOUS.

9    WELL, THAT'S NOT THE LAW.  IT'S GOT TO BE SOMETHING THE PATENT

10   OWNER SAID THAT WAS CLEAR AND UNAMBIGUOUS.

11        AND MR. SITRICK, I WROTE IT DOWN WHEN I HEARD HIM SAY IT

12   JUST A FEW MINUTES AGO, PATENTEE NEVER MADE AN AFFIRMATIVE

13   STATEMENT.  NEVER MADE AN AFFIRMATIVE STATEMENT.

14        SO THIS WHOLE THEORY IS BASED ON INFERENCE AND

15   SUPPOSITION AND INNUENDO AND TAKING THIS STATEMENT OUT OF

16   CONTEXT.  THERE'S ABSOLUTELY NOT A SINGLE CLEAR AND UNAMBIGUOUS

17   STATEMENT OF DISAVOWAL AND DISCLAIMER THAT THEY ARE ARGUING

18   HERE ABOUT THE INTERACTION BETWEEN THE REMOTE.

19             THE COURT:  SO I TAKE YOUR POINT ABOUT DISAVOWAL, OR

20   TO PUT IT ANOTHER WAY, I CERTAINLY UNDERSTAND THE NOTION THAT

21   THERE WOULD GENERALLY HAVE TO BE AFFIRMATIVE STATEMENTS OR

22   REPRESENTATIONS TO BE MADE IN ORDER TO TRIGGER A DISAVOWAL

23   EFFECT.  BUT IT STILL SEEMS TO ME THAT WHETHER OR NOT THE BOARD

24   WAS ACTING IN RELIANCE UPON AFFIRMATIVE STATEMENTS BY

25   ROTHSCHILD DURING THE REEXAMINATION PROCEEDING, AT SOME POINT

1    THE BOARD COMES OUT WITH A FAIRLY CLEAR STATEMENT OF WHAT IT

2    BELIEVES THE CLAIM COVERS AND DOESN'T COVER, AND COULD THAT NOT

3    IN AND OF ITSELF GIVE RISE TO SERIOUS QUESTIONS ABOUT THE

4    PROPRIETY OF AN INFRINGEMENT THEORY THAT SEEMS TO CONTRADICT

5    THAT VERY SAME CONSTRUCTION.

6              MR. CAREY:  IT DOESN'T CONTRADICT IT.

7              THE COURT:  TELL ME WHY.

8              MR. CAREY:  IT'S CLEAR THAT WE SEE IT BLACK AND THEY

9    SEE IT WHITE.  BUT LET ME TELL YOU WHY WE ARE SEEING IT CLEARLY

10   AND THEY ARE SEEING IT WRONG.

11        OKAY.  WHAT HE DOESN'T CITE TO YOU IS WHAT WE POINTED OUT

12   IN OUR OPPOSITION, OKAY.  THE BOARD HAD AN ORDER CONFIRMING THE

13   VALIDITY OF THIS PATENT.  THIS IS THE BOARD DECISION.  OKAY.

14   AT PAGE 5, PARAGRAPH 2, THEY ISSUED FINDINGS OF FACT, FINDINGS

15   OF FACT.  THESE ARE THE DECISION OF THE BOARD.

16        THEY DESCRIBE THE SYSTEM THAT'S PATENTED UNDER CLAIM 1 TO

17   EXCLUDE AUXILIARY SITE ADDRESSES THAT RESTRICT ACCESS BY A

18   LOCAL PROCESSOR UNLESS THE ACCESS IS DIRECTED BY THE REMOTE

19   SERVER.

20        THEY ARE SAYING THIS PATENT COVERS AUXILIARY SITE

21   ADDRESSES THAT RESTRICT ACCESS BY THE LOCAL PROCESSOR UNLESS

22   DIRECTED TO DO SO BY THE REMOTE.

23        OKAY.  THAT'S WHAT THEY FOUND, THAT IS THE CLEAR FINDING

24   OF THE BOARD.  AND THAT'S EXACTLY WHAT WE ARE ALLEGING IN THIS

25   CASE AS OUR INFRINGEMENT THEORY.

1    BECAUSE YOU KNOW WHAT HAPPENS WITH THE PLAYSTATION, THEY

2    SELL GAME DISKS.  THE GAME DISKS HAVE DATA ON IT.  WHEN YOU ARE

3    AT THE LOCAL CONSOLE AND YOU ARE CONNECTED TO THE PLAYSTATION

4    NETWORK VIA AN INTERNET CONNECTION, THERE'S DATA ON THE GAME

5    DISK THAT THE LOCAL CONSOLE, THE LOCAL PROCESSOR, CAN NOT READ,

6    CANNOT ACCESS.  IT CAN'T EVEN OPEN IT.

7         THE COURT:  UNLESS IT GETS A SET OF INSTRUCTIONS FROM

8    THE REMOTE SERVER.

9         MR. CAREY:  YES, YOUR HONOR.  THAT'S THE INFRINGEMENT

10   THEORY WE ARE ADVANCING AND THAT'S EXACTLY WHAT THE BOARD SAID

11   THIS PATENT MEANS.

12        SO OUR INFRINGEMENT THEORY AND THE BOARD'S VIEW OF THIS

13   PATENT ARE COMPLETELY CONSISTENT.  THE IDEA THAT IT'S FRIVOLOUS

14   TO CONTEND, THAT'S FRIVOLOUS.

15        NOW LET ME GO ON BECAUSE THERE'S SO MUCH MORE HERE.

16        THE COURT:  SURE.

17        MR. CAREY:  THAT WAS THE FINDING OF FACT IN THE BOARD

18   ORDER AT PAGE 5, PARAGRAPH 2.

19        THE BOARD THEN -- MR. SITRICK STARTED TO SHOW YOU PART OF

20   THE BOARD'S HOLDING AT THE END OF THE ORDER STARTED OUT WITH,

21   HERE'S OUR FACTUAL FINDINGS, AND THEN THEY GO ON TO HERE'S OUR

22   HOLDING.

23        THE FACTUAL FINDING SAYS, PATENT COVERS AUXILIARY DATA,

24   THE LOCAL PROCESSOR CAN'T GET TO IT UNLESS THE REMOTE SAYS IT

25   CAN.

1      NOW WHAT DOES THAT MEAN?  THAT MEANS THE LOCAL CAN ACCESS

2   IT IF IT'S TOLD TO DO SO.  THAT'S THE ONLY TYPE OF LOCAL

3   PROCESSOR ACCESS THAT THE PATENT COVERS.  WE WILL AGREE WITH

4   THAT.  OKAY.  AND THAT'S WHAT THEY DO AND THAT'S WHY WE ACCUSE

5   THEM OF INFRINGING IN THIS CASE.

6      NOW IN THE HOLDING AT PAGE 10 OF THE ORDER, THE PART HE

7   DOESN'T SHOW YOU, THE BOARD CONSTRUED CLAIM 1.  THEY SAID THE

8   EXAMINER'S CONSTRUCTION IS TOO BROAD.  THE CONSTRUCTION MUST BE

9   CONSISTENT WITH WHAT?  THE SPECIFICATION.

10      AND THE BOARD QUOTED THE FINDING OF FACT AND THE

11   SPECIFICATION STATEMENT THAT SAYS, THE LOCAL PROCESSOR CAN

12   ACCESS AUXILIARY DATA ONLY IF DIRECTED TO DO SO BY THE REMOTE

13   SERVER.

14      THIS WAS THE PREDICATE OF THE BOARD'S ENTIRE HOLDING OF

15   THE REEXAM.  THIS IS HOW THEY LOOK AT THE PATENT.  DID THE

16   BOARD SAY, WELL, WE'RE CONFIRMING THE VALIDITY BECAUSE

17   ROTHSCHILD HAS DISCLAIMED THE LOCAL PROCESSOR FROM DOING

18   ANYTHING?  NO, THAT'S COMPLETELY NOT IN THE ORDER.  THERE'S NO

19   STATEMENT LIKE THAT WHATSOEVER.

20      THE HOLDING WAS THE CONSTRUCTION THAT THE LOCAL CAN

21   ACCESS THE LOCAL DATA ONLY IF DIRECTED TO DO SO, IS WHAT'S IN

22   THE SPEC.  AND WE HAVE TO CONSTRUE THE CLAIMS IN ACCORDANCE

23   WITH THE SPECIFICATION.

24      SO WHEN A BOARD OR A COURT CONSTRUES A PATENT IN

25   ACCORDANCE WITH THE SPECIFICATION, IT'S NOT CONSTRUING IT BASED

```
1     UPON A PATENTEE DISCLAIMER.  DISCLAIMER IS WHEN YOU'VE GOT THE

2     SPECIFICATION HERE AND YOU SAY OH, NO, NO, NO, FORGET THAT I

3     KNOW WHAT THE PATENT SAYS, THAT'S NOT WHAT WE MEAN.  WE WANT TO

4     LIMIT WHAT THE PATENT COVERS AND WE ARE GOING ON THE RECORD AND

5     WE ARE TELLING THE WORLD WE DON'T COVER THAT.  EVEN THOUGH THE

6     PATENT SAYS THAT, THAT'S NOT AT ALL WHAT HAPPENED HERE.

7             IN FACT, THE OPPOSITE HAPPENED HERE.  THE BOARD SAID

8     WE'RE GOING TO CONSTRUE THE CLAIM DIRECTLY AS ITS DISCLOSED IN

9     THE SPECIFICATION, WHICH INCLUDES THE LIMITED TYPE OF LOCAL

10    PROCESSOR ACCESS OF LOCAL DATA WHEN THE REMOTE TELLS IT TO.

11    OKAY.

12            SO NOW -- SO YOU'VE GOT A FINDING OF FACT WHICH SAYS THE

13    LOCAL PROCESSOR CAN ACCESS LOCAL DATA UNDER LIMITED

14    CIRCUMSTANCES.  YOU'VE GOT THE HOLDING WHICH SAYS THAT'S HOW WE

15    ARE READING IT.  AND MORE THAN THAT, THE BOARD ALLOWED A NEW

16    CLAIM, CLAIM 24 --

17                THE COURT:  BEFORE YOU GET TO CLAIM 24, BECAUSE I DO

18    APPRECIATE THAT'S AN IMPORTANT PART OF YOUR ARGUMENT, I'M STILL

19    HAVING A HARD TIME SQUARING WHAT THE BOARD DID WITH WHAT IT

20    SAID.

21            BECAUSE AS YOU HAVE DESCRIBED IT, AMONG THE OTHER THINGS

22    IT SAID WAS THAT THERE ARE CERTAIN CIRCUMSTANCES WHERE A LOCAL

23    PROCESSOR ACTING UNDER THE DIRECTION OF A REMOTE SERVER CAN

24    ACCESS THE AUXILIARY DATA THAT'S ENCODED, CORRECT?

25                MR. CAREY:  CAN ACCESS IT.
```

1    THE COURT:  CAN ACCESS IT.

2    MR. CAREY:  YES.

3    THE COURT:  AND YET IT SEEMED TO DISMISS THOSE FOUR

4  PRIOR ART REFERENCES IN LARGE PART IF NOT EXCLUSIVELY BECAUSE

5  IN EACH OF THOSE PRIOR ART REFERENCES WHAT WAS THE PRIOR ART

6  REFERENCE TEACHING?  ACCESSING THE ENCODED AUXILIARY DATA AT

7  THE DIRECTION OF THE LOCAL PROCESSOR.

8    SO WHAT AM I MISSING THERE?

9    MR. CAREY:  HERE'S WHAT YOU ARE MISSING HERE.  WE TRY

10  TO MAKE THIS CLEAR IN OUR SUR REPLY, ONE OF THE REASONS WE

11  ASKED FOR A SUR REPLY.

12    THE COURT:  ONE OF THE REASONS I GRANTED YOUR

13  OPPORTUNITY TO FILE ONE, SO TELL ME.

14    MR. CAREY:  THANK YOU, YOUR HONOR.

15    WE WENT THROUGH WHAT WE ACTUALLY SAID ABOUT THOSE

16  REFERENCES, OKAY.  AND HERE'S WHERE THEY TAKE ALL THAT OUT OF

17  CONTEXT.

18    WHAT HE SAID THERE WAS, AND LET ME TELL YOU WHERE OUR

19  ARGUMENT IS ON THAT IN THE SUR REPLY.  IT STARTS AT PAGE 3 OF

20  SUR REPLY.  WE SPENT A LOT OF TIME ON IT.  WE ACTUALLY GO ALL

21  THE WAY OVER TO PAGE 7.  BUT THIS IS CRITICAL BECAUSE THIS

22  DEALS EXACTLY WITH WHAT YOU ARE TALKING ABOUT, OKAY.

23    IN ALL THE PRIOR ART REFERENCES, OKAY, WHAT WE SAID WAS

24  THE LOCAL PROCESSOR CAN ACCESS THE LOCAL DATA AND THEN IT CAN

25  USE THE LOCAL DATA WITHOUT THE INVOLVEMENT OF THE REMOTE.

1          SO THE DISTINCTION THERE WAS, IN MAGES FOR EXAMPLE, MAGES

2     SHOWED A SYSTEM THAT WHERE THE REMOTE SENT A KEY, AN ENCRYPTED

3     KEY FOR UNLOCKING DATA THAT WAS STORED LOCALLY.  THE LOCAL

4     PROCESSOR THEN USED THAT KEY TO UNLOCK THE LOCAL DATA.

5          THEN GUESS WHAT, IT DIDN'T HAVE TO DO ANYTHING WITH IT.

6     IT COULD JUST SIT ON IT, OR IT COULD ACCESS IT LATER WHEN IT

7     WASN'T EVEN CONNECTED TO THE REMOTE SERVER.

8          THE COURT:  SO YOU ARE SAYING THAT YOU ARE COULD OR

9     SHOULD DISTINGUISH ALL THAT PRIOR ART BECAUSE IN EACH OF THOSE

10    REFERENCES ALL FOUR OF THOSE REFERENCES, THERE WAS NO ACTION AT

11    ALL BY THE REMOTE PROCESSOR WITH RESPECT TO THIS LIMITATION YOU

12    HAD PURELY LOCAL ACTIVITY.

13         MR. CAREY:  IN MAGES YOU HAD THE REMOTE SENDING THE

14    KEY DOWN, AND THEN THE REMOTE WAS OUT OF THE PICTURE.  THEN THE

15    LOCAL HAD FULL AND COMPLETE ACCESS TO THE LOCAL DATA.  IT

16    WASN'T UNDER THE DIRECTION OF THE REMOTE ANYMORE.

17         THAT'S WHAT THEY WERE GETTING AT THERE.  OKAY.  THAT'S

18    WHY -- THE DISTINCTION THAT WAS BEING MADE WAS ONE OF TIMING.

19    IN THE '534 PATENTED SYSTEM, THE ONLY WAY YOU HAVE TO HAVE

20    THIS, WHAT IT COVERS IS THE INTERACTION BETWEEN THE REMOTE AND

21    THE LOCAL.

22         THE COURT:  THEN THE '534, WHAT YOU WERE SAYING WHAT

23    ROTHSCHILD WAS SAYING WAS THE CONTROL OF LOCAL PROCESSOR BY THE

24    REMOTE SERVER WAS NOT LIMITED IN TIME.

25         MR. CAREY:  YES.  IN THE PRIOR ART, THE LOCAL

1    PROCESSOR, FOR EXAMPLE MAGES, THEY COULD NEVER USE THE KEY OR

2    USE IT WHEN THEY WERE DISCONNECTED FROM THE REMOTE, OKAY.

3         SO WHEN ALL THOSE STATEMENTS DISTINGUISHING THOSE

4    REFERENCES WERE ON THIS POINT, AND THIS IS EXACTLY WHAT WE

5    ARGUED IF YOU LOOK AT THE PORTIONS OF OUR REPLY BRIEF IN THE

6    REEXAM THAT WE SITE AT PAGES 3 TO 7 IN OUR SUR REPLY.

7         AND HERE'S THE KICKER, THIS IS WHAT MAKES THIS, THIS IS

8    WHAT CLEARS THIS UP.  AND I WILL SAY THIS, IT TAKES A LONG TIME

9    TO DIGEST AND UNDERSTAND WHAT HAPPENED HERE, YOU CAN'T JUST

10   READ THE BOARD DECISION.

11        AND I BELIEVE THEIR ARGUMENT, WITH ALL DUE RESPECT, IT'S

12   A SUPERFICIAL ARGUMENT.  YOU'VE GOT TO READ THE REFERENCES,

13   YOU'VE GOT TO SEE WHAT THE ARGUMENTS WERE MADE IN THE RECORD TO

14   UNDERSTAND WHAT THE BOARD MEANT BY THESE STATEMENTS THEY ARE

15   THROWING AT YOU.

16        OKAY.  HERE'S THE KICKER.  THE NEW CLAIMS THAT WERE ADDED

17   ON THE REEXAM, OKAY.  THERE WERE TWO LIMITATIONS THAT ARE

18   ADDED, THAT WERE ADDED IN THESE NEW CLAIMS THAT SHOW WHAT WAS

19   GOING ON HERE.  OKAY.  IF YOUR HONOR HAS THE NEW CLAIMS --

20        THE COURT:  I HAVE THEM.

21        MR. CAREY:  OKAY.

22        SO IF YOU LOOK AT, LET'S TAKE CLAIM 24 IS MORE IMPORTANT

23   FOR PURPOSES OF REFUTING THEIR DISCLAIMER THEORY BUT I WANT TO

24   START WITH 23 BECAUSE IT EXPLAINS THE CONTEXT OF WHAT WAS GOING

25   ON HERE WITH THE BOARD.

1        IF YOU LOOK AT THE VERY LAST LIMITATION OF CLAIM 23,

2    OKAY.  THAT WAS ADDED.  SELECT PORTIONS OF SAID QUANTITY OF

3    AUXILIARY SITE DATA AT THE AUXILIARY SITE ADDRESS IS ACCESSIBLE

4    ONLY WHILE THE LOCAL PROCESSOR ASSEMBLY IS INTERACTIVELY ON

5    LINE CONNECTED TO THE REMOTE SERVER ASSEMBLY.

6        IT WAS A TIMING LIMITATION THAT WAS ADDED TO SUPPORT THE

7    ISSUANCE OF NEW CLAIM 23.

8            THE COURT:  SO AS TO AVOID A SITUATION, FOR EXAMPLE,

9    WHERE YOU HAVE THE REMOTE SERVER DUMP DOWN SOME TYPE OF

10   ENCRYPTION KEY AND SOME POINT LATER THE PROCESSOR TAKES THE KEY

11   AND RUNS WITH IT.

12           MR. CAREY:  WHICH WAS THE PRIOR ART MAGES REFERENCE.

13       WHEN THE BOARD IS SAYING THAT IN THE PRIOR ART THE LOCAL

14   PROCESSOR ACCESSED IT, WHAT THEY MEANT WAS IN CONTEXT IF YOU

15   LOOK AT WHAT WE WERE ARGUING, WHAT THEY MEANT WAS THE LOCAL

16   PROCESSOR IS ACCESSING IT ALL ON ITS OWN, NOT CONNECTED TO THE

17   REMOTE AND NOT BEING TOLD TO BY THE REMOTE.  OKAY.

18       WHEN THEY SAY DIRECT ACCESS THEY MEANT DIRECTED BY THE

19   REMOTE.  THEIR IDEA OF INDIRECT AND DIRECT IS TOTALLY WRONG.

20   THAT IS NOT WHAT THAT WAS, THAT IS TOTALLY OUT OF CONTEXT.

21   THAT IS WAS NOT WHAT WAS BEING DISCUSSED.

22       THE LITTLE ARROWS WHICH THEY SUPERIMPOSED ON THE PATENT

23   WHICH CLEARLY AREN'T ANY REAL PATENT, ARE NOT THE TYPE OF

24   ACCESS THAT WAS BEING REFERRED TO.

25        AND BY THE WAY, FOR THE RECORD LET ME REMIND THE COURT,

1   FOR THE A PARTY THAT WAS ALLEGING WE DISAVOWED AND DISCLAIMED

2   INDIRECT ACCESS, WE NEVER USED THE WORD INDIRECT ACCESS, WE

3   DIDN'T EVEN USE THE WORD DIRECT ACCESS.

4        HOW CAN A PARTY CLEARLY AND UNAMBIGUOUSLY DISAVOW

5   SOMETHING WHEN THEY NEVER EVEN SAY IT?  I FIND THAT JUST

6   ASTONISHING THAT THIS IS BEING ARGUED.

7        LET ME GET BACK TO NOW THESE NEW CLAIMS BECAUSE THIS

8   TELLS, RESPECTFULLY YOUR HONOR, THIS ENCAPSULATES WHAT WAS

9   GOING HERE.

10        OKAY.  SO IT WAS THE TIMING LIMITATION, THAT'S WHY THIS

11   NEW LIMITATION AT THE END, THE LAST LIMITATION OF CLAIM 23 THE

12   KEY WORDS THERE ARE ONLY WHILE.  ONLY WHILE.  CLEARLY THEY ARE

13   TEMPORAL LIMITATION.

14        NOW LET'S MOVE ON TO CLAIM 24, BECAUSE THIS ONE, THIS

15   LIMITATION IN CLAIM 24 DISPOSES OF THIS ARGUMENT, DISPOSES OF

16   CERTAINLY THE MOTION THAT ALLEGES WE ARE FRIVOLOUS, BUT I THINK

17   IT EVEN DISPOSES OF THE WHOLE ISSUE ON THE MERITS.

18        THE NEXT TO LAST LIMITATION IS WHAT?  IT'S IT IS SAME

19   FINDING OF FACT THAT I JUST SAID THE BOARD RENDERED.  IT'S THE

20   SAME HOLDING IT'S THE SAME STATEMENT THAT SUPPORTED THE BOARD'S

21   HOLDING AND NOW IT'S IN AN EXPRESS CLAIM LIMITATION.  CLAIM 24

22   NEXT TO LAST LIMITATION AS COLUMNS 2, STARTING AT LINES 51.

23        SAID REMOTELY ACCESSIBLE AUXILIARY SITE ADDRESSES BEING

24   ENCODED, SO AS TO RESTRICT ACCESS BY SAID LOCAL PROCESSOR

25   ASSEMBLY UNLESS SAID ACCESS IS DIRECTED BY SAID REMOTE SERVER

1    ASSEMBLY.

2         OKAY.  SO THE CLAIM ITSELF WHICH THE BOARD IS ALLOWING IN

3    THE FIRST INSTANCE, THIS IS A BRAND-NEW CLAIM, OFFERED IN

4    REEXAM.  IT WASN'T THE PRE-EXISTING CLAIM, IT'S A BRAND-NEW

5    CLAIM.  THIS CLAIM ON ITS FACE EXPLICITLY RECITES THAT THE

6    LOCAL PROCESSOR DOES ACCESS AUXILIARY SITE ADDRESSES UNDER THE

7    LIMITED SITUATION WHERE IT'S DIRECTED TO DO SO BY THE REMOTE

8    SERVER.

9         I RESPECTFULLY SUBMIT, YOUR HONOR, THAT IT IS FRIVOLOUS

10   FOR THE DEFENDANT TO SAY THAT WE ARE FRIVOLOUS IN ARGUING THAT

11   THE REMOTE, THAT THE LOCAL HAS ABSOLUTELY NO ROLE AT ALL IN

12   ACCESSING AUXILIARY SITE ADDRESSES WHEN THE CLAIM SAYS IT ON

13   ITS FACE A NEW CLAIM.

14        I MEAN --

15        THE COURT:  SO ON THAT ISSUE CAN I PERHAPS ASK YOU

16   COUNSEL, CAN WE AT LEAST ALL AGREE ON ONE THING, THAT SOMEBODY

17   HERE IS BEING FRIVOLOUS?  I'M NOT QUITE SURE WHO, BUT SOMEONE

18   HERE IS FRIVOLOUS.

19        MR. CAREY:  THAT'S THE ESSENCE OF OUR COUNTER MOTION,

20   YOUR HONOR.

21        I'VE NEVER FILED A RULE 11 MOTION AND I'VE NEVER HAD ONE

22   FILED AGAINST ME IN 22 YEARS OF PRACTICE, SO I TOOK GREAT

23   UMBRAGE AT THE FACT THAT WAS FILED.  AND I WOULDN'T -- WE WERE

24   GOING TO LITIGATE THAT AT A MARKMAN HEARING AND I CERTAINLY

25   DIDN'T THREATEN THEM WITH ANY RULE 11 TYPE OF SANCTION.

1          BUT THIS ARGUMENT IS NOT VALID.  I MEAN, THE NEW

2     LIMITATION RIGHT HERE ON ITS FACE COVERS A LOCAL PROCESSOR

3     ACCESSING AUXILIARY SITE ADDRESSES UNDER A SPECIFIC SITUATION

4     WHICH IS TO SAY WHEN THE REMOTE DIRECTS IT TO DO SO.

5          AND THAT, NOT WHAT MR. SITRICK MISLEADINGLY HE SUGGESTED,

6     THAT'S OUR INFRINGEMENT THEORY.  AND THAT IS THE EXPRESS

7     LIMITATION FOR CLAIM 24 AND IT'S THE REASON THE BOARD UPHELD

8     CLAIM 1, THIS SAME IDEA.

9          ALL RIGHT.

10          I HAVE A FEW MORE COMMENTS IN THE INTEREST OF

11     COMPLETENESS.  I THINK THAT ENDS IT.  BUT AT LEAST FOR PURPOSES

12     OF REFUTING THE IDEA THAT OUR INFRINGEMENT ALLEGATION HAS NO

13     BASIS, I MEAN, LET'S REMIND OURSELVES WHAT THE STANDARD IS FOR

14     FRIVOLITY.  IT'S NO REASONABLE LITIGANT COULD HAVE ANY POSSIBLE

15     CHANCE OF SUCCESS.

16          IT'S NOT A REASONABLE ARGUMENT.  I MEAN, THE IDEA THAT WE

17     DON'T HAVE A REASONABLE ARGUMENT, I THINK WE'VE GOT THE RIGHT

18     ARGUMENT, BUT THE IDEA THAT WE DON'T HAVE A REASONABLE ARGUMENT

19     IS JUST --

20          THE COURT:  MAY I ASK ONE LAST QUESTION, AND I THINK

21     WE HAVE COVERED YOUR POINTS WELL HERE, AS THE OTHER SIDE.

22          THERE WAS SOME MENTION EARLIER ABOUT LITIGATION AGAINST

23     CITRIX, AND PERHAPS THIS PATENT HAS BEEN ASSERTED ELSEWHERE.

24     HAS ANY COURT EVER GOTTEN TO THE POINT WHERE IT WAS EVALUATING

25     THIS THEORY OR WEIGHING IN ON THAT THEORY?

1          WHAT I'M TRYING TO FIGURE HERE IS, IS THERE SOME OTHER

2     DISTRICT COURT JUDGE OR AN ITC JUDGE OR ANYBODY OUT THERE WHO

3     MAY HAVE LOOKED AT WHETHER THIS WAS A LEGITIMATE POSITION, TO

4     SAY NOTHING OF AN ACTUALLY PERSUASIVE ONE.

5          MR. CAREY:  ARE YOU TALKING ABOUT SONY'S POSITION

6     HERE?

7          THE COURT:  YEAH.

8          MR. CAREY:  OKAY.  HERE'S MY UNDERSTANDING.  CITRIX,

9     I DIDN'T, I DIDN'T REPRESENT THIS CLIENT IN THE CITRIX CASE.

10    BUT THAT CASE PRECEDED THE PREEXAM.

11         THEIR ARGUMENT HERE TODAY IS BASED ON A THEORY THAT THERE

12    WAS A DISCLAIMER COMMITTED DURING THE REEXAM.

13         THE COURT:  AND WHAT I'M GETTING AT IS AFTER THE

14    REEXAM, WAS THE CITRIX CASE SETTLED OR DID IT PROCEED ALONG IN

15    LIGHT OF THE NEW CONSTRUCTIONS OFFERED BY THE BOARD IN SOME

16    WAY.

17         MR. CAREY:  I AM NOT AWARE, AND I BELIEVE, I'M NOT

18    INVOLVED IN THAT CASE BUT I WILL TELL, YOUR HONOR, TO ANSWER

19    YOUR QUESTIONS TO THE BEST OF MY ABILITY, MY UNDERSTANDING IS

20    THERE'S BEEN NO OTHER TREATMENT JUDICIALLY OR OTHERWISE OF THIS

21    DISCLAIMER ARGUMENT.  I DON'T THINK THE CITRIX CASE CONTINUED

22    ON, I FRANKLY -- I THINK IT DID SETTLE, BUT I WASN'T INVOLVED

23    IN THAT.

24         THE COURT:  FAIR ENOUGH.  MAYBE MR. RUBI KNOWS.

25         MR. RUBI:  NO, JUDGE, I THINK MR. CAREY'S

1  REPRESENTATION IS CORRECT.  THERE'S NO OTHER CASE ON POINT

2  DEALING WITH THIS PARTICULAR ISSUE.

3          MR. CAREY:  IT DID SETTLE.  SO THAT'S WHY IT DIDN'T

4  GO ON.

5          THE COURT:  ALL RIGHT.  THAT MAKES SENSE.  IF YOU

6  HAVE A FINAL POINT, I WILL TAKE IT, BUT I THINK I UNDERSTAND

7  YOUR POSITION.

8          MR. CAREY:  THANK YOU, YOUR HONOR.

9          THE COURT:  THANK YOU.

10      MR. SITRICK, DO YOU HAVE ANY BRIEF REBUTTAL TO OFFER?

11          MR. SITRICK:  I DO.

12          THE COURT:  BEFORE YOU OFFER YOUR REBUTTAL MAY I ASK

13  YOU THE SAME QUESTION I PUT TO YOUR COLLEAGUE, AM I RIGHT HERE

14  THAT THE PARTIES ALL SEEM TO AGREE SOMEBODY HERE DID SOMETHING

15  FRIVOLOUS?

16          MR. SITRICK:  WE WOULD AGREE THAT BASED ON OUR PAPERS

17  THIS POSITION IS FRIVOLOUS THAT THEY HAVE ADVANCED.

18          THE COURT:  ALL RIGHT.  GO AHEAD, UNLESS THAT IS THE

19  REBUTTAL YOU WISH TO OFFER.

20          MR. SITRICK:  NO, NO.

21      SO I WANTED TO ADDRESS SPECIFICALLY THIS POINT ON THE

22  UNLESS AND THAT LIMITATION SHOWING UP IN CLAIM 23 AND 24.

23      THE BOARD COULD NOT HAVE BEEN MORE CLEAR THAT IN ORDER TO

24  DIRECT A LOCAL PROCESSOR YOU HAVE TO SEND AN INSTRUCTION.  AND

25  THE BOARD WAS REALLY CLEAR.

1        WHAT THEY REFERENCE AND IT'S INTERESTING BECAUSE

2    ROTHSCHILD IS NOW MAKING THE NAME ARGUMENTS THAT THEY MADE IN

3    THE REEXAMINATION AND SPECIFICALLY AS TO THIS REALTIME

4    INTERACTIVITY BETWEEN THE CONTENT AT THE TWO LOCATIONS,

5    ELIMINATING TIME CONSUMING STEPS SECURITY OF THE LOCAL

6    PROCESSOR.

7        THESE ARE THE SAME POINTS THAT THEY ARGUED IN RESPONSE TO

8    THE RULE 11 MOTION NOW.  SO WE ARE HEARING THOSE SAME ARGUMENTS

9    AND THE EXAMINER ALREADY ADDRESSED THIS.  HE SAID WHILE THESE

10   FEATURES MAY BE DESIRED OUTCOMES OF THE PATENTEE'S SYSTEM,

11   THESE FEATURES ARE NOT REQUIRED BY THE CLAIMS.  THE PATENT'S

12   OWNER IS RESPONSE IS NOT SHOWING CLEAR LINK BETWEEN THESE

13   ARGUED FEATURES IN THE SPECIFIC CLAIM LIMITATIONS.

14       AND I WOULD LIKE TO ALSO POINT OUT IN THE BOARD'S ORDER,

15   THE LANGUAGE WE LOOKED AT, THE BOARD FOCUSED SPECIFICALLY ON

16   THE LANGUAGE AS I TOLD YOU EARLIER, THE MODIFIERS THAT IT

17   STRUCTURED AND ENCODED.

18       WHEN YOU READ CLAIM 23, YOU LOOK AT LINES 54, THE

19   AUXILIARY SITE ADDRESSES ARE ENCODED, AND BELOW THAT THEY ARE

20   STRUCTURED TO BE REMOTELY ACCESSED BY SAID REMOTE SERVER

21   ASSEMBLY.  THAT SAME LIMITATION APPEARS IN CLAIM 24.

22       I THINK THE BOARD WAS BEING VERY CLEAR, THE PATENT DOES

23   DISCLOSE ALTERNATIVE EMBODIMENTS WITHIN.  I THINK THE BOARD WAS

24   VERY CLEAR THEN THAT DESPITE THIS LANGUAGE, CLAIM SCOPE DOES

25   NOT COVER THE SITUATION WHERE THE ADDRESSES ARE INDIRECTLY

1    ACCESSED, IT ONLY COVERS IT WHERE THEY ARE DIRECTLY ACCESSED BY

2    THE REMOTE SERVER.

3         SO I THINK THE BOARD WANTED TO BE CLEAR THAT DESPITE THAT

4    LANGUAGE BECAUSE OF THESE MODIFIERS, IT IS STILL CLEAR, THESE

5    CLAIMS REQUIRE DIRECT ACCESS BY THE REMOTE SERVER.

6         THE COURT:  ON THAT POINT THOUGH, DO YOU WANT TO OR

7    PERHAPS YOU COULD CLARIFY FOR ME THEN, WHEN THE BOARD WAS

8    ISSUING ITS FINDINGS OF FACT STATING THAT ACCESS BY THE LOCAL

9    PROCESSOR WAS PERMITTED WHERE DIRECTED BY THE REMOTE SERVER

10   ASSEMBLY, WHAT WAS IT SAYING IN THAT FINDING?

11        MR. SITRICK:  I THINK IT WAS TRYING TO DISTINGUISH

12   BETWEEN THE EXAMINER'S AND ROTHSCHILD'S ARGUMENTS THAT WERE

13   GOING BACK AND FORTH.

14        I THINK HE WAS ACKNOWLEDGING, THE BOARD WAS ACKNOWLEDGING

15   THAT THERE IS A READ WITHIN THE PATENT THAT WOULD SUPPORT WHAT

16   THE EXAMINER IS SAYING.

17        BUT WHEN YOU LOOK AT THE DISCLAIMERS AS TO THE PRIOR ART,

18   WHICH THEY REPEAT, AND WHEN YOU LOOK AT THE CLEAR LANGUAGE OF

19   THE MODIFIER STRUCTURE TO BE ENCODED TO BE REMOTELY ACCESSED BY

20   A REMOTE SERVER, I THINK THEY WERE POINTING OUT THAT DESPITE

21   THAT LANGUAGE IT IS CLEAR WHAT THE SCOPE OF THESE CLAIMS

22   COVERED.

23        AND I DON'T SEE HOW YOU COULD READ THAT OPINION AND COME

24   TO ANY OTHER CONCLUSION.

25        THE COURT:  SO YOU ARE SAYING THAT EVEN THOUGH IT

1    STYLED THIS FINDING AS A FINDING OF FACT, AND IN THAT FINDING

2    STATED THAT THE PATENT COVERS A SYSTEM WHERE THERE IS ACCESS BY

3    A LOCAL PROCESSOR UNDER SOME CIRCUMSTANCES, THAT NO ACCESS WAS

4    CONTEMPLATED WHATSOEVER.

5            MR. SITRICK:  I BELIEVE IT WAS A FINDING OF FACT AS

6    TO WHAT THE PATENT DISCLOSED, IT DOES SAY THAT IN THE PATENT AT

7    ONE PLACE.

8            THE COURT:  OKAY.

9            MR. SITRICK:  BUT I BELIEVE THE BOARD WAS MERELY

10   REITERATING THAT THAT IS PRESENT IN THE PATENT.

11           THE COURT:  ALL RIGHT.

12       SO LET ME SEE IF I CAN TIE THIS ALL UP TO UNDERSTAND YOUR

13   POSITION COMPLETELY.

14       YOU ARE SAYING WHEN THE BOARD ISSUED THAT FINDING OF

15   FACT, IT WAS CHARACTERIZING THE DESCRIPTION SUPPLIED BY THE

16   APPLICANT WITH THE PATENT, BUT THAT BASED ON OTHER

17   REPRESENTATIONS OR STATEMENTS MADE BY THE APPLICANT DURING

18   EXAMINATION, IT REACHED A DIFFERENT CONCLUSION AS TO CLAIM

19   SCOPE.

20           MR. SITRICK:  CORRECT.

21       THAT COUPLED INDEPENDENTLY AND WITH THE FACT THAT THE

22   LANGUAGE OF THE CLAIMS THEMSELVES REQUIRED IT TO BE STRUCTURED

23   AND ENCODED TO DO SO.

24           THE COURT:  I THINK I HAVE IT.  THANK YOU.

25           MR. CAREY:  YOUR HONOR, CAN I HAVE A COUPLE OF

1    COMMENTS?

2              THE COURT:  ONE LAST POINT, SURE.

3              MR. CAREY:  THANK YOU.

4              THE COURT:  THANK YOU, MR. SITRICK.

5              MR. SITRICK:  THANK YOU.

6              THE COURT:  GO AHEAD.

7              MR. CAREY:  YOUR HONOR, VERY SIMPLY, IF THE BOARD'S

8    DECISION CONFIRMING THE VALIDITY OF THE PATENT WAS PREDICATED

9    ON A PATENT OWNER DISCLAIMER, WHICH IS WHAT HE WAS ARGUING,

10   THEN THE BOARD WOULD HAVE SAID WELL, THE SPEC SAID THIS AND

11   THEY WOULD HAVE DISCLAIMED THAT.

12        THAT'S NOT WHAT THE BOARD DID.  THE BOARD SAID, WE ARE

13   CONSTRUING THE PATENT CONSISTENT WITH THE SPEC, FULLY

14   CONSISTENT WITH THE SPEC.

15        SO THIS IDEA THAT THE BOARD MADE ITS DECISION BASED ON

16   THE PATENT OWNER DISCLAIMER IS NOWHERE SUPPORTED BY THE ACTUAL

17   DECISION.

18        CLEARLY -- I MEAN, WE HAVE AN ARGUMENT THAT THE BOARD WAS

19   METICULOUS IN LAYING OUT THE FINDINGS.  WOULD THE BOARD

20   PREDICATE IT'S DECISION ON THE DISCLAIMER AND NOT TELL ANYBODY?

21        I MEAN, THAT IS SIMPLY NOT WHAT HAPPENED.  THAT IS A

22   COMPLETELY REWRITE OF THE HISTORY.

23        I WOULD FINALLY POINT YOUR HONOR TO A NICE PASSAGE WHICH

24   I STUMBLED UPON IN READING THIS AGAIN.  IT'S AT COLUMN 14 OF

25   THE PATENT AND IT'S ON THIS SUBJECT OF THE AUXILIARY SITE

1    ADDRESSES.

2         AND THE REASON I WANT TO READ IT BEFORE WE END THE

3    DISCUSSION TODAY IS THAT IT ILLUSTRATES THE POINT, THE PURPOSE

4    OF THE AUXILIARY SITE ADDRESSES, STRUCTURED TO BE REMOTELY

5    ACCESSED.

6         AND IT SAYS, STARTING AT COLUMN 14, LINE 33, AS

7    INDICATED, AND BY THE WAY, THE AS INDICATED EXPLAINS THE PRIOR

8    DISCUSSION AT THE BOTTOM OF COLUMN 13.

9         "AS INDICATED IN THE PREFERRED EMBODIMENT IN THE PRESENT

10   INVENTION, THE REMOTELY ACCESSIBLE AUXILIARY SITE ADDRESSES ARE

11   SPECIFICALLY ENCODED SO AS TO RESTRICT ACCESS BY THE LOCAL

12   PROCESSOR ASSEMBLY UNLESS THE ACCESS IS DIRECTED BY THE REMOTE

13   SERVER ASSEMBLY."

14        HERE'S THE PURPOSE STATEMENT THAT FOLLOWS.

15        "SUCH ENCODED RESTRICTION THEREBY PREVENTS A USER FROM

16   UTILIZING THE AUXILIARY SITE DATA UNLESS IT IS IN CONJUNCTION

17   WITH THE PRIMARY SITE DATA AND THEREFORE A VISIT TO THE PRIMARY

18   SITE ADDRESS."

19        THIS IS EXACTLY WHY WE ENDED UP WITH NEW CLAIMS THAT

20   REQUIRE THE, ONLY WHILE THEY ARE IN CONNECTIVITY, AND THIS WAS

21   THE ESSENCE OF THE DISTINCTION BETWEEN THE PRIOR ART REFERENCES

22   THAT WE DISCUSSED LIKE MAGES WHERE THE USER GOT A KEY AND THEN

23   NO LONGER EVEN HAD TO BE CONNECTED TO THE REMOTE TO DO

24   SOMETHING WITH THE LOCAL DATA.

25        IN THE PATENTED SYSTEM, THE LOCAL AND THE REMOTE ALWAYS

1    HAVE TO BE CONNECTED AND THE LOCAL CAN ONLY ACCESS WHEN

2    DIRECTED TO DO SO, AND IT'S THE REMOTE THAT ALLOWS IT TO

3    HAPPEN.

4         IF THE REMOTE IS NOT CONNECTED AND THE REMOTE DOESN'T

5    PRIDE THE INSTRUCTION, THEN THE USER CANNOT ACCESS THE LOCALLY

6    STORED DATA WHICH IS HOW THE PLAYSTATION SYSTEM OPERATES.

7         FINALLY ON THE ISSUE OF OUR PRE FILING INVESTIGATION, WE

8    PURCHASED THESE SYSTEMS, WE TESTED THESE SYSTEMS.  WE REVIEWED

9    EVERYTHING, AND BY EVERYTHING I MEAN WE REVIEWED ALL THE

10   LITIGATION HISTORIES OF THIS PATENT, WE REVIEWED THE

11   REEXAMINATION HISTORY, WE REVIEWED A PRIOR CLAIM CONSTRUCTION

12   FROM ANOTHER COURT, WE REVIEWED EVERYTHING THERE WAS TO REVIEW.

13   WE BOUGHT THE ACCUSED PRODUCTS AND WE PERSONALLY TESTED THEM.

14        WE DRAFTED A CLAIM CHART.  I MEAN, A PATENT OWNER DOESN'T

15   HAVE TO EVEN PROVIDE A CLAIM CHART.  WE DRAFTED A CLAIM CHART

16   AND ATTACHED IT TO THE COMPLAINT.  THAT WAS A PRELIMINARY

17   THEORY, BUT WE DID THAT WORK.

18        WE DID, I RESPECTFULLY SUBMIT, MORE THAN AN ADEQUATE PRE

19   FILING INVESTIGATION, AND OUR CLAIMS OF INFRINGEMENT ARE NOT

20   FRIVOLOUS.

21        THANK YOU, YOUR HONOR

22           THE COURT:  THANK YOU.

23        ALL RIGHT.  I'M GOING TO TAKE THIS MATTER UNDER

24   SUBMISSION.  I WILL GET AN ORDER OUT AS QUICKLY AS I CAN.

25        I WILL WISH YOU ALL A GOOD AFTERNOON.

1          LET'S TAKE FIVE MINUTES, MR. RIVERA, THEN WE WILL RETURN

2     TO THE CALENDAR.

3               (WHEREUPON A RECESS WAS TAKEN.)

4          (WHEREUPON, THE PROCEEDINGS IN THIS MATTER WERE CONCLUDED.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3

4                    **CERTIFICATE OF REPORTER**

5

6

7

8            I, THE UNDERSIGNED OFFICIAL COURT

9    REPORTER OF THE UNITED STATES DISTRICT COURT FOR

10   THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH

11   FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

12   CERTIFY:

13            THAT THE FOREGOING TRANSCRIPT,

14   CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND

15   CORRECT TRANSCRIPT OF MY SHORTHAND NOTES TAKEN AS

16   SUCH OFFICIAL COURT REPORTER OF THE PROCEEDINGS

17   HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED

18   TRANSCRIPTION TO THE BEST OF MY ABILITY.

19

20

21

22

23

24   _____

25   SUMMER A. FISHER, CSR, CRR
     CERTIFICATE NUMBER 13185          DATED: 1/13/15