UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ROTHSCHILD DIGITAL MEDIA INNOVATIONS, LLC,<br><br>            Plaintiff,<br><br>   v.<br><br>SONY COMPUTER ENTERTAINMENT AMERICA LLC,<br><br>            Defendant. | Case No. 5:14-cv-03928-PSG<br><br>**ORDER DENYING DEFENDANT'S MOTION AND PLAINTIFF'S CROSS-MOTION FOR RULE 11 SANCTIONS**<br><br>**(Re: Docket Nos. 43, 53)** |

Defendant Sony Computer Entertainment America LLC moves for Rule 11 sanctions against Plaintiff Rothschild Digital Media Innovations, LLC on the grounds that Rothschild's complaint for infringement of United States Patent No. 6,101,534 is frivolous.[1] Rothschild has in turn filed a cross-motion for sanctions against Sony and its counsel on the grounds that Sony's sanctions motion is itself frivolous.[2] Because the court does not find either pleading frivolous at this early stage of the case, both motions are DENIED.

---

[1] *See* Docket No. 43 at 1.

[2] *See* Docket No. 53 at 1-2.

1
Case No. 5:14-cv-03928-PSG
ORDER DENYING DEFENDANT'S MOTION AND PLAINTIFF'S CROSS-MOTION FOR RULE 11 SANCTIONS

**I.**

When making a Fed. R. Civ. P. 11 determination in patent cases, courts apply the law of the regional circuit.[3] In the Ninth Circuit, Rule 11(b) sanctions may be imposed when pleadings, papers and the like are presented for an improper purpose or include arguments that are "frivolous."[4] A frivolous argument is one that is "legally or factually baseless" under an objective standard and made "without a reasonable and competent inquiry."[5] Under Rule 11(c), a district court may impose sanctions on a party, its attorneys or both.[6]

The '534 patent, issued in 2000 and assigned to Rothschild, describes an online computer interface system.[7] Claim 1 of the '534 Patent recites:

> 1. An interactive, remote, computer interface system comprising:
> a remote server assembly, said remote server assembly including a quantity of primary site data;
> said remote server assembly including at least one primary site address, said primary site address including at least a portion of said primary site data and being distinct so as to identify a location thereof on a computer network;
> a local processor assembly;
> said local processor assembly being coupled in data transmitting and receiving communication with said remote server assembly;
> at least one data storage assembly associated with said local processor assembly and structured to contain a quantity of auxiliary site data thereon, said auxiliary site data being associated with said primary site data;
> said data storage assembly including a compact, portable and interchangeable computer readable medium;
> said compact, portable and interchangeable computer readable medium including a plurality of remotely accessible, auxiliary site addresses, encoded therein, each of said remotely accessible, auxiliary site addresses, including select portions of said quantity of auxiliary site data; and
> said remotely accessible, auxiliary site addresses being structured to be remotely accessed by said remote server assembly so as to initiate utilization of said select portions of said

---

[3] *See Raylon, LLC v. Complus Data Innovations, Inc.*, 700 F.3d 1361, 1367 (Fed. Cir. 2012).

[4] *See Intamin Ltd. v. Magnetar Techs., Corp.*, 483 F.3d 1328, 1338 (Fed. Cir. 2007) (citing *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir. 1990) (*en banc*)).

[5] *Q-Pharma, Inc. v. Andrew Jergens Co.*, 360 F.3d 1295, 1299 (Fed. Cir. 2004) (citing *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002)). Because compliance with Rule 11 is analyzed under an objective standard, there is no need to show bad faith. *See Kilopass Tech., Inc. v. Sidesense Corp.*, 738 F.3d 1302, 1313 (Fed. Cir. 2013); *Raylon, LLC*, 700 F.3d at 1368.

[6] *See* Fed. R. Civ. P. 11(c).

[7] *See* Docket No. 43 at 3; Docket No. 1-3 at 5-6.

> quantity of auxiliary site data by said local processor assembly in conjunction with said primary site data.

In an *ex parte* reexamination of the '534 patent, the examiner focused on the following limitation: "said remotely accessible, auxiliary site addresses being structured to be *remotely accessed by said remote server* assembly so as to initiate utilization of said select portions of said quantity of auxiliary site data by said local processor assembly in conjunction with said primary site data."[8] The examiner construed "remotely accessed by said remote server" to include both direct and indirect access to the auxiliary site addresses by the remote server assembly and determined that the claims were anticipated by four prior art references.[9] Rothschild appealed to the Board of Patent Appeals and Interferences, arguing that a construction that includes indirect access "encompasses situations in which the remote server assembly is not remotely accessing the auxiliary site addresses" and that "'to allow access' [to auxiliary site data] is not the same as 'accessing.'"[10] The BPAI agreed, adopting Rothschild's narrower construction and finding the claims patentable over the prior art.[11]

This suit followed. Sony now argues that because the '534 claims were narrowed at Rothschild's urging to include only direct access by the remote server, and Sony's accused products only include indirect access through the local processor to the consoles, Rothschild's complaint against Sony violates Rule 11.[12] Sony asks the court to dismiss the case with prejudice and award fees and costs.

---

[8] *See* Docket No. 1-3 at 5-6 (emphasis added). *See also* Docket No. 43 at 8.

[9] *See* Docket No. 43-2 at 5.

[10] *See id.* at 5-6.

[11] *See id.* at 6.

[12] *See* Docket No. 43 at 7-9. Sony sent Rothschild two letters and met and conferred with Rothschild in person to discuss Rothschild's claim construction and allegations, only to receive a complaint from Rothschild two weeks later. *See id.* at 11.

3
Case No. 5:14-cv-03928-PSG
ORDER DENYING DEFENDANT'S MOTION AND PLAINTIFF'S CROSS-MOTION FOR RULE 11 SANCTIONS

**II.**

This court has jurisdiction under 28 U.S.C. §§ 1331 and 1338. The parties further consented to the jurisdiction of the undersigned magistrate judge under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 72(a).[13]

**III.**

At issue is whether a party in a patent infringement case can move for Rule 11 sanctions to dispose of the case before a *Markman* hearing, and if so, whether Rothschild's infringement claim is so frivolous as to warrant terminating sanctions under Rule 11. While the court finds that Rule 11 sanctions might be warranted at such an early stage in some cases, here they are not.

***First***, the case law makes clear that Rule 11 sanctions may be imposed in a patent infringement case before a *Markman* hearing. Only a few months ago, the Eastern District of Texas did just that.[14] But the reality is that most cases in which Rule 11 sanctions have been imposed proceeded past the claim construction or summary judgment stages.[15] That Sony seeks such drastic sanctions at such an early stage therefore gives this court pause.

***Second***, Rule 11 sanctions in patent cases generally involve either a frivolous claim construction[16] or a frivolous infringement theory reflected by insufficient investigation.[17] Here, the issue is claim construction, and specifically, Rothschild's necessary claim construction. Whenever

---

[13] *See* Docket Nos. 26, 28.

[14] *See, e.g.*, *Syneron Medical Ltd. v. Viora Ltd.*, Case No. 14-cv-00639, 2014 WL 7140643 (E.D. Tex. Dec. 12, 2014).

[15] *See, e.g.*, *Raylon, LLC v. Complus Data Innovations, Inc.*, 700 F.3d 1361, 1363 (Fed. Cir. 2012); *Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1316-17 (Fed. Cir. 2011); *Source Vagabond Sys. LTD. v. Hydrapak, Inc.*, 753 F.3d 1291, 1297 (Fed. Cir. 2014).

[16] *See, e.g., Syneron Medical*, 2014 WL 7140643, at *3; *Raylon*, 700 F.3d at 1365; *Eon-Net LP*, 653 F.3d at 1317, 1319; *Source Vagabond Sys. Ltd. v. Hydrapak, Inc.*, Case No. 11-cv-5379, 2012 WL 1223928, at *1, *9 (S.D.N.Y. 2012).

[17] *See, e.g., Smart Options, LLC v. Jump Rope, Inc.*, Case No. 12-cv-02498, 2013 WL 500861, at *4-9 (N.D. Ill. 2013); *Judin v. United States*, 110 F.3d 780, 783 (Fed. Cir. 1997). In the case of *Q-Pharma*, the defendant argued that both the claim construction and infringement theory were frivolously brought and that plaintiff should thus be sanctioned. 360 F.3d at 1301.

4
Case No. 5:14-cv-03928-PSG
ORDER DENYING DEFENDANT'S MOTION AND PLAINTIFF'S CROSS-MOTION FOR RULE 11 SANCTIONS

it has addressed claim construction in the context of Rule 11, the Federal Circuit has looked to the intrinsic evidence supporting the construction at issue. For example, in *Q-Pharma*, the Federal Circuit held that the plaintiff's claim interpretation "while broad, followed the standard canons of claim construction and was reasonably supported by the intrinsic record."[18] In that case, nothing in the description of the disputed patent limited the claim terms, and the defendant's reliance on the plain meaning of the claim language thus was reasonable.[19] In *Raylon* the court held that the plaintiff's claim construction was unreasonable and conflicted with intrinsic evidence because the plaintiff relied on a single sentence in its specification to support its proposed interpretation when its patent claims explicitly supported other interpretations throughout.[20] *Syneron Medical* might be the most analogous to the issue presented in this case.[21] In *Syneron Medical*, the plaintiff's proposed reading of the plain meaning of the disputed claim was supported by the intrinsic evidence of the patent, but only to a certain extent.[22] The court nevertheless held that "while Viora may have a valid claim construction *position*, it is just that—a position taken during the early stages of litigation."[23] Taken together, the case law thus suggests that Rule 11 sanctions before a *Markman* hearing are only warranted when a proposed claim construction is "wholly unsupported" by intrinsic evidence.[24]

Sony asserts that the claim language covers only the "situation where a remote server directly accesses the auxiliary site addresses in order to initiate utilization of the data stored

---

[18] *Q-Pharma*, 360 F.3d at 1301.

[19] *Id.* at 1300-01 (citing *View Eng'g, Inc.*, *v. Robotic Vision Sys., Inc.*, 208 F.3d 981, 986 (Fed. Cir. 2000); *Judin v. United States*, 110 F.3d 780, 784 (Fed. Cir. 1997)).

[20] *Raylon*, 700 F.3d at 1368-69.

[21] *See Syneron Medical*, 2014 WL 7140643, at *4.

[22] *See id.*

[23] *See id.* (emphasis in original).

[24] *See Raylon*, 700 F.3d at 1368-69.

5
Case No. 5:14-cv-03928-PSG
ORDER DENYING DEFENDANT'S MOTION AND PLAINTIFF'S CROSS-MOTION FOR RULE 11 SANCTIONS

there."[25] Sony supports this proposition by pointing to a portion of the Order Confirming Validity requiring that auxiliary site addresses be structured to be directly—rather than indirectly—accessed by the remote server:

> Since the language of claim 1 requires that the encoded auxiliary site addresses are structured to be accessed by the remote server, we find, according to that claim, that the addresses are directly accessed by the remote server. The scope of claim 1 does not cover encoded auxiliary site addresses that are structured to be accessed by a local processor or any other intermediary, ultimately resulting in the addresses being indirectly accessed by the remote server.[26]

Sony thus interprets direct access to mean the absence of any intermediary steps—i.e. a process which starts at the remote server and goes straight to the auxiliary site addresses without passing go or collecting $200. For Sony, the dispositive inquiry is about the path of the process.

But Rothschild's construction does not put any stock in this path. Rothschild asserts that "[d]irect access of auxiliary site data by the remote server includes the situation where the remote server is directing the local processor to access the auxiliary site data. Indeed, there is no other way the remote server could access the auxiliary data."[27] In other words, for Rothschild, the dispositive inquiry is about which device is directing the access regardless of path.

To better understand the distinction, imagine that whatever device is directing the access is the "brain" of the operation. Under Rothschild's construction, as long as the remote server is the brain, whether the path passes through no other devices or through one thousand other devices is irrelevant. It is on this basis that Rothschild successfully distinguished the Mages, Reisman, Uranaka and Fidelibus prior art references from the '534 patent at the Board.[28] Taking Mages as an example, the remote server sends a key to the local processor, but no actions are ever directed by the remote server.[29] It is only by initiation of the local processor—or perhaps a user operating

---

[25] *See* Docket No. 43 at 1.

[26] *See* Docket No. 53-2 at 9 (emphasis omitted).

[27] Docket No. 53 at 12.

[28] *See* Docket No. 43-4 at 16-18.

[29] *See id.*

6
Case No. 5:14-cv-03928-PSG
ORDER DENYING DEFENDANT'S MOTION AND PLAINTIFF'S CROSS-MOTION FOR RULE 11 SANCTIONS

the local processor—that the information reaches the auxiliary site addresses.[30]  In other words, the brain of the Mages operation is the local processor—not the remote server.  Rothschild made similar arguments as to the other three prior art references before the Board.[31]  None of its representations were based on the path from the remote server to its ultimate destination—the auxiliary site addresses.  Rather, it focused on what device was running the show.

Like Sony's, Rothschild's construction is supported by the OCV.[32]  In particular, the Board explicitly referenced the importance of the remote server as the brain:

> [B]roadly interpreting claim 1 to include auxiliary site addresses that are structured to be accessed by a local processor would not be consistent with Patentee's Specification.  The Specification discloses that "the remotely accessible, auxiliary site addresses ***are specifically encoded so as to restrict access by the local processor assembly [] unless the access is directed by the remote server assembly [].***"[33]

From this, it is reasonable to conclude that access by the local processor is permitted, so long as the brain is in the remote server, substantiating Rothchild's construction.

In sum, while Sony has represented that its products include only access by the local processor, Rothschild has a reasonable claim that Sony nevertheless infringes the '534 patent because access is directed by the remote server assembly.  With such a wide yet reasonable divide in constructions between the parties—each drawing support from the OCV—the court cannot yet say that this case is frivolous.  A *Markman* hearing and full claim construction is required.[34]

---

[30] *See id.*

[31] *See id.*

[32] *See* Docket No. 53-2 at 9 (emphasis omitted).

[33] *Id.* at 10 (emphasis added); *see id.* at 4-5:

> 1. Patent ['534] discloses that the "interchangeable computer readable medium [] is preferable structured such that only the remote server assembly [] can access the auxiliary site data at the auxiliary site addresses." Col. 13, ll. 59-62.
>
> 2. "[T]he remotely accessible, auxiliary site addresses are specifically encoded so as to restrict access by the local processor assembly [] unless the access is directed by the remote server assembly []." Col. 14, ll. 34-37.

[34] Rothschild—in its opposition brief—moves for sanctions against Sony claiming that Sony's sanctions motion is frivolous.  But the mere fact that the court denies Sony's motion does not mean that it must be frivolous.  The cross-motion is DENIED.

**SO ORDERED.**

Dated: April 2, 2015

_____
PAUL S. GREWAL
United States Magistrate Judge