# Exhibit 1

1    Gregory P. Sitrick (*pro hac vice*)
     Gregory.sitrick@quarles.com
2    Quarles & Brady LLP
     One Renaissance Square
3    Two North Central Avenue
     Phoenix, AZ  85004-2391
4    Phone: (602) 229-5200
     Fax:  (602) 229-5690
5    AZ Bar No. 028756

6    Krista Celentano (*local counsel*)
     Krista.celentano@dlapiper.com
7    DLA Piper LLP (US)
     2000 University Avenue
8    East Palo Alto, CA 945303-2214
     Phone: (650) 833-2000
9    Fax: (650) 833-2001
     CA Bar No. 279526
10
     Attorneys for Defendant/Counterplaintiff Sony
11   Computer Entertainment America LLC

12   (See signature page for all counsel of record)

13
                    UNITED STATES DISTRICT COURT
14
                   NORTHERN DISTRICT OF CALIFORNIA
15

16

17   ROTHSCHILD DIGITAL MEDIA
     INNOVATIONS, LLC,                          Case No.  5:14-CV-03928-PSG
18
                      Plaintiff/Counterdefendant,   **[PROPOSED] DEFENDANT SONY
19                                                  COMPUTER ENTERTAINMENT
     v.                                             AMERICA LLC'S FIRST AMENDED
20                                                  INVALIDITY CONTENTIONS**
     SONY COMPUTER ENTERTAINMENT
21   AMERICA LLC,                                   **[N.D. Cal. Patent L.R. 3-3 & 3-4]**

22                      Defendant/Counterplaintiff.

23

24          Pursuant to the Amended Case Scheduling Order (Dkt. # 71) and Patent L.R. 3-3 & 3-4,

25   Defendant Sony Computer Entertainment America LLC ("SCEA") hereby provides its First

26   Amended Invalidity Contentions for U.S. Patent No. 6,101,534 ("the '534 Patent").  Rothschild

27   Digital Media Innovations, LLC ("RDMI") has asserted claims 1, 6-9, and 21-24 of the '534

28   Patent ("Asserted Claims").  Accordingly, SCEA's First Amended Invalidity Contentions only

concern claims 1, 6-9, and 21-24 of the '534 Patent.  SCEA's invalidity contentions should not be construed to suggest that any of the other claims of the '534 Patent are valid.  To the contrary, if RDMI seeks and is granted permission to amend its Infringement Contentions to assert additional or alternative claims, then SCEA specifically reserves the right to modify, amend, or supplement these First Amended Invalidity Contentions.  SCEA denies infringement of each Asserted Claim and contends each Asserted Claim is invalid for at least the reasons set forth herein.

SCEA's First Amended Invalidity Contentions are based in whole or in part on its present understanding of the Asserted Claims of the '534 Patent and the apparent constructions that SCEA believes RDMI to be asserting based on RDMI's Infringement Contentions and other statements made during the case.  SCEA's First Amended Invalidity Contentions should not be construed as a suggestion that RDMI's apparent claim constructions are correct, or that any claim terms of the '534 Patent are not invalid under 35 U.S.C. § 112 for being indefinite, failing to satisfy the written description requirement, or failing to satisfy the enablement requirement.  To the contrary, SCEA does contend, based on its present understanding of the apparent claim constructions of RDMI, that at least claims 1, 6, 9, 23, and 24 of the '534 Patent are invalid for being indefinite, failing to satisfy the written description requirement, and failing to satisfy the enablement requirement.  For this reason, the asserted claims depending therefrom are also invalid.  Nor should SCEA's First Amended Invalidity Contentions be construed as an admission of infringement.  To the contrary, SCEA specifically denies any infringement.

Different ones of the references discussed herein may be of greater or lesser relevance and different combinations of these references may be implicated depending on claim construction.  The discussion of the different references herein may reflect alternative applications of the prior art against the asserted claims.  As such, the comments on one item of prior art in one of the charts herein should not be construed as necessarily applying to any of the other charts or prior art discussed herein.  These First Amended Invalidity Contentions are subject to revision upon review of any claim construction presented by RDMI or a Claim Construction Order by this Court, and SCEA expressly reserves the right to supplement or amend these invalidity contentions based on the same.  SCEA further reserves the right to supplement or amend these

invalidity contentions based on information learned during fact discovery (including third-party discovery) and expert discovery, and/or otherwise for good cause shown.

The attached claim charts identify non-limiting examples of where the elements of the Asserted Claims are disclosed (either expressly or inherently) in the identified prior art. SCEA has identified relevant portions of the prior art references and has attempted to avoid excessive and/or cumulative citations. However, additional portions of the identified prior art may also disclose and/or provide relevant context for one or more elements of the Asserted Claims, and SCEA reserves the right to rely on the entire disclosure of each item of prior art as further evidence of the invalidity of the Asserted Claims. SCEA also reserves the right to rely on any evidence, including fact and expert testimony, to provide context to, or aid in understanding of, the identified prior art.

Where SCEA cites to a particular drawing or figure, the citation encompasses the description of the drawing or figure, as well as any text associated with the drawing or figure. Similarly, where SCEA cites to a particular description of, or text associated with, a drawing or figure, the citation encompasses such drawing or figure.

The suggested obviousness combinations in these Invalidity Contentions are provided in the alternative to SCEA's anticipation contentions and are not to be construed to suggest that any reference included in the combinations is not by itself anticipatory. SCEA is currently unaware of the extent, if any, to which RDMI will contend that limitations of the claims at issue are not disclosed in the art identified as anticipatory. To the extent that an issue arises with respect to any such limitation, SCEA reserves the right to identify other references and combinations, which may make obvious the addition of the allegedly missing limitation to the disclosed device or method of operation.

## I.   RULE 3-3(a) - Identification Of Invalidating Prior Art

As identified in the associated claim charts, each reference identified in Exhibits A.1-B.17 anticipates or renders obvious (alone or in combination with the other references identified in this subsection), all of the Asserted Claims. The identified references are prior art under one or more of pre-AIA (America Invents Act) 35 U.S.C. §§ 102(a), (b), (e), and/or (g), or pre-AIA § 103.

### A.    Prior Art Patents And Publications

The prior art references analyzed in Exhibits A.1-A.13 with respect to the '534 Patent are identified in the chart below.  None of the arguments contained herein should be construed as an admission regarding the proper claim construction of any term.  To the contrary, SCEA expressly maintains that RDMI's constructions are incorrect and improper in light of arguments made during reexamination of the '534 Patent.

| Exhibit | Prior Art Patents and Publications | Bates Range |
|---|---|---|
| A.1 | U.S. Patent No. 5,724,103 to Batchelor (filed November 13, 1995, issued March 3, 1998) ("Batchelor") | SCEA002351–2357 |
| A.2 | PCT WIPO International Application No. WO 93/01550 to Griswold (filed June 20, 1992, published January 21, 1993) ("Griswold") | SCEA000948–1011 |
| A.3 | U.S. Patent No. 5,937,164 to Mages (filed January 31, 1997, issued August 10, 1999) ("Mages") | SCEA001832–1872 |
| A.4 | U.S. Patent No. 5,768,382 to Schneier et al. (filed November 22, 1995, issued June 16, 1998) ("Schneier") | SCEA001780–1831 |
| A.5 | U.S. Patent No. 5,838,910 to Domenikos et el. (filed March 14, 1996, issued November 17, 1998) ("Domenikos"). | SCEA000210–226 |
| A.6 | U.S. Patent No. 6,570,563 to Honda (filed July 11, 1996, issued May 27, 2003) | SCEA000069–114 |
| A.7 | U.S. Patent No. 6,009,458 to Hawkins et al. (filed May 9, 1996, issued December 28,1999) ("Hawkins") | SCEA002515–2542 |
| A.8 | U.S. Patent No. 5,677,953 to Dolphin (filed June 7, 1995, issued October 14, 1997) ("Dolphin") | SCEA002184–2206 |
| A.9 | U.S. Patent No. 5,946,664 to Ebisawa (filed June 27, 1996, issued August 31, 1999) ("Ebisawa") | SCEA002474–2491 |
| A.10 | U.S. Patent No. 5,541,923 to Kato (filed Jan. 27, 1995, issued July 30, 1996 ("Kato") | SCEA002212–2224 |
| A.11 | Stansberry, Domenic, *Going Hybrid: The Online / CD-Rom Connection*, 5 New Media 6, 34-40(June 1995) ("Stansberry") | SCEA004410–4417 |
| A.12 | U.S. Patent No. 5,694,546 to Reisman (filed May 31, 1994, issued Dec. 2, 1997) ("Reisman") | SCEA004333–4359 |
| A.13 | U.S. Patent No. 6,437,777 to Kamachi (filed September 26, 1997 issued August 20, 2002) ("Kamachi") | SCEA004360–4409 |

In addition to the prior art references listed above, SCEA incorporates, in full, all prior art references cited (however partially) in the prosecution history of the patent-in-suit (including the re-examination history) and the defendants' invalidity contentions (including in discovery responses and expert disclosures) in prior litigations involving the patent-in-suit. SCEA also incorporates all of the art cited in the co-pending IPR before the USPTO (IPR2015-01364) including "Introduction: VEMMI, an European and International Standard for Multimedia On-line Services" ("VEMMI") (SCEA054327-350), U.S. Patent No. 5,736,977 ("Hughes") (SCEA054319-326). SCEA contends that the '534 Patent is anticipated and/or made obvious by all these references as well.

### B.    Public Knowledge, Public Use, And/Or Sale

In addition to the prior art patents and publications identified above, the products and/or services, including activities relating to such products and services, analyzed in Exhibits B.1-B.17 and identified below are prior art under at least pre-AIA 35 U.S.C. §§ 102(a), (b) and/or (g). Although SCEA's investigation continues, information available to date indicates that such products and/or services were (1) known or used in this country before the alleged invention of the claimed subject matter of the Asserted Claims, (2) was in public use and/or on sale in this country more than one year before the filing date of the patent, and/or (3) was invented by another who did not abandon, suppress, or conceal, before the alleged invention of the claimed subject matter of the Asserted Claims.

It should be understood that, while SCEA has identified specific prior art video games and applications in the chart below for ease of reference, SCEA contends that the Asserted Claims of the '534 Patent are anticipated by and/or made obvious by the system comprising a computer or game console, a network server associated with the prior art video game or application, and the video game or application listed, as is indicated in Exhibits B.1-B.17. SCEA intends to rely on the actual game play of asserted games in addition to the claim charts in order to demonstrate elements of the claims. Additionally, as discovery is ongoing, it should be understood that all citations to code, articles, manuals, and the like in the attached claim charts are provided for RDMI's convenience and should not be taken as limiting. Moreover, although distinct

references, citations and other evidence regarding the same or different versions of the same software, product, service, or technology may be listed separately in this disclosure and the associated charts and materials, SCEA contends that such constitute a single prior art reference for the purposes of anticipation under 35 U.S.C. § 102.  SCEA specifically reserves the right to use any evidence obtained during discovery to establish that a system comprising the prior art video games and applications listed below anticipate and/or make obvious the Asserted Claims.

| Exhibit | Public Knowledge / Public Use / Sale | Bates Range |
|---------|--------------------------------------|-------------|
| B.1 | Battle Chess (first released and/or sold to the general public in 1988; first published by Interplay Productions, Inc.) | SCEA021177-21201 |
| B.2 | Command & Conquer (first released and/or sold to the general public in 1995; first published by Virgin Interactive Entertainment Ltd.) | SCEA019526-580 |
| B.3 | Command & Conquer RED ALERT (first released and/or sold to the general public in 1996; first published by Virgin Interactive Entertainment Ltd) | SCEA012518-841; SCEA020725-958 |
| B.4 | The War College: Universal Military Simulator 3 (first released and/or sold to the general public in 1995; first published by GameTek, Inc.) | SCEA012274-517 |
| B.5 | Robert E. Lee: Civil War General (first released and/or sold to the general public in 1996; first published by Sierra On-Line, Inc.) | SCEA012842-3219 |
| B.6 | Master of Orion II (first released and/or sold to the general public in 1996; first published by MicroProse Software, Inc.) | SCEA019782-962 |
| B.7 | Doom (first released and/or sold to the general public in 1993; first published by id Software, Inc.) | SCEA004890-5077; SCEA019661-697 |
| B.8 | Doom II (first released and/or sold to the general public in 1994; first published by CDV Software GmbH) | SCEA019698-712 |
| B.9 | Duke Nukem 3D (first released and/or sold to the general public in 1996; first published by GT Interactive Software Europe Ltd.) | SCEA011366-617; SCEA012518-841; SCEA019713-737 |
| B.10 | Quake (first released and/or sold to the general public in 1996; first published by id Software, Inc.) | SCEA011836-2047; SCEA019963-20151 |
| B.11 | Witchaven (first released and/or sold to the | SCEA002683-734 |

| | | |
|---|---|---|
| | general public in 1995; first published by IntraCorp, Inc.) | |
| B.12 | Witchaven II (first released and/or sold to the general public in 1996; first published by IntraCorp, Inc.) | SCEA020959-986 |
| B.13 | Diablo (first released in December 1996; first published by Blizzard Entertainment) | SCEA012518-841; SCEA019581-660; SCEA020638-717 |
| B.14 | Neuron (first sold to the general public on or about May 1996; sold by Asymetrix Corporation) | SCEA020718-724 |
| B.15 | Marathon 2: Durandal (first sold to the general public in 1995; first published by Bungie Software Products Corp.) | SCEA010884-1135; SCEA019742-781 |
| B.16 | Air Warrior (first sold to the general public in 1990; first published by Kesmai Corp.) | SCEA020152-403 |
| B.17 | CyberStrike (first sold to the general public in 1994; first published by MicroProse Software, Inc.) | SCEA021202-529 |

Additionally, SCEA expects to develop evidence through discovery (including third-party discovery) relating to prior art systems that were publicly known, in public use and/or on sale by the inventors and/or assignees of the prior art patents and publications listed in Exhibits A.1-A.13 before the alleged invention of the '534 Patent.  By way of example, and in no way limiting, SCEA expects to develop evidence regarding:

1. RDMI's, or any of its predecessor's, own activities, systems, use, and/or sales of, for example, any commercial embodiments of the disclosure contained in the '534 Patent.

2. Intracorp Entertainment, Inc.'s, or its subsidiary Capstone Software, Inc.'s, activities, systems, use, and/or sales of, for example, any commercial embodiments of the disclosure contained in the '534 Patent.

3. Infologic Software, Inc.'s activities, systems, use, and/or sales of for example, any commercial embodiments of the disclosure contained in PCT WIPO International Application No. WO 93/01550.

4. HyperLOCK Technologies, Inc.'s activities, systems, use, and/or sales of for example, any commercial embodiments of the disclosure contained in U.S. Patent No. 5,937,164.

5. Intel Corporation's activities, systems, use, and/or sales of for example, any commercial embodiments of the disclosure contained in U.S. Patent No. 5,724,103.

6. Walker Asset Management Limited's activities, systems, use, and/or sales of for example, any commercial embodiments of the disclosure contained in U.S. Patent No. 5,768,382.

7. Epicon, Inc.'s, or any successor's, activities, systems, use, and/or sales of for example, any commercial embodiments of the disclosure contained in U.S. Patent No. 5,838,910.

8. 3DO Company's, or any successor's, activities, systems, use, and/or sales of for example, any commercial embodiments of the disclosure contained in U.S. Patent No. 6,009,458.

9. Spyrus, Inc.'s, or any successor's, activities, systems, use, and/or sales of for example, any commercial embodiments of the disclosure contained in U.S. Patent No. 5,677,953.

10. All commercial embodiments of the Kali network service by Kali Inc.

11. All commercial embodiments of the Total Entertainment Network online gaming service by T E Network, Inc., referred to as the "TEN service."

### C.     Incorrect Inventorship

The '534 Patent is invalid at least under 35 U.S.C. § 102(f) because it was not invented by the named inventor.  Under 35 U.S.C. § 102(f) a person is not entitled to a patent if "he did not himself invent the subject matter sought to be patented."  Thus, a patent is invalid under 35 U.S.C. § 102(f) when there was prior conception by another and communication of the invention to the patentee.  *New England Braiding Co., Inc. v. A.W. Chesterton Co.*, 970 F.2d 878, 883 (Fed. Cir. 1992).  Conception requires that the idea of the invention to be so clearly defined that one of ordinary skill in the art could reduce the invention to practice, without extensive research or experimentation. *Burroughs Wellcome Co. v. Barr Labs., Inc.*, 40 F.3d 1223, 1228 (Fed. Cir. 1994).

The '534 Patent is invalid under 35 U.S.C. § 102(f) at least because the recited inventorship on the patent is incorrect.  Specifically, Mr. Leigh Rothschild, the sole named patentee, is either not an inventor at all or conceived of the invention jointly with others.  In particular Mr. Rothschild was an employee, officer, and director at Intracorp Entertainment, Inc. *See e.g.*, Debtor's Mtn. for Authorization to Use Additional Cash Collateral at ¶ 9, *In re*

*Intracorp Entertainment, Inc.*, Case No. 96-16276 (Bankr. S.D.Fla. Oct. 29, 1996). The invention of the Asserted Claims was earlier conceived of by one or more employees of Intracorp Entertainment Inc. (and/or Capstone Software and/or VRTech) either instead of or in connection with Mr. Rothschild. *Id.*; *see also* Debtor's Mtn. for Authorization to Enter Into Exclusive Licensing Agmt. at ¶ 9, Ex. A at 3, *In re Intracorp Entertainment, Inc.*, Case No. 96-16276 (Bankr. S.D.Fla. Oct. 29, 1996). Further, said individual(s) communicated the invention to Mr. Rothschild prior to the filing of the '534 Patent. *Id.*

## II.     RULE 3-3(b) - Identification Of Reference Combinations Under 35 U.S.C. 103

To the extent RDMI contends that any Asserted Claim is not anticipated by an individual reference identified above, SCEA contends that each such claim is obvious in light of the prior art identified herein as well as the knowledge of one having ordinary skill in the relevant arts. The combinations and modifications of the prior art to invalidate the Asserted Claims would have arisen from ordinary innovation, ordinary skill, and common sense. Indeed, each Asserted Claim merely combines familiar elements according to known methods to yield predictable results.

Where a term of an Asserted Claim is incorporated into a claim chart for an individual reference, SCEA contends that, to the extent the charted reference is interpreted as not disclosing a particular claim element, the charted references in Exhibits A.1-B.17 may be combined with any other suitable reference identified in Exhibits A.1-B.17, the documents Bates No. SCEA016132-19525;      SCEA020090-20150;      SCEA02989-21176;      SCEA004418-016131, explaining the state of the art such as networked virtual environments, client-server applications and hybrid Internet / CD-ROM applications, references "Introduction: VEMMI, an European and International Standard for Multimedia On-line Services" ("VEMMI") (SCEA054327-350), U.S. Patent No. 5,736,977 ("Hughes") (SCEA054319-326), and/or the knowledge of one of ordinary skill in the art to render the claim obvious under 35 U.S.C. § 103. Exemplary combinations are provided in the chart below and also appear in Exhibits C.1-C.4.

| Claim Rendered Obvious | Combinations of Prior Art |
| --- | --- |

| Claim 1 | Any of references A.1-A.13, B.1-B.17 with the knowledge of one of skill in the art, as well as in any combination with each other to include elements alleged to be absent.  Also, any of references A.1-A.13, B.1-B.17 with Fox (Bates Nos. SCEA021064-76), as for example, A.11 in combination with Fox as shown in Chart C.1. Any of references A.1-A.13, B.1-B.17 with Funkhouser (Bates Nos. SCEA02108-2115), as, for example, A.11 in combination with Funkhouser as shown in Chart C.2.  Also, Mages, A.3, in combination with VEMMI as shown in C.3. |
|---|---|
| Claim 6 | Any of references A.1-A.13, B.1-B.17 with the knowledge of one of skill in the art, as well as in any combination with each other to include elements alleged to be absent.  Also, any of references A.1-A.13, B.1-B.17 with Funkhouser, as, for example, A.11 in combination with Funkhouser as shown in Chart C.2. Also, Mages, A.3, in combination with VEMMI as shown in C.3. |
| Claim 7 | Any of references A.1-A.13, B.1-B.17 with the knowledge of one of skill in the art, as well as in any combination with each other to include elements alleged to be absent.  Also, any of references A.1-A.13, B.1-B.17 with Fox, as for example, A.11 in combination with Fox as shown in Chart C.1.  Any of references A.1-A.13, B.1-B.17 with Funkhouser, as, for example, A.11 in combination with Funkhouser as shown in Chart C.2.   Also, Mages, A.3, in combination with VEMMI as shown in C.3. |
| Claim 8 | Any of references A.1-A.13, B.1-B.17 with the knowledge of one of skill in the art, as well as in any combination with each other to include elements alleged to be absent.  Also, any of references A.1-A.13, B.1-B.17 with Fox, as for example, A.11 in combination with Fox as shown in Chart C.1.  Any of references A.1-A.13, B.1-B.17 with Funkhouser, as, for example, A.11 in combination with Funkhouser as shown in Chart C.2.   Also, Mages, A.3, in combination with VEMMI as shown in C.3. |
| Claim 9 | Any of references A.1-A.13, B.1-B.17 with the knowledge of one of skill in the art.   Additionally, any of references A.2-A.9, A.11-A.13, B.2-B.4, B.6-B10, B.13, B.14, and B.16 with each other. Further, any of references A.1, A.10, B.1, B.5, B.11, B.12, B.15, and B.17 in view of any of A.2-A.9, A.11-A.13, B.2-B.4, B.6-B10, B.13, B.14, and B.16.  Also, any of references A.1-A.13, B.1-B.17 with Fox, as for example, A.11 in combination with Fox as shown in Chart C.1   Any of references A.1-A.13, B.1-B.17 with Funkhouser, as, for example, A.11 in combination with Funkhouser as shown in Chart C.2.   Also, Mages, A.3, in combination with VEMMI as shown in C.3. |

| Claim 21 | Any of references A.1-A.13, B.1-B.17 with the knowledge of one of skill in the art.  Additionally, any of references A.1-A.9, A.11-A.13, and B.1-B.17 with each other.  Further, reference A.10 in view of any of A.1-A.9, A.11-A.13, and B.1-B.17.  Also, any of references A.1-A.13, B.1-B.17 with Fox, as for example, A.11 in combination with Fox as shown in Chart C.1.  Any of references A.1-A.13, B.1-B.17 with Funkhouser, as, for example, A.11 in combination with Funkhouser as shown in Chart C.2.   Also, Mages, A.3, in combination with VEMMI  as shown in C.3. |
|---|---|
| Claim 22 | Any of references A.1-A.13, B.1-B.17 with the knowledge of one of skill in the art.  Additionally, any of references A.7, B.1-B.3, B.6-B.13, and B.15-B.17 with each other.   Further, any of references A.1-A.6, A.8-A.13, B.4, B.5, and B.14 in view of any of A.7, B.1-B.3, B.6-B.13, and B.15-B.17.  Also, any of references A.1-A.13, B.1-B.17 with Fox, as for example, A.11 in combination with Fox as shown in Chart C.1. Also, Mages, A.3, in combination with Batchelor, A.1, in further combination with Hughes, as shown in C.4. |
| Claim 23 | Any of references A.1-A.13, B.1-B.17 with the knowledge of one of skill in the art, as well as in any combination with each other to include elements alleged to be absent.  Also, any of references A.1-A.13, B.1-B.17 with Fox, as for example, A.11 in combination with Fox as shown in Chart C.1.  Any of references A.1-A.13, B.1-B.17 with Funkhouser, as, for example, A.11 in combination with Funkhouser as shown in Chart C.2.   Also, Mages, A.3, in combination with VEMMI  as shown in C.3. |
| Claim 24 | Any of references A.1-A.13, B.1-B.17 with the knowledge of one of skill in the art, as well as in any combination with each other to include elements alleged to be absent.  Also, any of references A.1-A.13, B.1-B.17 with Fox, as for example, A.11 in combination with Fox as shown in Chart C.1.  Any of references A.1-A.13, B.1-B.17 with Funkhouser, as, for example, A.11 in combination with Funkhouser as shown in Chart C.2.   Also, Mages, A.3, in combination with VEMMI  as shown in C.3. |

The United States Supreme Court has clarified the standard for what types of inventions are patentable. *KSR International Co. v. Teleflex Inc.*, 127 S. Ct. 1727 (2007).  In particular, the Supreme Court emphasized that inventions arising from ordinary innovation, ordinary skill, or common sense should not be patentable.  *Id.* at 1732, 1738, 1742-1743, 1746. In that regard, a patent claim may be obvious if the combination of elements was obvious to try or there existed at

the time of the invention a known problem for which there was an obvious solution encompassed by the patent's claims.  In addition, when a work is available in one field of endeavor, design incentives and other market forces can prompt variations of it, either in the same field or a different one.  If a person of ordinary skill can implement a predictable variation, § 103 likely bars its patentability.  *Id.* at 1740.

SCEA believes that no showing of a specific motivation to combine prior art is required to combine the references disclosed above, as each combination of prior art would have no unexpected result, and at most would simply represent a known alternative to one of ordinary skill in the art. *See, e.g., id.* at 1739-40 (rejecting the Federal Circuit's "rigid" application of the teaching, suggestion, or motivation to combine test, instead espousing an "expansive and flexible" approach).  The Supreme Court held that a person of ordinary skill in the art is "a person of ordinary creativity, not an automaton" and "in many cases a person of ordinary skill will be able to fit the teachings of multiple patents together like pieces of a puzzle." *Id.* at 1742. Nevertheless, in addition to the other information contained in these contentions, SCEA hereby identifies additional motivations and reasons to combine the cited art in attached exhibits.

One or more combinations of the prior art references identified above would have been obvious because these references would have been combined: using one or more of the anticipatory references herein as a road map, using known methods to yield predictable results; using known techniques in the same way; using a simple substitution of one known, equivalent element for another to obtain predictable results; and/or using a teaching, suggestion, or motivation in the prior art generally.  In addition, it would have been obvious to try the combination of the prior art references identified above because there were only a finite number of predictable solutions and/or because known work prompted the variations based on predictable design incentives and/or market forces.  In addition, the combination of the prior art references identified above would have been obvious because the combination represents known potential options with a reasonable expectation of success.

To the extent that applicable law requires evidence of motivation to combine, motivation exists to combine one or more of the references included in these Invalidity Contentions with

1    each other.  Generally, motivation to combine any of these references with others exists within

2    the references themselves, as well as within the knowledge of those of ordinary skill in the art at

3    the relevant time.  For example, many of these references identify and address the same technical

4    issues and suggest very similar solutions to those issues.

5        More specifically, to the extent that any one of Exhibits A.1-B.17, do not disclose each

6    and every limitation of an Asserted Claim of the '534 Patent, each claim is obvious by a

7    combination of that prior art reference with knowledge of one of ordinary skill in the art,

8    references explaining the state of the art and teaching hybrid CD-Rom/Web applications (Bates

9    Nos.  SCEA016132-19525;  SCEA020090-20150;  SCEA02989-21176;  SCEA004418-016131),

10   with VEMMI, and/or Hughes, and/or any suitable one of the other references listed in Exhibits

11   A.1-B.17.  For example, the Asserted Claims of the '534 Patent are obvious at least over any one

12   of Batchelor, Griswold, Mages, Schneier, Domenikos, Kato, Honda, Hawkins, Dolphin, Ebisawa,

13   Stansberry, Reisman, Kamachi or any of the prior art products and services identified in Exhibits

14   B.1-B.17 in view of the knowledge of one of ordinary skill in the art.  To the extent the '534

15   Patent purports to utilize a client-server design to address problems like latency, bandwidth and

16   storage in order to support real-time 3D features of online multiplayer video games, such was

17   well known in the art.  Specifically, client-server designs were well known tools to use in a

18   networked system to support large multi-user virtual environments, including multiplayer games.

19   A.1-B.17 and client-server, networked virtual environment background art and implementations

20   of such.

21       Further, the Asserted Claims of the '534 Patent are obvious at least over any one of

22   Batchelor, Griswold, Mages, Schneier, Domenikos, Kato, Honda, Hawkins, Dolphin, Ebisawa,

23   Stansberry, Reisman, Kamachi or any of the prior art products and services identified in Exhibits

24   B.1-B.17 in view of references teaching hybrid CD-ROM/Web applications and the

25   implementations of such. The '534 Patent purports to utilize data located at a remote server in

26   conjunction with data on a CD-ROM to provide the user the desired experience.  But in the prior

27   art, hybrid CD-ROM/Web applications were well known as it was a well known tool used in

28   networked communications systems to address problems associated with communicating and

1   storing large amounts of information.  A.1-B.17 and hybrid CD-ROM/web background art and

2   implementations of such.

3        Additionally, the Asserted Claims of the '534 Patent are obvious at least over Batchelor in

4   view of Griswold, Mages, Schneier, Domenikos, Kato, and/or Honda; Griswold in view of

5   Mages, Schneier, Domenikos, Kato and/or Honda; Mages in view of Schneier, Domenikos, Kato,

6   and/or Honda; Schneier in view of Domenikos, Kato, and/or Honda; Domenikos in view of Kato

7   and/or Honda; Kato in view of Honda; Stansberry in view of Fox (Bates Nos. Bates Nos.

8   SCEA021064-76, Chart C.1), and Stansberry in view of Funkhouser (Bates Nos. SCEA002108-

9   2115, Chart C.2.).   Further, the Asserted Claims of the '534 Patent are obvious over any

10   combination of Batchelor, Griswold, Mages, Schneier, Domenikos, Kato, Honda, Stansberry,

11   Reisman and/or Kamachi in view of any of the prior art products and services identified in

12   Exhibits B.1-B.17.  Further, the Asserted Claims of the '534 Patent are obvious over Mages in

13   view of VEMMI, as shown in Chart C.3, and Mages in view of Batchelor in further view of

14   Hughes, as shown in Chart C.4.

15        The motivations to combine each of the prior art references identified in Exhibits A.1-

16   B.17 with any of the other references come from many sources, including, but not limited to, the

17   known, published prior art references themselves, the knowledge of those of ordinary skill in the

18   art, the common field of technology of the references, the commonality of the objectives and

19   purposes of the references, and the teachings in the references directed to solving the problems

20   that the Asserted Claims of the '534 Patent were allegedly directed to solving.  These references

21   identify and address the same technical issues and suggest similar and/or identical solutions to

22   such issues identified in the Asserted Claims of the '534 Patent.  Differences (if any) between the

23   alleged invention and the prior art identified herein are insignificant and reflect, at most, a

24   common sense modification of network communication systems that were known, used, and/or

25   sold before the alleged invention of the Asserted Claims of the '534 Patent, and obvious and

26   predictable responses to market pressure.  For example, the alleged invention of the Asserted

27   Claims of the '534 Patent merely used known technology for an obvious purpose.  One of skill in

28   the art would have recognized that the known elements of the cited references can be combined

1  using known methods to yield predictable results.

2       Moreover, a person of ordinary skill in the art would have been motivated to combine

3  each reference identified in Exhibits A.1-B.17 with any of the other references in Exhibits A.1-

4  B.17, including the example combinations recited above, at least because all such references

5  relate to the field of interactive, remote, computer interface systems and particularly with

6  networked and collaborative virtual environment technology, video game technology, remote

7  server controlled local media, and/or combinations thereof.  In addition to the motivation to

8  combine such references by virtue of the references' relation to these fields, a person of ordinary

9  skill in the art would have been motivated to combine such references in order to create multi-

10  user environments that support real-time interactions, and in particular to overcome or improve

11  latency issues with transferring large amounts of data over a network.

12       In addition, one of ordinary skill in the art would recognize from the teachings of the prior

13  art, such as Exhibits A.1-B.17 that it was well known to store large data files on local data storage

14  media, particularly video game data, and to access such files from the local data storage media to

15  avoid the latency issues with transferring data over a network.  Moreover, one of ordinary skill in

16  the art would recognize from the teachings of the prior art, such as Exhibits A.1-B.17, that some

17  files should be accessed only upon direction from a network server.  For example, both Mages

18  and Honda recognize that the transfer of video content or other large data files over a network can

19  be prohibitively slow and that it is desirable to provide such content on a local data storage

20  medium.  A.3 at 1:53-2:28; 3:35-58; A.6 at 3:12-19; 29:1-3.  Schneier recognizes that it is

21  desirable for video games, stored on removable media, to have restricted content that is only

22  accessible upon direction from a server on a network.  A.4 at 29:51-30:3.  The competing

23  interests of having quick access to large amounts of data, and in particular audio/visual data,

24  when communicating over a network by storing the data on removable media compared with the

25  desirability of restricting access to data on removable media would lead one of ordinary skill in

26  the art to provide a system where all or part of the data was stored on a local media in a restricted

27  manner such that the local computer could not access the data until direction from a network

28  server to do so.  Likewise, Batchelor discloses that it is desirable to store text and graphical data

within addressable memory locations of a local data storage medium, such as an optical disc, for use in conjunction with content received over a network.   A.1 at 1:30-38. 2:47-48, 3:64-4:6. Similarly, Domenikos recognizes that, when a local computer is connected to the network, it is desirable for the network to direct the local computer to access information stored in local memory, including removable media, rather than transferring data over the network.  A.5 at 2: 50-63; 5:9-23.  Griswold recognizes that it is desirable to manage licensed content of applications stored on removable media, such as video games, over a network where access to the licensed content by the local computer is restricted until such time as the network server authorizes the local computer to access the content, which is only granted while the local computer is in communication with the network.   A.2 at 1:1-10; 8:7-11; 10:15-22; 7:12-24; 24:29-25:2. Accordingly, a person of ordinary skill in the art, wanting to balance the desirability in networked applications of storing large data files locally while restricting access to that content to licensed users, would be motivated to store the data on the removable media in such a manner that it was not accessible by the local computer until the local computer received an instruction from a network server.  Accordingly, one of skill in the art would be motivated to combine Mages or Honda, for example, with any of the other references of Exhibits A.1-B.17, in order to provide quick, but controlled, access to large data files used in network applications, such as multiplayer video games. Thus, these known elements may be combined in a known manner to achieve the expected result of the Asserted Claims of the '534 Patent.

Moreover, as discussed above, one of ordinary skill in the art would have recognized, based upon, for example the references of Exhibits A.1-B.17, that restricting access to data that is for use with network applications and stored on removable media was a known need that could be addressed in a variety of known ways.  For example, Schneier recognizes that it is desirable for video games, stored on removable media, to have "hidden" game content that the player can access only when certain criteria are met.  A.4 at 29:51-30:3.  Schneier discloses that a network server can send a "confirmation message" that, when read by the local game computer, allows access to the hidden game content.  *Id*.  In addition to the confirmation message taught by Schneier, known solutions for restricting content stored on removable media included at least

receiving an access instruction, requiring an authorization message, and crippling the data, as described in at least Domenikos, Griswold, and Mages.  Accordingly, one of ordinary skill in the art would be motivated to combine the teachings of Schneier with any one of the other references to particularly implement the restricted access mechanisms of Schneier with those found in Domenikos, Griswold, and Mages.  One of ordinary skill in the art would be readily able to make such a combination between similar features of the references.  For example, the content restriction in Schneier could be implanted by the authorization message of Griswold or the crippling/decrippling mechanism of Mages to arrive at the Asserted Claims of the '534 Patent.  Thus, these known elements may be combined in a known manner to achieve the expected results of the Asserted Claims of the '534 Patent.

In fact, it was well known in the gaming industry to provide video game content on removable media where portions of that content was only accessible when the game was being operated in multiplayer mode, and thus where the content was "encoded" so that access by a "local processor assembly" was restricted unless "directed by [a] remote server assembly," and where the content was only accessible when the "local processor assembly" was "interactively online connected to the remote server assembly."  For example, the video game Witchaven included a "LAN-based deathmatch-style multiplayer mode with 10 additional multiplayer-only maps."  Wikipedia, *Witchaven*, http://en.wikipedia.org/wiki/Witchaven (accessed Mar. 12, 2015). Likewise, the video game Quake included a multiplayer-only "deathmatch" mode while the video game Command & Conquer RED ALERT included assault vehicles, such as the Chinook transport helicopter, that were only present in multiplayer-mode.  Wikipedia, *Quake (video game)*, http://en.wikipedia.org/wiki/Quake_(video_game) (accessed Mar. 12, 2015); Wikipedia, Command & Conquer: Red Alert, http://en.wikipedia.org/wiki/Command_%26_Conquer:_Red_Alert (accessed Mar. 12, 2015). Thus, it would have been well within the ability of one of ordinary skill in the art to modify any one of the references of Exhibits A.1-B.17 such that the addresses on the removable media were "encoded" so that access by a "local processor assembly" was restricted unless "directed by [a] remote server assembly," and the data at those addresses was accessible only while the "local

1   processor assembly" was "interactively online connected to the remote server assembly."

2       Finally, to the extent there are any differences between the prior conception and disclosure

3   under 35 U.S.C. § 102(f) to Mr. Rothschild (discussed in Section 1.C) and the Asserted Claims,

4   the Asserted Claims are further obvious over that disclosure in view of any of the prior art

5   references listed in Exhibits A.1-B.17.  *OddzOn Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396,

6   1403-04 (Fed. Cir. 1997) ("subject matter derived from another not only is itself unpatentable to

7   the party who derived it under § 102(f), but, when combined with other prior art, may make a

8   resulting obvious invention unpatentable to that party under a combination of §§ 102(f) and

9   103").

10      These prior art combinations are not exhaustive; rather, they are illustrative examples of

11  the prior art combinations that would have rendered the claimed subject matter obvious.

12  Accordingly, SCEA reserves the right to rely on any combination of any prior art references

13  disclosed herein.

14  **III.   RULE 3-3(c) - Claim Charts**

15      Attached hereto as Exhibits A.1-C.4 are claim charts identifying where specifically in

16  each alleged item of prior art each limitation of the Asserted Claims are found, subject to the

17  completion of discovery.  SCEA expressly reserves the right to assert additional and/or modified

18  invalidity contentions based on, and without limitation, discovery, including third part discovery,

19  and claim interpretations adopted by this Court.

20  **IV.   RULE 3-3(d) - Invalidity Under 35 U.S.C. §§ 101 and 112**

21      **A.   Invalidity Under 35 U.S.C. § 101**

22      The Asserted Claims of the '534 Patent are further invalid because they are directed to

23  subject matter that is ineligible for patenting under 35 U.S.C. § 101.  The United States Supreme

24  Court has recently reexamined and clarified the standard for what types of inventions are

25  patentable.  *See Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, ___U.S. ___, 134 S.Ct. 2347 (2014).  In

26  particular, the Supreme Court has reaffirmed that § 101 "contains an important implicit

27  exception: Laws of nature, natural phenomena, and abstract ideas are not patentable." *Alice*, 134

28  S.Ct. at 2354.  "Under that interpretation, laws of nature, natural phenomena, and abstract ideas,

1   no matter how groundbreaking, innovative, or even brilliant, are outside what the statute means

2   by 'new and useful process, machine, manufacture, or composition of matter.'" *BuySafe, Inc. v.*

3   *Google, Inc.*, 765 F.3d 1350, 1352 (Fed. Cir. 2014) (internal citations omitted).  In particular, not

4   only are claims that directly read on the three identified categories outside § 101, but also claims

5   that are "directed to matter in one of the three excluded categories [where] the additional elements

6   do not supply an inventive concept in the physical realm of things and acts - [that is] a new and

7   useful application of the ineligible matter in the physical realm - that ensures the patent is

8   something significantly more than the ineligible matter itself."  *Id.* at 1353 citing *Alice*, 134 S.Ct.

9   at 2355, 2357 (internal citations omitted).  Importantly, a claim directed to an abstract idea does

10  not become patent eligible "merely by requiring generic computer implementation."  *Alice*, 134

11  S.Ct. at 2357.

12       The Asserted Claims of the '534 Patent are directed to an abstract idea under the Supreme

13  Court's test in *Alice*.  Specifically, the Asserted Claims recite "[a]n interactive, remote, computer

14  interface system" merely comprising "purely functional and generic" computer components for

15  performing "basic [data processing], storage, and transmission functions."  *See Alice*, 134 S.Ct. at

16  2359.  For example, claim 1 of the '534 Patent recites an interactive, remote, computer interface

17  system comprising no more than a generic server, local processor, data storage assembly, and

18  computer readable medium (*i.e.*, a compact disk, cartridge, etc.).  The functionality is also

19  generic: the components are "structured" such that the server and local processor are in

20  communication with each other in order for the local processor to use data located on the

21  computer readable medium in conjunction with data from the server.  There are no further claim

22  elements that recite a "new and useful application of the ineligible subject matter in the physical

23  realm."  *BuySafe*, 765 F.3d at 1352.  Claims 23 and 24 are likewise flawed, also being directed to

24  an "interactive, remote, computer interface system" comprising generic computer components

25  "structured" to perform basic computer tasks.  Likewise the asserted dependent claims are

26  directed to the type of data stored on the computer readable medium and do not recite new and

27  useful physical matter that would make the claims patent eligible.

28       **B.    Invalidity Under 35 U.S.C. § 112**

### i.        Invalidity Under 35 U.S.C. § 112(1)

The Asserted Claims are additionally invalid under 35 U.S.C. § 112(1) for failure to satisfy the written description and/or enablement requirement.  In order for patented claims to be valid under 35 U.S.C. § 112(1), the specification must describe how to make and use the invention.   The standard for determining whether the specification meets this enablement requirement is whether undue or unreasonable experimentation is required to practice the invention as described in the specification.  *Mineral Separation v. Hyde*, 242 U.S. 261, 270 (1916); *In re Wands*, 858 F.2d 731, 737 (Fed. Cir. 1988).  The factors to be considered when determining whether any necessary experimentation is "undue" may include (A) the breadth of the claims; (B) the nature of the invention; (C) the state of the prior art; (D) the level of one of ordinary skill; (E) the level of predictability in the art; (F) the amount of direction provided by the inventor; (G) the existence of working examples; and (H) the quantity of experimentation needed to make or use the invention based on the content of the disclosure.  *In re Wands*, 858 F.2d 731, 737 (Fed. Cir. 1988).  Furthermore, in a valid patent under 35 U.S.C. § 112(1), the "specification shall contain a written description of the invention," which is separate and distinct from the enablement requirement.  *See*, *e.g.*, *Vas-Cath, Inc. v. Mahurkar*, 935 F.2d 1555, 1560 (Fed. Cir. 1991).  The written description requirement "is to clearly convey the information that an applicant has invented the subject matter which is claimed" and to put the public in possession of what the applicant claims as the invention.  *In re Barker*, 559 F.2d 588, 592 n.4 (CCPA 1977); *Regents of the Univ. of Cal. v. Eli Lilly*, 119 F.3d 1559, 1566 (Fed. Cir. 1997), cert. denied, 523 U.S. 1089 (1998).  To satisfy the written description requirement, a patent specification must describe the claimed invention in sufficient detail that one skilled in the art can reasonably conclude that the inventor had possession of the claimed invention.  *See*, *e.g.*, *Moba, B.V. v. Diamond Automation, Inc.*, 325 F.3d 1306, 1319 (Fed. Cir. 2003).

The Asserted Claims fail to meet this standard as the following claim limitations lack written description support and/or are not enabled[1]:

---

[1] SCEA expressly reserves the right to propose constructions for all disputed claim terms.  If SCEA proposes a construction for any term identified in this section, SCEA is not waiving its

**1.      (Claims 1, 9, 23, and 24) "said remotely accessible, auxiliary site addresses"**

Claims 1, 9, 23, and 24 of the '534 Patent are invalid under 35 U.S.C. § 112(1) at least because the specification does not contain adequate description to enable a person of ordinary skill in the art to make and use the claimed invention without undue experimentation with regards to this limitation.   Specifically, there is no written description or enablement for "remotely accessible, auxiliary site address."

**2.      (Claim 1, 23, and 24) "said remotely accessible, auxiliary site addresses being structured to be remotely accessed by said remote server assembly"**

Claims 1, 23, and 24 of the '534 Patent are invalid under 35 U.S.C. § 112(1) at least because the specification does not contain adequate description to enable a person of ordinary skill in the art to make and use the claimed invention without undue experimentation with regards to this limitation.   Specifically, there is no written description or enablement for "remotely accessible, auxiliary site address" that are "structured to be remotely accessed by said remote server assembly."

**3.      (Claim 6) "wherein said compact portable and interchangeable computer readable medium is structured to identify an internal site address thereof relative to said local processor assembly, thereby facilitating access thereto by said remote server assembly"**

Claim 6 of the '534 Patent is invalid under 35 U.S.C. § 112(1) at least because the specification does not contain adequate description to enable a person of ordinary skill in the art to make and use the claimed invention without undue experimentation with regards to this limitation.   Specifically, there is no written description or enablement for "compact portable and interchangeable computer readable medium…facilitating access thereto by said remote server assembly."

**4.      (Claim 9) "wherein said primary and said remotely accessible**

arguments that such a term is invalid under 35 U.S.C. § 112.   To the contrary, SCEA's proposed construction is solely presented for the Court's benefit in the event the Court rejects SCEA's arguments under 35 U.S.C. § 112.

**auxiliary site addresses include URL addresses accessible through an online connection"**

Claim 9 of the '534 Patent is invalid under 35 U.S.C. § 112(1) at least because the specification does not contain adequate description to enable a person of ordinary skill in the art to make and use the claimed invention without undue experimentation with regards to this limitation.  Specifically, there is no written description or enablement for "said remotely accessible auxiliary site addresses" that "include URL addresses accessible through an online connection."

     **5.**     **(Claims 23 and 24) "said select portions of said quantity of auxiliary site data at the auxiliary site addresses accessible only while the local processor assembly is interactively online connected to the remote server assembly"**

Claims 23 and 24 of the '534 Patent are invalid under 35 U.S.C. § 112(1) at least because the specification does not contain adequate description to enable a person of ordinary skill in the art to make and use the claimed invention without undue experimentation with regards to this limitation.  Specifically, in light of arguments made by RDMI's successor during reexamination of the '534 Patent, there is no written description or enablement for "said select portions of said quantity of auxiliary site data at the auxiliary site addresses accessible only while the local processor assembly is interactively online connected to the remote server assembly."

     **6.**     **(Claim 24) "said auxiliary site addresses being encoded so as to restrict access by said local processor assembly unless said access is directed by said remote server assembly"**

Claim 24 of the '534 Patent is invalid under 35 U.S.C. § 112(1) at least because the specification does not contain adequate description to enable a person of ordinary skill in the art to make and use the claimed invention without undue experimentation with regards to this limitation.  Specifically, in light of arguments made by RDMI's successor during reexamination of the '534 Patent, there is no written description or enablement for "said auxiliary site addresses being encoded so as to restrict access by said local processor assembly unless said access is directed by said remote server assembly."

**ii.      Invalidity Under 35 U.S.C. § 112(2)**

The Asserted Claims are further invalid under 35 U.S.C. § 112(2) as they are indefinite. Under 35 U.S.C. § 112 ¶ 2 the claims of a patent must "particularly point[] out and distinctly claim[] the subject matter which the applicant regards as his invention."  A claim is invalid as indefinite if it is not sufficiently precise to permit a potential competitor to determine whether or not it is infringing.  *Morton Int'l, Inc. v. Cardinal Chem. Co.*, 5 F.3d 1464, 1470 (Fed. Cir. 1993). Claims are required to reasonably apprise those skilled in the art of the scope of the invention. *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1342 (Fed. Cir. 2003).  A person of ordinary skill in the art must be able to determine the scope of the claims without undue experimentation.  *Geneva Pharms., Inc. v. GlacoSmithKline PLC*, 349 F.3d 1373, 1383-84 (Fed. Cir. 2003); *see also Standard Brands,* Inc. *v. Nat'l Grain Yeast Corp.*, 308 U.S. 34, 38 (1939); *Deep Welding, Inc. v. Sciaky Bros., Inc.*, 417 F.2d 1227, 1242 (7th Cir. 1969) ("the patent must be sufficiently specific so as not to compel independent experimentation to determine the bounds of the inventor's claims"); *Standard Oil Co. v. Tide Water Associated Oil Co.*, 154 F.2d 579, 582-83 (3d Cir. 1946).  A "patent's claims, viewed in light of the specification and prosecution history, inform those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus, Inc. v. Biosig Instruments, Inc*., 134 S. Ct. 2120, 2129 (2014).

The Asserted Claims are additionally invalid under 35 U.S.C. § 112(2) because the following claim terms are indefinite[2]:

**1.      (Claims 1, 9, 23, and 24) "said remotely accessible, auxiliary site addresses"**

Claims 1, 9, 23, and 24 of the '534 Patent are invalid under 35 U.S.C. § 112(2) at least because this limitation, when viewed in light of the specification and prosecution history, fails to inform those skilled in the art about the scope of the invention with reasonable certainty, and therefore, the claims are indefinite.  The indefiniteness of claims 1, 9, 23, and 24 are based at least

---

[2] SCEA expressly reserves the right to propose constructions for all disputed claim terms.  If SCEA proposes a construction for any term identified in this section, SCEA is not waiving its arguments that such a term is invalid under 35 U.S.C. § 112.  To the contrary, SCEA's proposed construction is solely presented for the Court's benefit in the event the Court rejects SCEA's arguments under 35 U.S.C. § 112.

in part upon the fact that RDMI has made infringement allegations that appear to rely upon an incorrect construction of this limitation.  Assuming such construction, to which SCEA explicitly does not agree, this limitation is indefinite as to what "remotely accessible, auxiliary site addresses" mean.

> **2.    (Claims 1, 23, and 24) "said remotely accessible, auxiliary site addresses being structured to be remotely accessed by said remote server assembly"**

Claims 1, 23, and 24 of the '534 Patent are further invalid under 35 U.S.C. § 112(2) at least because this limitation, when viewed in light of the specification and prosecution history, fails to inform those skilled in the art about the scope of the invention with reasonable certainty, and therefore, the claims are indefinite.  The indefiniteness of claims 1, 23, and 24 are based at least in part upon the fact that RDMI has made infringement allegations that appear to rely upon an incorrect construction of this limitation.   Assuming such construction, to which SCEA explicitly does not agree, the limitation "remotely accessible, auxiliary site addresses being structured to be remotely accessed by said remote server assembly" is further indefinite as to what "being structured to be remotely accessed" means.

> **3.    (Claim 1) "said remotely accessible, auxiliary site addresses being structured to be remotely accessed by said remote server assembly so as to initiate utilization of said select portions of said quantity of auxiliary site data by said local processor assembly in conjunction with said primary site data"**

Claim 1 of the '534 Patent is invalid under 35 U.S.C. § 112(2) as improper hybrid claims that recite both a system and a method for using that system.   *IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, 430 F.3d 1377, 1384 (Fed. Cir. 2005) ("Because claim 25 recites both a system and the method for using that system, it does not apprise a person of ordinary skill in the art of its scope, and it is invalid under section 112, paragraph 2.").  For example, claim 1 of the '534 Patent improperly combines two separate classes of invention into a single claim by requiring that the claimed "remotely accessible, auxiliary site addresses" perform the step of "so as to initiate utilization."

> **4.    (Claim 6) "wherein said compact portable and interchangeable computer readable medium is structured to identify an internal**

**site address thereof relative to said local processor assembly, thereby facilitating access thereto by said remote server assembly"**

Claim 6 of the '534 Patent is invalid under 35 U.S.C. § 112(2) as improper hybrid claims that recite both a system and a method for using that system. *IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, 430 F.3d 1377, 1384 (Fed. Cir. 2005) ("Because claim 25 recites both a system and the method for using that system, it does not apprise a person of ordinary skill in the art of its scope, and it is invalid under section 112, paragraph 2."). For example, claim 6 of the '534 Patent improperly combines two separate classes of invention into a single claim by requiring that the claimed "compact portable and interchangeable computer readable medium" perform the step of "facilitating access thereto by said remote server assembly."

> **5.    (Claim 21) "wherein said compact, portable and interchangeable computer readable medium is structured to store a plurality of operating instructions which direct an operation of said local processor assembly"**

Claim 21 of the '534 Patent is invalid under 35 U.S.C. § 112(2) at least because this limitation, when viewed in light of the specification and prosecution history, fails to inform those skilled in the art about the scope of the invention with reasonable certainty, and therefore, the claim is indefinite. The indefiniteness of claim 21 based at least in part upon the fact that a person of ordinary skill in the art would not be able to determine what is meant by "structured to store a plurality of operating instructions which direct an operation of said local processor assembly."

> **6.    (Claim 22) "said operating instructions on said compact, portable and interchangeable computer readable medium are structured to direct said…processor to generate a…display of a three dimensional space at least partially from said quantity of auxiliary site data"**

Claim 22 of the '534 Patent is invalid under 35 U.S.C. § 112(2) at least because this limitation, when viewed in light of the specification and prosecution history, fails to inform those skilled in the art about the scope of the invention with reasonable certainty, and therefore, the claim is indefinite. The indefiniteness of claim 22 based at least in part upon the fact that a

person of ordinary skill in the art would not be able to determine what is meant by "operating instructions…structured to direct" and "to generate a…display of a three dimensional space at least partially from said quantity of auxiliary site data."

> **7.** **(Claims 23 and 24) "said remote server assembly remotely accessing said auxiliary site data to initiate utilization of said select portions of said quantity of auxiliary site data by said local processor assembly"**

Claims 23 and 24 of the '534 Patent are invalid under 35 U.S.C. § 112(2) as improper hybrid claims that recite both a system and a method for using that system. *IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, 430 F.3d 1377, 1384 (Fed. Cir. 2005) ("Because claim 25 recites both a system and the method for using that system, it does not apprise a person of ordinary skill in the art of its scope, and it is invalid under section 112, paragraph 2."). For example, claims 23 and 24 of the '534 Patent improperly combines two separate classes of invention into a single claim by requiring that the claimed "remote server assembly" of the claimed system perform the step of "remotely accessing said auxiliary site data to initiate utilization of said select portions of said quantity of auxiliary site data by said local processor assembly."

Claims 23 and 24 of the '534 Patent are further invalid under 35 U.S.C. § 112(2) at least because this limitation, when viewed in light of the specification and prosecution history, fails to inform those skilled in the art about the scope of the invention with reasonable certainty, and therefore, the claims are indefinite. The indefiniteness of claims 23 and 24 based at least in part upon the fact that RDMI has made infringement allegations that appear to rely upon an incorrect construction of this limitation. Assuming such construction, to which SCEA explicitly does not agree, this limitation is indefinite as to what "remotely accessing" means.

> **8.** **(Claims 23 and 24) "said select portions of said quantity of auxiliary site data utilized in conjunction with said primary site data"**

Claims 23 and 24 of the '534 Patent are further invalid under 35 U.S.C. § 112(2) as improper hybrid claims that recite both a system and a method for using that system. *IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, 430 F.3d 1377, 1384 (Fed. Cir. 2005) ("Because claim 25 recites both a system and the method for using that system, it does not apprise a person of

1    ordinary skill in the art of its scope, and it is invalid under section 112, paragraph 2.").  For

2    example, claims 23 and 24 of the '534 Patent improperly combine two separate classes of

3    invention into a single claim by requiring that the "select portions of said quantity of auxiliary site

4    data" of the claimed system be "utilized in conjunction with said primary site data."

5           **9.      (Claims 23 and 24) "said select portions of said quantity of
            auxiliary site data at the auxiliary site addresses accessible only
6           while the local processor assembly is interactively online
            connected to the remote server assembly"**

7           Claims 23 and 24 of the '534 Patent are further invalid under 35 U.S.C. § 112(2) as

8    improper hybrid claims that recite both a system and a method for using that system.  *IPXL*

9    *Holdings, L.L.C. v. Amazon.com, Inc.*, 430 F.3d 1377, 1384 (Fed. Cir. 2005) ("Because claim 25

10   recites both a system and the method for using that system, it does not apprise a person of

11   ordinary skill in the art of its scope, and it is invalid under section 112, paragraph 2.").  For

12   example, claims 23 and 24 of the '534 Patent improperly combine two separate classes of

13   invention into a single claim by requiring that the "select portions of said quantity of auxiliary site

14   data" of the claimed system are "accessible only while the local processor assembly is

15   interactively online connected to the remote server assembly."

16          **10.     (Claim 24) "said auxiliary site addresses being encoded so as to
            restrict access by said local processor assembly unless said
17          access is directed by said remote server assembly"**

18          Claim 24 of the '534 Patent is further invalid under 35 U.S.C. § 112(2) at least because

19   this limitation, when viewed in light of the specification and prosecution history, fails to inform

20   those skilled in the art about the scope of the invention with reasonable certainty, and therefore,

21   the claim is indefinite.  The indefiniteness of claim 24 is based at least in part upon the fact that

22   RDMI has made infringement allegations that appear to rely upon an incorrect construction of

23   this limitation.  Assuming such construction, to which SCEA explicitly does not agree, this

24   limitation is indefinite as to what "unless said access is directed by said remote server assembly"

25   means.

26   **V.     RULE 3-4(b) DISCLOSURE**

27          In accordance with Patent L.R. 3-4(b), in addition to producing a set of all prior art

28

1  references and corroborating evidence identified in these Invalidity Contentions, SCEA is also

2  making available for inspection under the terms of the draft protective order it provided to RDMI

3  on December 19, 2014, at its attorneys offices documents showing the operation of the elements

4  of the accused products identified in RDMI's Infringement Contentions.  SCEA will similarly

5  make available for inspection under the terms of the draft protective order the source code for the

6  prior art listed in Exhibits B.1-B.17 that it has been able to obtain to date.  SCEA's search for

7  prior art references, additional documentation, and/or corroborating evidence concerning prior art

8  systems is ongoing.  Accordingly, SCEA reserves the right to continue to supplement its

9  production, as provided by the local rules, as additional prior art references, additional

10  documentation, and/or corroborating evidence concerning prior art documents/systems are

11  obtained during the course of discovery.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated: July 6, 2015

Quarles & Brady LLP

By: _/s/ Gregory P. Sitrick_
Gregory P. Sitrick (*pro hac vice*)

Quarles & Brady LLP
One Renaissance Square
Two North Central Avenue
Phoenix, AZ  85004-2391
Phone:  (602) 229-5200
Fax:  (602) 229-5690

Michael J. Curley (CA Bar No. 230343)
michael.curley@quarles.com
Nikia L. Gray (*pro hac vice*)
nikia.gray@quarles.com
Quarles & Brady LLP
One South Church Avenue, Suite 1700
Tucson, Arizona 85701-1621
T:  (520) 770-8700
F:  (520) 770-2206

David R. Cross (*pro hac vice*)
David.Cross@quarles.com
Quarles & Brady LLP
411 East Wisconsin Avenue
Milwaukee, Wisconsin 53202
Phone:  (414) 277-5669
Fax:  (414) 271-3552

Christopher J. Fahy (*pro hac vice*)
Christopher.Fahy@quarles.com
Quarles & Brady LLP
300 North LaSalle Street
Suite 4000
Chicago, Illinois 60654
Phone:  (312) 715-5000
Fax:  (312) 715-5155

Jeremy T. Elman (CA Bar No. 223696)
Jeremy.elman@dlapiper.com
DLA Piper LLP (US)
200 South Biscayne Blvd., Suite 2500
Miami, Florida 33131
Phone:  (305) 423-8514
Fax:  (305) 503-7551

Krista A. Celentano (CA Bar No. 279526)
Krista.celentano@dlapiper.com
DLA Piper LLP (US)
2000 University Avenue
East Palo Alto, CA 94303-2214

Phone:  (650) 833-2000
Fax:  (650) 833-2001

*Attorneys for Defendant/Counterplaintiff
Sony Computer Entertainment America
LLC*